IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 20-cv-01936-STV

TIMOTHY JAMES COATES,
GENE CLAPS,
MARK MITCHELL, and
KEVIN CURRIER

    Plaintiffs,

v.

THE ADAMS COUNTY SHERIFF'S OFFICE, a governmental entity, and
RICHARD A. REIGENBORN, in his official and individual capacity,

    Defendants.

_____

## ORDER
_____

Magistrate Judge Scott T. Varholak

This matter comes before the Court on Defendants' Motion to Dismiss Pursuant to F.R.C.P. 12(b)(6) [#14] (the "Motion"). The parties have consented to proceed before the undersigned United States Magistrate Judge for all proceedings, including entry of a final judgment. [## 15, 16] The Court has carefully considered the Motion and related briefing, the entire case file, and the applicable case law, and has determined that oral argument would not materially assist in the disposition of the instant Motion. For the following reasons, Defendants' Motion is **DENIED**.

**I.   BACKGROUND**[1]

Plaintiffs are all former officers of the Adams County Sheriff's Office ("ACSO"). [#1 at ¶¶ 12, 32, 49, 67] Each had received numerous promotions and/or awards while working for the ACSO. [*Id.* at ¶¶ 16, 19, 22-23, 27-29, 34, 37-38, 40-44, 46-48, 51, 53-54, 60-61, 63-64, 73, 76] As of January 8, 2019, Plaintiff Timothy James Coates was a Captain in the Detective Division [*id.* at ¶ 31], Plaintiff Gene Claps was Division Chief of the Jail Division [*id.* at ¶ 48], Plaintiff Mark Mitchell was Captain of the Patrol Division [*id.* at ¶ 66], and Plaintiff Kevin Currier was Commander and Coordinator for the 17th Judicial District [*id.* at ¶ 79].

In 2018, Defendant Richard A. Reigenborn was elected Adams County Sheriff, defeating the incumbent Sheriff Michael McIntosh. [*Id.* at ¶¶ 97, 112] Sheriff Reigenborn had previously run for Sheriff during 2014 but lost to Sheriff McIntosh. [*Id.* at ¶ 98] In both 2014 and 2018 Plaintiffs engaged in various activities in support of Sheriff McIntosh. [*Id.* at ¶¶ 102, 111] Indeed, in both years Plaintiffs were among the largest donors to Sheriff McIntosh's campaign. [*Id.* at ¶ 99]

Plaintiffs' dispute with Sheriff Reigenborn extended beyond their support for Sheriff McIntosh.  Prior to his election, Sheriff Reigenborn held various leadership positions within Colorado Lodge 1 of the Fraternal Order of Police ("FOP"). [*Id.* at ¶¶ 84-87] Sheriff Reigenborn and other Lodge 1 and state-level FOP leadership had previously begun a campaign to implement collective bargaining at the ACSO. [*Id.* at ¶ 88] Plaintiffs openly opposed this campaign and helped elect two members to the Lodge's Board of Directors

---

[1] The facts are drawn from the allegations in Plaintiff's Complaint [#1], which must be taken as true when considering the Motion. *See Wilson v. Montano*, 715 F.3d 847, 850 n.1 (10th Cir. 2013) (citing *Brown v. Montoya*, 662 F.3d 1152, 1162 (10th Cir. 2011)).

2

who were opposed by Sheriff Reigenborn. [*Id.* at ¶¶ 89-91] Plaintiffs and others eventually resigned from the Lodge due to disagreements over collective bargaining and increases in dues. [*Id.* at ¶ 93]

After winning the election but prior to taking office, Sheriff Reigenborn complained to a reporter that "the command staff . . . wants to continue to be loyal to Sheriff McIntosh." [*Id.* at ¶ 116] On January 8, 2019, Sheriff Reigenborn took his oath of office. [*Id.* at ¶ 117] The next day, Sheriff Reigenborn sent an email to ACSO personnel indicating that he planned to make some changes within the ACSO, that some employees may not retain their current positions and salaries, and that it was "necessary to rescind the employment and personnel policies of previous sheriffs." [*Id.* at ¶¶ 118-21] Attached to the email were four new policies adopted by Sheriff Reigenborn, including an At-Will Employment Policy and Termination Procedures (the "At-Will Policy"). [*Id.* at ¶ 127] The At-Will Policy specified that Sheriff Reigenborn "may terminate employees or revoke deputy appointments at will, with or without cause." [*Id.* at ¶ 128]

Later that day, Sheriff Reigenborn sent Plaintiffs substantially identical letters informing them that they were being terminated. [*Id.* at ¶ 131] In the letters, Sheriff Reigenborn wrote: "I have my own vision for how to best meet the needs and objectives of the Office. After careful review and deliberation, I do not believe retaining you is in the best interests of the organization. I intend to revoke your appointment with the [ACSO]." [*Id.* at ¶ 132] Sheriff Reigenborn further wrote: "I am informing you of the anticipated termination of your employment and the opportunity to meet with me prior to your termination." [*Id.* at ¶ 133] Sheriff Reigenborn placed Plaintiffs on administrative leave,

effective immediately, and barred them from any secured or unsecured area of the ACSO absent prior permission from Sheriff Reigenborn. [*Id.* at ¶¶ 135-36]

Plaintiffs each requested a meeting with Sheriff Reigenborn. [*Id.* at ¶ 137] The meetings all took place on January 15, 2019. [*Id.* at ¶ 138] Sheriff Reigenborn told each Plaintiff that he was taking the ACSO in a different direction, though he did not explain that direction. [*Id.* at ¶¶ 139, 143, 145-46, 152, 155] Sheriff Reigenborn offered each Plaintiff the option of resigning in lieu of termination, which each Plaintiff accepted in order to avoid losing retirement benefits. [*Id.* at ¶¶ 141-42, 150-51, 153-54, 158-59] Other than the statements about moving in a different direction, Sheriff Reigenborn did not provide other reasons for terminating Plaintiffs.[2] [*Id.* at ¶¶ 139-40, 143-146, 152, 155-57]

Sheriff Reigenborn also took adverse action against other dedicated supporters of Sheriff McIntosh. [*Id.* at ¶ 162] These adverse actions included demotions and/or terminations. [*Id.*] Sheriff Reigenborn often filled these new vacancies with supporters of his campaign, many of whom lacked significant law enforcement background or expertise. [*Id.* at ¶ 163]

On July 1, 2020, Plaintiffs initiated the instant action. [#1] Claim One alleges retaliation in violation of the First Amendment against the ACSO and Sheriff Reigenborn. [*Id.* at ¶¶ 164-77] Claim Two alleges that the ACSO and Sheriff Reigenborn violated Plaintiffs' Fourteenth Amendment right to procedural due process. [*Id.* at ¶¶ 178-91] On

---

[2] Near the end of Sheriff Reigenborn's meeting with Captain Mitchell, Captain Mitchell mentioned his political support for Sheriff McIntosh. [*Id.* at ¶ 147] Specifically, Captain Mitchell stated: "I just want to say one more thing before I walk out of here for the last time. You never heard anything negative from me ever about you in any way, shape or form through two campaigns, through the entire time that we worked together. Not once." [*Id.* at ¶ 148] Sheriff Reigenborn responded: "So we will agree to disagree on that." [*Id.* at ¶ 149]

August 31, 2020, Defendants filed the instant Motion, seeking to dismiss Claim Two. [#14]  Plaintiffs have responded to the Motion [#23] and Defendants have replied [#26].

## II.     STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  In deciding a motion under Rule 12(b)(6), a court must "accept as true all well-pleaded factual allegations . . . and view these allegations in the light most favorable to the plaintiff."  *Casanova v. Ulibarri*, 595 F.3d 1120, 1124 (10th Cir. 2010) (quoting *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009)).  Nonetheless, a plaintiff may not rely on mere labels or conclusions, "and a formulaic recitation of the elements of a cause of action will not do."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).  Plausibility refers "to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.'"  *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Twombly*, 550 U.S. at 570).  "The burden is on the plaintiff to frame a 'complaint with enough factual matter (taken as true) to suggest' that he or she is entitled to relief."  *Id.* (quoting *Twombly*, 550 U.S. at 556).  The ultimate duty of the court is to "determine whether the complaint sufficiently alleges facts supporting all the elements necessary to establish an entitlement to relief under the legal theory proposed."  *Forest Guardians v. Forsgren*, 478 F.3d 1149, 1160 (10th Cir. 2007).

## III. ANALYSIS

In Claim Two, Plaintiffs allege that they were deprived of their jobs without due process, in violation of the Fourteenth Amendment. [#1, ¶¶ 178-91] "Procedural due process imposes constraints on governmental decisions which deprive individuals of liberty or property interests within the meaning of the Due Process Clause of the . . . Fourteenth Amendment." *Mathews v. Eldridge,* 424 U.S. 319, 332 (1976) (quotations omitted). "Due process is flexible and calls for such procedural protections as the particular situation demands." *Id.* at 334 (quotation and alteration omitted). The Tenth Circuit has "held that, '[t]o assess whether an individual was denied procedural due process, courts must engage in a two-step inquiry: (1) did the individual possess a protected interest such that the due process protections were applicable; and, if so, then (2) was the individual afforded an appropriate level of process.'" *Brown v. Montoya*, 662 F.3d 1152, 1167 (10th Cir. 2011) (quoting *Merrifield v. Bd. of Cnty. Comm'rs,* 654 F.3d 1073, 1078 (10th Cir. 2011)).

"A protected interest in liberty or property may have its source in either federal or state law." *Elliott v. Martinez*, 675 F.3d 1241, 1244 (10th Cir. 2012). Here, Plaintiffs rely on Colorado Revised Statute § 30-10-506. That statute provides in relevant part:

> Each sheriff may appoint as many deputies as the sheriff may think proper and may revoke such appointments at will; except that a sheriff shall adopt personnel policies, including policies for the review of revocation of appointments. Before revoking an appointment of a deputy, the sheriff shall notify the deputy of the reason for the proposed revocation and shall give the deputy an opportunity to be heard by the sheriff.

Colo. Rev. Stat. § 30-10-506. The "statute unambiguously confers two due process rights on the deputies," namely, notice and the right to be heard. *Cummings v. Arapahoe Cnty. Sheriff's Dep't*, 440 P.3d 1179, 1186 (Colo. App. 2018). Indeed, for purposes of this

Motion, "Defendants concede that Plaintiffs had a protected interest in their continued employment with ACSO by virtue of the procedural requirements set forth in [Colorado Revised Statute § 30-10-506]."  [#14 at 7]

Thus, the question is whether Defendants provided Plaintiffs an appropriate level of process.  Colorado state courts have not detailed the level of process required by the statute, though two decisions of this Court provide guidance.  *See Williams v. McKee*, No. 13-cv-02546-PAB-MJW, 2014 WL 4627781, at *7 (D. Colo. Sept. 15, 2014); *McLallen v. Taylor*, No. 10-cv-01187-RPM, 2012 WL 502697, at *4 (D. Colo. Feb. 15, 2012).  Both *Williams* and *McLallen* held that providing a deputy with a face-to-face meeting satisfied the statute's notice and opportunity to be heard requirements.  *See id.*  Indeed, in *McLallen*, the court found the notice and opportunity requirements satisfied even though the sheriff had prepared the termination letter in advance, making the opportunity to be heard "hollow."  *McLallen*, 2012 WL 502697, at *4.  Consistent with these cases, Sheriff Reigenborn could satisfy his due process obligations under the statute by giving Plaintiffs notice of the reasons for their termination and a face-to-face meeting in which Plaintiffs could argue for their retention.

Plaintiffs maintain, however, that Sheriff Reigenborn failed to provide them notice of the true reason for their termination.  [#23 at 7-11]  The Complaint alleges that Plaintiffs were terminated for their criticism of collective bargaining and the leadership of the FOP, as well as for their support for Sheriff McIntosh.  [#1, ¶¶ 167-68; 170-71]  Thus, according to the Complaint, Plaintiffs were not fired because Sheriff Reigenborn was taking the ACSO in a different direction (as the notice indicated), but because Plaintiffs had previously criticized Sheriff Reigenborn and the FOP, and supported Sheriff McIntosh

7

over Sheriff Reigenborn.  If these allegations are true—and the Court at this stage must presume that they are—then Sheriff Reigenborn did not "notify the [Plaintiffs] of the reason for the proposed revocation[s]" as required by Colo. Rev. Stat. § 30-10-506.

Defendants nonetheless argue that Plaintiffs were given reasons for their terminations and are not entitled to "different, more elaborate, reasons" or reasons that align with Plaintiffs preferences.  [#26 at 4]  But the statute clearly requires sheriffs to notify deputies of "**the** reason" for the revocation.  Colo. Rev. Stat. § 30-10-506 (emphasis added).  If the Colorado legislature intended a sheriff to give any reason for termination, it could have written the statute to require the sheriff to give notice of "a reason" for the revocation.  Moreover, allowing a sheriff to give a false reason for termination would render the notice and opportunity to be heard requirements meaningless—if the deputy is not told the true reason for his termination, he does not have notice of the real reason behind the termination and therefore does not have a meaningful opportunity to be heard as to why he should not be terminated on those grounds.  Accordingly, because the Complaint fairly alleges that Plaintiffs were not given the true reason behind their terminations, it fairly alleges that Sheriff Reigenborn failed to comply with the statute's notice requirements.  Accordingly, the Complaint states a procedural due process claim and the Motion is DENIED.

## IV.     CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss Pursuant to F.R.C.P. 12(b)(6) is **DENIED**.

DATED:  January 26, 2021                             BY THE COURT:


                                                                         s/Scott T. Varholak
                                                                         United States Magistrate Judge