## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No.: 20-cv-01936-STV

TIMOTHY JAMES COATES,
GENE CLAPS,
MARK MITCHELL, and
KEVIN CURRIER,

       Plaintiffs,

       v.

THE ADAMS COUNTY SHERIFF'S OFFICE, a governmental entity, and
RICHARD A. REIGENBORN, in his official and individual capacity,

       Defendants.

---

### Plaintiffs' Separate Statement of Facts

---

       Plaintiffs, by and through counsel, hereby submit this Separate Statement of Facts in support of Plaintiffs' Motion for Partial Summary Judgment [ECF No. 51]:

| Moving Party's Undisputed Material Facts and Supporting Evidence[1] | Opposing Party's Response/Additional Facts and Supporting Evidence | Moving Party's Reply and Supporting Evidence |
|---|---|---|
| *Background facts* | | |
| 1. Defendant Richard A. Reigenborn is the elected Sheriff of Adams County, Colorado. Amended Ans. [ECF No. 32] ¶ 8. | Admit | |

---

[1] All references to Exhibits in Plaintiffs' Undisputed Material Facts are to the exhibits of the contemporaneously filed Declaration of Felipe Bohnet-Gomez in support of Plaintiffs' Motion for Partial Summary Judgment.

| | | |
|---|---|---|
| 2. Reigenborn runs the entire Adams County Sheriff's Office ("ACSO") and is the final decisionmaker with respect to the termination or revocation of deputies' appointments. Ex. 1 (Reigenborn Dep.), at 19:6-18; 20:7-21:1; 241:10-242:11. | Admit | |
| 3. Plaintiffs are career law enforcement officers, who collectively have worked over 100 years in law enforcement. Am. Ans. ¶ 9. | Admit. | |
| 4. Plaintiffs spent the great majority of their careers as deputy sheriffs at the ACSO, holding a variety of ranks and serving under both Republican and Democratic sheriffs. Am. Ans. ¶¶ 10-11. | Admit. | |
| 5. In both the 2014 and 2018 elections, Reigenborn, challenged Michael McIntosh for Adams County Sheriff. Amended Ans. ¶ 97. | Admit. | |
| 6. Reigenborn lost to McIntosh in the 2014 election. Amended Ans. ¶ 98. | Admit. | |
| 7. On November 6, 2018, Sheriff Reigenborn unseated McIntosh and was elected Adams County Sheriff. Amended Ans. ¶ 112. | Admit. | |
| 8. Reigenborn was concerned about Plaintiffs' loyalty because they had supported McIntosh in the 2014 and 2018 elections. | Defendants admit that Plaintiff's support of McIntosh caused some concern about their loyalty to the Sheriff's Office because of their actions | The cited deposition testimony, regarding how Plaintiffs' behavior allegedly failed to put Reigenborn's concerns to rest, does not |

| | | |
|---|---|---|
| Ex. 1 (Reigenborn Dep.), at 204:14-205:10. | and behavior towards Reigenborn during the election, as well as their meetings with him in December 2018 and January 2019.<br><br>See Exhibit F – Deposition of Reigenborn - 200-205, attached as an exhibit to Defendants' Motion for Summary Judgment [Doc. 53]. | controvert his testimony that his concern about Plaintiffs' loyalty was caused, in the first instance, by their political support of McIntosh and that he "**remained** concerned . . . after meeting with them." Ex. 1 (Reigenborn Dep.), at 205:7-10 (emphasis added). |
| 9. Following the 2018 election, Reigenborn selected Tommie McLallen as his Undersheriff. Am. Ans. ¶ 113. | Admit. | |
| *Facts relating to Defendant Reigenborn's decision to end Plaintiffs' employment at the ACSO* | | |
| 10. By November 2018, Reigenborn had selected Chris Laws to replace Plaintiff Claps in the position of jail division chief. Ex. 2 (Laws Dep.), at 72:18-75:5; Ex. 3 (Reigenborn-Argo Emails). | Admit Reigenborn selected Chris Laws to replace Plaintiff Claps as jail division chief. However, the timing of that selection is not clearly established by Ex. 3.<br><br>See also, Exhibit F – Deposition of Reigenborn - 299-300, attached as an exhibit to Defendants' Motion for Summary Judgment [Doc. 53]. | Defendants' response does not establish that the fact is disputed. |
| 11. Chris Laws was formally hired by Defendants by January 11, 2019. Ex. 4 (Laws New Hire Form). | Admit. | |
| 12. Reigenborn had selected Mark Toth to replace Plaintiff Coates in the position of patrol division chief within a few days of winning the November 2018 | Deny- Sheriff Reigenborn selected Toth to replace Chief Terrance O'Neill after he took office in January 2019. | |

| | | |
|---|---|---|
| election. Ex. 5 (Toth Dep.), at 54:18-55:6; 56:23-57:5. | See Exhibit F – Deposition of Reigenborn -  181-182, attached as an exhibit to Defendants' Motion for Summary Judgment [Doc. 53]. | |
| 13. Mark Toth was formally hired Defendants by January 14, 2019. Ex. 6 (Letter to Clerk and Recorder). | Admit. | |
| 14. By January 4, 2019, Reigenborn decided to terminate Plaintiffs, and sent a text message to Tommie McLallen stating: "Terminations so far. Gene Claps [. . .] Kevin Currier [. . .] Mark Mitchell [. . .] TJ Coates." Ex. 7 (Reigenborn-McLallen Text Messages), at 1 (AC 004914). | Admit Reigenborn sent McLallen a text with that content.  Deny Reigenborn had decided to terminate them by 1/4/19.  The complete list includes James Gerdeman, Kirstin Thede, Manuel Carrillo, Paul Gregory, Ricky McNair, Robert Nanney, Terrance O'Neill.<br><br>Plaintiffs' Ex. 7, P. 1.  None of these people were terminated. See Exhibit O – Deposition of Gallegos – 63-64, attached as an exhibit to Defendants' Motion for Summary Judgment [Doc. 53] See also, Exhibit 27 – Deposition of O'Neill - 27-28, Exhibit 28 - McNair email AC 003317 and Exhibit M – Response to Interrogatory 7 and 9, attached as an exhibit to Defendants' Motion for Summary Judgment [ Doc. 53].<br><br>Additionally, Commander John Bungartz, who supported McIntosh, never received a letter of intent to terminate and | None of the cited evidence controverts the fact that Reigenborn memorialized his intent to fire Plaintiffs on January 4, 2019.<br><br>McNair retired shortly after receiving his termination notice, and the other individuals listed in Defendant Reigenborn's message were all demoted. |

| | | |
|---|---|---|
| | kept his position as a commander.<br><br>See Exhibit F – Deposition of Reigenborn - 115:7, 139:13, 177:23-178:15, attached as an exhibit to Defendants' Motion for Summary Judgment [Doc. 53]. | |
| **Facts relating to Defendants' termination policies and procedures** | | |
| 15. Reigenborn took office on January 8, 2019. Amended Ans. ¶ 117. | Admit | |
| 16. Shortly after taking office, on January 8 or 9, 2019, Reigenborn rescinded all the ACSO's then-existing employment and personnel policies. Amended Ans. ¶¶ 118, 123; Ex. 8 (Policy Notice), at 1 (AC 001514). | Admit | |
| 17. At the same time, Reigenborn adopted a new policy, Policy 1, titled "At-Will Employment Policy and Procedures." Ex. 8 (Policy Notice), at 1 (AC 001514). | Admit | |
| 18. Policy 1 provided that, "In the event an employee is terminated from employment" the employee would be provided "Notification . . . of the proposed termination and reason for termination; and [a]n opportunity for the employee to be heard by the Sheriff prior to termination." Ex. 8 (Policy | Admit.  The Policy also indicates, "the Sheriff will follow applicable Colorado state law."<br><br>Plaintiff's Ex. 8 (Policy Notice) | |

| | | |
|---|---|---|
| Notice), at 1-2 (AC 001514-15). | | |
| 19. Following the January 8, 2019 policy changes, there was no policy or procedure for the review of a termination or revocation of a deputy's appointment. Ex. 1 (Reigenborn Dep.), at 241:10-242:11; Ex. 9 (ACSO 30(b)(6) Dep.), at 58:14-16; 60:18-61:20. | Admit there was no review of a deputy's appointment. The evidence shows these new policies had no impact on the termination authority of the elected sheriff. The Plaintiffs knew the elected sheriff always had the right to terminate employees as they were at-will employees who served at the pleasure of the sheriff.<br><br>See Exhibit N – Deposition of Mitchell - 56-57; Exhibit C – Deposition of Currier – 63-64; Exhibit B – Deposition of Claps – 72; Exhibit A – Deposition of Coates – 69; and Exhibit F – Deposition of Reigenborn – 245-246, attached as exhibits to Defendants' Motion for Summary Judgment [Doc. 53]. | Defendants' response is a non-sequitur. The relevant factual issue is not "review of a deputy's appointment" but whether there was a policy concerning "the review of a termination or **revocation** of a deputy's appointment." None of the evidence cited by Defendants disputes the fact that there was no appeal policy or procedure after January 8, 2019. |
| 20. With the January 8, 2019 policy notice, Reigenborn sought to communicate that would do as he saw fit with respect to employment decisions at the ACSO. Ex. 1 (Reigenborn Dep.), at 237:15-19. | Admit | |
| 21. The January 8, 2019 policy changes gave Defendants "the ability to issue the . . . letters that we gave folks telling them about a proposed termination." | Admit this statement and further clarify that the same proposed termination letters could have been issued under the policies in effect prior to the January 8, 2019 change. | Reigenborn's testimony neither disputes nor clarifies anything because he admits he "hadn't read the [existing] policy" and only had a "vague idea" of it. Ex/ |

| | | |
|---|---|---|
| Ex. 1 (Reigenborn Dep.), at 239:16-22. | See Ex. F – Deposition of Reigenborn -  240:8-10, attached as an exhibit to Defendants' Motion for Summary Judgment [Doc. 53]. | F (Reigenborn Dep.), at 240:14-16. |

**Facts relating to Plaintiffs' termination notices**

| | | |
|---|---|---|
| 22. On January 9, 2019, Plaintiffs each received substantially identical letters from Sheriff Reigenborn informing them that Reigenborn intended to revoke their appointments with the ACSO. Ex. 10 (Claps Termination Notice); Ex. 11 (Coates Termination Notice), Ex. 12 (Currier Termination Notice), Ex. 13 (Mitchell Termination Notice). | Admit | |
| 23. The January 9, 2019 letters were termination notices. Ex. 9 (ACSO 30(b)(6) Dep.), at 117:20-118:2. | Deny.  The letters were identified as "notice to terminate" letters.  These letters notify an employee of an intent to terminate the employee but by statute the employee is entitled to a hearing with the Sheriff before termination.<br><br>See Exhibit 29 – Deposition of ACSO 30(b)(6) – 120:16-19.<br><br>Besides Plaintiffs, most deputies holding the position of commander or above at the time Reigenborn took office received notification letters including: Sam Thede, Paul Gregory, Terrance O'Neill, James Gerdeman, Manuel Carrillo. | Defendants' response does not establish that the fact is disputed.<br><br>A "notice to terminate" is a "termination notice."<br><br>The fact that Reigenborn ultimately demoted, rather than terminated, some employees who received similar termination notices, is of no significance.<br><br>Moreover, the decision to retain these other employees was made after January 15, 2019, when Plaintiffs had their termination hearings with Reigenborn. As such, the fact of these other employees' retention was |

| | See Exhibit M – Response to Interrogatory 7 and 9, attached as an exhibit to Defendants' Motion for Summary Judgment [Doc. 53]. See also, Exhibit 27 – Deposition of O'Neill – 27-28, 38-39, and 41-42.<br><br>Paul Gregory supported McIntosh in the 2018 election and has subsequently been promoted to Division Chief of Patrol.<br><br>See Exhibit O – Deposition of Gallegos – 63-64 and 71-74, attached as an exhibit to Defendants' Motion for Summary Judgment [Doc. 53] See also, Exhibit 27 – Deposition of O'Neill – 41-42. | not known to Plaintiffs beforehand and is not relevant to whether a reasonable person in their position would believe the employment relationship was over. |
|---|---|---|
| 24. In the termination notices, Reigenborn stated: "I intend to revoke your appointment with the Adams County Sheriff's Office" Ex. 10 (Claps Termination Notice); Ex. 11 (Coates Termination Notice), Ex. 12 (Currier Termination Notice), Ex. 13 (Mitchell Termination Notice). | Admit the letters of intent to terminate contain that language. | |
| 25. The termination notices invoked the termination procedures set forth in the newly-promulgated At-Will Employment Policy and Procedures, and stated that "As set forth in Policy 1, I am informing you of the anticipated | Admit the letters of intent to terminate contain that language. | |

| | | |
|---|---|---|
| termination of your employment and the opportunity to meet with me prior to your termination." Ex. 10 (Claps Termination Notice); Ex. 11 (Coates Termination Notice), Ex. 12 (Currier Termination Notice), Ex. 13 (Mitchell Termination Notice). | | |
| 26. Copies of Policy 1, the "At-Will Employment Policy and Procedures," were provided with the termination notices. Ex. 10 (Claps Termination Notice); Ex. 11 (Coates Termination Notice), Ex. 12 (Currier Termination Notice), Ex. 13 (Mitchell Termination Notice). | Admit that copies of Policy 1 were included with the letters of intent to terminate contain that language. | |
| 27. The termination notices also stated that, if Plaintiffs wished to meet with Reigenborn about their terminations, they must request a meeting by noon on January 10, 2019, otherwise "your termination will be effective at 8:00am on January 11, 2019." Ex. 10 (Claps Termination Notice); Ex. 11 (Coates Termination Notice), Ex. 12 (Currier Termination Notice), Ex. 13 (Mitchell Termination Notice). | Admit the letters of intent to terminate contained that language. | |
| 28. The termination notices also informed Plaintiffs that they were being placed on administrative leave "[e]ffective immediately." Ex. 10 (Claps Termination Notice); Ex. 11 (Coates Termination Notice), Ex. 12 (Currier Termination | Admit the letters of intent to terminate contain that language. | |

| | | |
|---|---|---|
| Notice), Ex. 13 (Mitchell Termination Notice). | | |
| 29. After receiving the termination notices, Plaintiffs were no longer allowed on the ACSO premises. Ex. 10 (Claps Termination Notice); Ex. 11 (Coates Termination Notice), Ex. 12 (Currier Termination Notice), Ex. 13 (Mitchell Termination Notice). | Deny, as stated in the letters of intent to terminate, Plaintiffs were "not allowed in any secured or unsecured area of the Sheriff's Office without prior approval from Sheriff Reigenborn or his appointee." Plaintiffs' Ex. 10, 11, 12 and 13 | The terms "secured" and "unsecured" form a binary classification. Any area of the ACSO necessarily falls into one category or the other.  As such, the fact that plaintiffs were "not allowed in any secured or unsecured area of the Sheriff's Office" means that they were not allowed on the ACSO's premises. |
| 30. After receiving the termination notices, Plaintiffs were required to "immediately return any keys, vehicles, Sheriff's Office Identification credentials and badge(s)." Ex. 10 (Claps Termination Notice); Ex. 11 (Coates Termination Notice), Ex. 12 (Currier Termination Notice), Ex. 13 (Mitchell Termination Notice). | Admit the letters of intent to terminate required the return of those items. | |
| 31. The termination notices stated that, "[u]pon termination," Plaintiffs "will be required to turn in all remaining Sheriff's Office equipment and property." Ex. 10 (Claps Termination Notice); Ex. 11 (Coates Termination Notice), Ex. 12 (Currier Termination Notice), Ex. 13 (Mitchell Termination Notice). | Admit the letters of intent to terminate contain that language. | |
| 32. The termination notices wished each Plaintiff "the best in your future endeavors." Ex. 10 (Claps Termination Notice); | Admit the letters of intent to terminate contain that language. | |

| | | |
|---|---|---|
| Ex. 11 (Coates Termination Notice), Ex. 12 (Currier Termination Notice), Ex. 13 (Mitchell Termination Notice). | | |
| 33. Undersheriff McLallen hand delivered the January 9, 2019 termination letters and collected Plaintiffs' badges, keys, and access cards. Ex. 9 (ACSO 30(b)(6) Dep.), at 187:11-20; Ex. 14 (McLallen Dep.), at 230:7-231:8; 266:10-15. | Admit that Undersheriff McLallen hand delivered the letters of intent to terminate. He did not collect badges from Mr. Claps.<br><br>Plaintiffs' Ex. 14, P. 240 at 1-2. | The cited deposition testimony (which Defendants failed to attach to their response), does not create a dispute of fact. |
| 34. On January 10, 2019, Undersheriff McLallen circulated an office-wide memorandum stating that Plaintiffs were not allowed on the ACSO premises. Ex. 15 (Restricted Access Memo). | Admit Undersheriff McLallen circulated a memorandum indicating the Plaintiffs and others were not allowed unescorted access to secured areas of the ACSO.<br><br>Plaintiffs' Ex. 15 | |
| 35. As instructed in the January 9, 2019 termination letters, Plaintiffs each requested to meet with Reigenborn regarding their terminations. Am. Ans. ¶ 137. | Admit all Plaintiffs requested meetings with the Sheriff pursuant to the letters.<br><br>Am. Ans. ¶ 137. | |
| **Facts relating to Defendant Reigenborn's intent to terminate Plaintiffs** | | |
| 36. On January 10, 2019, Reigenborn sent McLallen a picture of Reigenborn and Gene Claps, with the superimposed text "BA BYE ASSHOLE." Ex. 7 (Reigenborn-McLallen Text Messages), at 2-3 (AC 4918-19). | Admit | |
| 37. On January 11, 2019, Defendant Reigenborn's executive assistant, Judy Najera, requested personnel | Admit Judy Najera requested preparatory documents that might be needed after the Sheriff's meetings scheduled for January 15, 2019 with the | Defendants' response does not establish that the fact is disputed. ACSO staff was preparing paperwork for Plaintiffs' terminations, |

| orders from Adams County HR for Plaintiffs' terminations. Ex. 16 (Najera-Olivas Emails); Ex. 9 (ACSO 30(b)(6) Dep.), at 126:2-20. | Plaintiffs as well as James Gerdeman, Kirstin Thede, Manuel Carrillo and Paul Gregory.<br><br>Plaintiffs' Ex. 16; See also, Exhibit 29 – Deposition of ACSO 30(b)(6) – 125-126. | supporting the conclusion that it was reasonable for Plaintiffs to believe their employment at the ACSO had ended. |
|---|---|---|
| ***Facts relating to Plaintiffs final termination meetings*** | | |
| 38. Each Plaintiff met separately with Defendant Reigenborn on January 15, 2019 to discuss their termination. Am. Ans. ¶ 138. | Admit each plaintiff met separately with Reigenborn on January 15, 2019. The meetings were the plaintiffs' statutory right to be heard by the Sheriff regarding their proposed termination.<br><br>Ex. 18 (Tr. of Claps Meeting); Ex. 20 (Tr. of Currier Meeting), P. 2 at 2-3; Ex. 22 (Tr. of Mitchell Meeting), P. 2 at 4-5; Ex. 25 (Tr. of Coates Meeting) P. 2 at 2-5. | |
| 39. Gene Claps met with Reigenborn at approximately 10 a.m. on January 15, 2019. Ex. 17 (Notes of Claps Termination Meeting), at 1. | Admit | |
| 40. Reigenborn communicated to Claps that his employment at the ACSO was over, stating: "I just don't think that you're going to be able to change and be part of the culture that we're headed towards." Ex. 18 (Tr. of Claps Termination Meeting), at 4:3-5. | Admit the Sheriff made that statement then immediately stated "I will allow you to retire." These statements occurred after Mr. Claps stated his requests for retirement at the end of the month as well as a letter of reference, national concealed carry card and unemployment benefits. | To the extent Plaintiff Claps made such requests, he clearly did so only "if I am not retained." Ex. 18 (Tr. of Claps Termination Meeting), at 3:15. Plaintiff Claps had told Defendant Reigenborn "I would like to be able to have the opportunity to retain some type of a position or career with the |

| | Ex. 18 (Tr. of Claps Meeting) at 3:15-25. | [ACSO], so I can finish my career out." *Id.*, at 3:1-4. |
|---|---|---|
| 41. Plaintiff Claps told Reigenborn during their January 15, 2019 meeting that "I would like to be able to have the opportunity to retain some type of a position or career with the Adams County Sheriff's Office, so I can finish my career out." Ex. 18 (Tr. of Claps Termination Meeting), at 3:1-4. | Admit | |
| 42. Claps asked Reigenborn to confirm, at the January 15, 2019 meeting, that "I am not being offered any other positions or any other positions with this agency," to which Reigenborn replied "No, not at this time." Ex. 18 (Tr. of Claps Termination Meeting), at 5:8-10. | Admit | |
| 43. At Plaintiff Claps's January 15, 2019 meeting with Reigenborn, Assistant County Attorney Kassandra Carleton explained to Claps, "the big one you recognize by going to retirement in good standing, you get all of the LEOSA, and I believe you said the badge, the plaque, all of that stuff." Ex. 18 (Tr. of Claps Termination Meeting), at 5:12-15. | Admit | |
| 44. Kevin Currier met with Reigenborn at approximately 12 p.m. Ex. 19 (Notes of Currier Termination Meeting), at 1. | Admit | |

| | | |
|---|---|---|
| 45. 4At the beginning of Plaintiff Currier's January 15, 2019 meeting with Reigenborn, Reigenborn announced: "So we're here for the final hearing; that's where we're at." Ex. 20 (Tr. of Currier Termination Meeting), at 2:2-3. | Admit | |
| 46. During Plaintiff Currier's January 15, 2019 meeting with Reigenborn, Reigenborn communicated to Currier that his employment at the ACSO was over, stating: "we're downsizing." Ex. 20 (Tr. of Currier Termination Meeting), at 7:8-15. | Admit Reigenborn made that statement.  The evidence further shows the statement was made near the end of the meeting after Reigenborn explained he was taking the agency "in a different direction," and offered Currier an opportunity to state his position for retention, telling Currier "the table is yours." Additionally, Reigenborn asked Currier to leave the room so Reigenborn could have discussions with Undersheriff McLallen.<br><br>Plaintiffs' Ex. 20 at P. 2 at 19, 25; Plaintiffs' Ex. 19 (Notes of Currier Meeting) P. 1. | None of the referenced evidence establishes that the fact is in dispute. Defendant Reigenborn told Plaintiff Currier that ACSO was "downsizing" to communicate that Plaintiff Currier would not be retained. |
| 47. Reigenborn further stated: "If you want to retire in good standing so that you qualify for H.R. [218], I'll do that, but we have to have something in writing from you saying that you want to retire." Ex. 20 (Tr. of Currier Termination Meeting), at 7:11-15. | Admit Reigenborn made that statement at the end of the meeting after taking a break to discuss the matter with Undersheriff McLallen.<br><br>Plaintiffs' Ex. 19, p. 1-2. | The fact that Defendant Reigenborn took a "break" during the meeting is irrelevant and does not establish that the fact is in dispute. Defendant Reigenborn told Plaintiff Currier that he would not be able to leave in good standing and qualify for LEOSA unless he submitted a written request to retire. |

| | | |
|---|---|---|
| 48. Reigenborn stated to Plaintiff Currier: "The badges are important to us. If I terminate you, I can't let you leave with the badge. If you leave in good standing, I have no issue," or words to that effect. Ex. 19 (Notes of Currier Termination Meeting), at 2 (AC 001503). | Admit Reigenborn made that statement at the end of the meeting after taking a break to discuss the matter with - Undersheriff McLallen.<br><br>Plaintiffs' Ex. 19, 1-2. | The fact that Defendant Reigenborn took a "break" during the meeting is irrelevant and does not establish that the fact is in dispute. Defendant Reigenborn told Plaintiff Currier that he would not be able to leave in good standing and qualify for LEOSA unless he submitted a written request to retire. |
| 49. Reigenborn made clear to Plaintiff Currier that he would qualify for LEOSA benefits only if he asked to retire in lieu of termination. Ex. 19 (Notes of Currier Termination Meeting), at 2 (AC 001503). | Deny.  The evidence shows Currier asked if he would get a letter saying he left in good standing to which Reigenborn stated he would.<br><br>Plaintiffs' Ex. 19, p. 2. | Any discussion regarding a letter saying Plaintiff Currier left in good standing occurred only after Defendant Reigenborn had made clear that Plaintiff Currier would not leave in good standing any qualify for LEOSA benefits unless he submitted a request to retire. *See* ¶¶ 48 and 49, *supra*. |
| 50. Mark Mitchell met with Reigenborn at approximately 2 p.m. Ex. 21 (Notes of Mitchell Termination Meeting), at 1. | Admit | |
| 51. Mitchell asked Reigenborn "what kind of decision-making process was put in place to fire" him. Ex. 22 (Tr. of Mitchell Termination Meeting, Part 1), at 2:7-9 (ADAMS_002552). | Admit | |

| | | |
|---|---|---|
| 52. Reigenborn communicated to Mitchell that his employment at the ACSO was over by responding: "So we're going in a different direction. We don't think that you fit where we're going." Ex. 22 (Tr. of Mitchell Termination Meeting, Part 1), at 2:10-12 (ADAMS_002552). | Admit Reigenborn made that statement but denies this statement was a termination of Mitchell's employment.  The evidence shows the meeting with Mitchell continued for almost ten minutes after that statement, followed by a five minute break for Reigenborn and McLallen to discuss how to proceed.  When Mitchell came back into the room, Reigenborn specifically stated that Mitchell wasn't fired but was given an opportunity to discuss the potential termination at this meeting.<br><br>Plaintiffs' Ex. 21 (Notes of Mitchell Meeting), P. 1-2. | Defendant Reigenborn's statement was in direct response was to Plaintiff Mitchell's question about why he was being fired. The fact that the meeting continued for some minutes after that—or that Defendant Reigenborn asserted that Plaintiff Mitchell was not fired after taking a break and receiving the advice of counsel present at the meeting—does not establish that the fact is in dispute. |
| 53. When Mitchell asked Reigenborn to explain what the different direction was, Reigenborn stated: "I don't need to tell you the direction." Ex. 22 (Tr. of Mitchell Termination Meeting, Part 1), at 3:1-2 (ADAMS_002553). | Admit | |
| 54. Reigenborn also communicated to Mitchell that his employment at the ACSO was over by stating that Mitchell's position was being eliminated. Ex. 22 (Tr. of Mitchell Termination Meeting, Part 1), at 5:20-21 (ADAMS_002555). | Admit Reigenborn made that statement but denies this statement was a termination of Mitchell's employment.  The evidence shows the meeting with Mitchell continued for almost ten minutes after that statement, followed by a five minute break for Reigenborn and McLallen to discuss how to proceed.  When Mitchell came back into the room, Reigenborn specifically stated that Mitchell wasn't fired but | Defendant Reigenborn's statement responded to Plaintiff Mitchell's questions about why he did not fit with Defendant Reigenborn's new direction or vision. *See* ¶ 52, *supra*. The fact that the meeting continued for some minutes after that—or that Defendant Reigenborn asserted that Plaintiff Mitchell was not fired at the conclusion of the meeting, after extracting Defendant |

| | was given an opportunity to discuss the potential termination at this meeting.<br><br>Plaintiffs' Ex. 21 (Notes of Mitchell Meeting), P. 1-2. | Mitchell's forced retirement and after receiving the advice of counsel present at the meeting—does not establish that the fact is in dispute. |
|---|---|---|
| 55. Mitchell asked Reigenborn why he was not being offered another position at the ACSO, to which Reigenborn did not respond. Ex. 22 (Tr. of Mitchell Termination Meeting, Part 1), at 5:24-6:15 (ADAMS_002555-56). | Admit Mitchell demanded to know why he wasn't offered a different position then followed up with a statement before Reigenborn could respond. The parties then took a break to deescalate the situation.<br><br>Plaintiffs' Ex. 22 (Tr. Of Mitchell Meeting) P. 5-6. | Defendants' response does not establish that the fact is disputed. There is no evidence that Plaintiff Mitchell "followed up with a statement before Reigenborn could respond." In fact, it is apparent from the transcript that Reigenborn had no response, and that his counsel, Ms. Carleton, intervened to deflect Plaintiff Mitchell's question. Ex. 22 (Tr. of Mitchell Termination Meeting, Part 1), at 6:5-7:2. (ADAMS_002555-56). |
| 56. Reigenborn explained that, unless Mitchell retired in lieu of termination, "you wouldn't be getting the credentials for H.R. 218, the LEOSA bill" because he would not have left the ACSO in "good standing." Ex. 22 (Tr. of Mitchell Termination Meeting, Part 2), at 3:1-7 (ADAMS_002566). | Admit Reigenborn made that statement. However, the evidence shows the statement was made in response to Mitchell's question about how to explain his departure from the ACSO. Reigenborn explained Mitchell would state he left in good standing as shown by the fact he has the LEOSA qualifications.<br><br>Plaintiffs' Ex. 22 (Tr. Of Mitchell Meeting), P. 2-3. | Defendants' response does not establish that the fact is disputed. Defendant Reigenborn's statements make clear that Plaintiff Mitchell's departure from the ACSO would be in good standing only "if you retire" and that "otherwise" it would not. Ex. 22 (Tr. of Mitchell Termination Meeting, Part 2), at 3:1-7 (ADAMS_002566). As such, Defendant Reigenborn conditioned Plaintiff Mitchell's good standing and LEOSA qualifications upon his submission of a request to retire. |

| | | |
|---|---|---|
| 57. T.J. Coates met with Reigenborn last, at approximately 5 p.m. Ex. 23 (Notes of Coates Termination Meeting), at 1. | Admit | |
| 58. By the time Plaintiff Coates met with Reigenborn, Plaintiffs had discussed the outcomes of their prior meetings with Reigenborn. Ex. 24 (Mitchell Dep.), at 63:22-64:2. | The evidence is not clear which meeting the Plaintiffs discussed with each other. Mitchell's description of the events surrounding the discussions indicate they all talked about the January 9, 2019 meeting with McLallen. Mitchell stated everyone was talking in the parking lot with no way to get home and he was holding a couple little boxes from clearing out his office. These events occurred after the Plaintiffs met with McLallen on January 9, 2019.

See Exhibit N – Deposition of Mitchell - 60, attached as an exhibit to Defendants' Motion for Summary Judgment [Doc. 53].

Mitchell later testified he did not talk to anyone about the meetings prior to his meeting with Reigenborn on January 15, 2019.

Plaintiffs' Ex. 24 P. 63-64.

Claps did not have conversations with others.

See Exhibit B – Deposition of Claps - 70;4-7, attached as an exhibit to Defendants' Motion | Plaintiff Mitchell testified that Plaintiffs "all discussed" their January 15, 2019 meetings with Reigenborn, and that he did "talk to anyone who had . . . a meeting with the sheriff that had their meeting before you." Ex. 24 (Mitchell Dep.), at 63:22-64:2. They "discussed it again," separately and after any discussions in the parking lot on January 9, 2019. *Id.* at 64:2-4.

The fact that Plaintiff Mitchell did not speak with anyone prior to his 2:00 p.m. meeting does not mean that no discussions with the other Plaintiffs took place before Plaintiff Claps's 5:00 p.m. meeting with Defendant Reigenborn.

When Claps testified that he did not recall any other conversations, he was responding to Counsel's questioning about "conversations on your way in or on your way out from the meeting" Ex. B (Claps Dep.), at 64:14-15. |

| | for Summary Judgment [Doc. 53]. | In any case, the fact that Plaintiff Coates had spoken with others about their meetings is evident from the transcript of his meeting with Defendant Reigenborn. Plaintiff Coates pointedly asked Defendant Reigenborn whether Defendant Reigenborn was offering him "the same opportunity to retire by tomorrow and same boat" as was the case with the other Plaintiffs. Ex. 25 (Tr. of Coates Termination Meeting), at 2:9-10. The only way to make sense of this question is that Plaintiff Coats had spoken with at least some of the other Plaintiffs about their meetings. |
| | Currier believed he spoke with others but couldn't recall any specifics. | |
| | See Exhibit C – Deposition of Currier - 56:8-12, attached as an exhibit to Defendants' Motion for Summary Judgment [Doc. 53]. | |
| | Prior to the meeting Claps contacted several attorneys then he, Plaintiffs and all 17 (sic) persons who received potential termination letters met with an attorney prior to meeting with Reigenborn. | |
| | See Exhibit B – Deposition of Claps - 63-64, attached as an exhibit to Defendants' Motion for Summary Judgment [Doc. 53]. | |
| 59. During Plaintiff Coates's January 15, 2019 meeting with Reigenborn, Coates asked Reigenborn to "tell me why I'm being released." Ex. 25 (Tr. of Coates Termination Meeting), at 2:5-6. | Admit that immediately after Reigenborn opened the meeting by stating the purpose was "to come in and chat" Plaintiff Coates demand "you can tell me why I'm being released."<br><br>Plaintiffs' Ex. 25, (Tr. Of Coates Meeting), P. 2 at 2-6. | Defendants' response does not establish that the fact is disputed. Plaintiff Coates asked Defendant Reigenborn why he was being fired, and Reigenborn responded that his "vision" did not "fit." |
| 60. Reigenborn communicated to Coates that his employment at the ACSO was over by responding: "I don't think your vision is going to fit our | Admit Reigenborn made that statement in response to Coates' demand about why he was not being retained.  Deny that this statement was a termination of Coates' | Defendants' response does not establish that the fact is disputed. Plaintiff Coates asked Defendant Reigenborn why he was being fired, and |

| | | |
|---|---|---|
| vision," or words to that effect. Ex. 23 (Notes of Coates Termination Meeting), at 1. | employment.  The evidence shows that Coates asked Reigenborn if he could retire or if he was being terminated.<br><br>Plaintiffs' Ex. 25 P. 2 at 9-11. | Reigenborn responded that his "vision" did not "fit." |
| 61. Reigenborn offered Coates "the same thing that we've offered the other people as well," namely the choice between resignation in lieu of termination or automatic termination. Ex. 25 (Tr. of Coates Termination Meeting), at 2:22-23. | Admit that when Coates asked if he could retire or if he was being terminated, Reigenborn agreed he could retire if wanted to and Reigenborn would provide Coates the same retirement benefits, such as his badge, as everyone else.<br><br>Plaintiffs' Ex. 25 Tr. of Coates Meeting P. 2 at 21-23. | Defendants' response does not establish that the fact is disputed. |
| 62. During their January 15, 2019 termination meetings, Reigenborn gave each Plaintiff the same ultimatum: submit a request to retire by 5 p.m. the following day, or face automatic termination. Ex. 18 (Tr. of Claps Termination Meeting), at 6:10-14; Ex. 20 (Tr. of Currier Termination Meeting), at 7:22-24; Ex. 21 (Notes of Mitchell Termination Meeting), at 2; Ex. 25 (Tr. of Coates Termination Meeting), at 2:9-11, 2:22-23. | Admit that following their opportunity to discuss their potential termination with Reigenborn each Plaintiff asked to retire and was allowed to retire in good standing.<br><br>Plaintiffs' Ex. 18 (Tr. of Claps Meeting), P. 3-5; Plaintiffs' Ex. 20 (Tr. of Currier Meeting), P. 7-8; Plaintiffs' Ex. 22 (Tr. of Mitchell Meeting), P. 3-4; Plaintiffs' Ex. 25 (Tr. of Coates Meeting) P. 2.<br><br>Deny the Plaintiffs were given an ultimatum.  Each Plaintiff "reside (sic) before any type of ultimatum."<br><br>See Exhibit 29 – Deposition of ACSO 30(b)(6) – 147. | Defendants' response does not establish that the fact is disputed. The ACSO's 30(b)(6) designee, William Dunning, was not present at the meetings and merely testified about his interpretation of the meeting transcripts. Ex. 29 (ACSO 30(b)(6) Dep.), at 147:16-21. His characterization of the meetings has no evidentiary value and does not create a disputed issue of fact. Moreover, his testimony is blatantly contradicted by the transcripts themselves. |

| | | |
|---|---|---|
| 63. At the conclusion of their January 15, 2019 termination meetings, Plaintiffs were each offered severance. Am. Ans. ¶ 160. | Admit at the conclusion of the January 15, 2019 meetings, each Plaintiff was notified the County was offering a severance package which was independent from their decision to retire.  The severance offer for each Plaintiff was:  Claps six months' salary; Currier three months' salary; Mitchell six months' salary; Coates six months' salary.<br><br>Plaintiffs' Ex. 18 (Tr. of Claps Meeting), at 7-9; Plaintiffs' Ex. 20 (Tr. of Currier Meeting), at 8, Plaintiffs' Ex. 22  (Tr. of Mitchell Meeting), at 3; Plaintiffs' Ex. 25 (Tr. of Coates Meeting), at 3-4).  Am Ans. 160. | Defendants' response does not establish that the fact is disputed. The offers of severance were "independent" from Plaintiffs' coerced retirements but are evidence that Plaintiffs employment at the ACSO had ended, regardless of whether they submitted requests to retire. |
| *Facts relating to the involuntary end of Plaintiffs' employment* | | |
| 64. As instructed, Plaintiffs each submitted requests to retire or resign in lieu of termination. Ex. 1 (Reigenborn Dep.), at 14:10-23. | Admit that Reigenborn stated all Plaintiffs came to their meetings with him and asked to retire so he allowed them to retire.<br><br>See Exhibit. F – Deposition of Reigenborn -  14:19-23, attached as an exhibit to Defendants' Motion for Summary Judgment [Doc. 53].<br><br>Claps, Currier and Mitchell each submitted a retirement notice. | |

| | | |
|---|---|---|
| | See Exhibit L – Email Resignations, attached as an exhibit to Defendants' Motion for Summary Judgment [Doc. 53].<br><br>There is no evidence that Coates sent an email requesting retirement.  Yet Coates' separation from the ACSO was a retirement not termination.<br><br>See Exhibit P – Separation Forms – Pg. 2, attached as an exhibit to Defendants' Motion for Summary Judgment [Doc. 53]. | |
| 65. Plaintiffs' resignations were in lieu of termination. Ex. 9 (ACSO 30(b)(6) Dep.), at 153:20-154:2. | The evidence for this assertion is contradictory.  When asked "does the ACSO understand the plaintiff' resignation was in lieu of termination, Dunning answered "yes."<br><br>See Exhibit 29 – Deposition of ACSO 30(b)(6) – 153:21-23 and 154:2.<br><br>However, that statement is contradicted by his earlier statement  that the Plaintiffs each chose to "reside (sic) before any type of ultimatum."<br><br>See Exhibit 29 – Deposition of ACSO 30(b)(6) – 147:16-21.<br><br>"All four plaintiffs resigned."<br><br>See Exhibit 29 – Deposition of ACSO 30(b)(6) – 148:12. | The later testimony should be credited—it came after a break and conferral among counsel specifically about this testimony. Ex. 29 (ACSO 30(b)(6) Dep.), at 151:5-18. |

| | | |
|---|---|---|
| | There is no evidence Coates submitted a request to retire. His separation clearly indicates that he retired not an involuntary separation.<br><br>See Exhibit P – Separation Forms – Pg. 2, attached as an exhibit to Defendants' Motion for Summary Judgment [Doc. 53]. | |
| 66. If Plaintiffs had not submitted retirement or resignation requests, they would have been terminated. Ex. 1 (Reigenborn Dep.), at 248:21-249:6, 252:13-253:25; Ex. 9 (ACSO 30(b)(6) Dep.), at 151:12-24; 153:6-12; Ex. 26 (Defendant Reigenborn's Responses to Requests for Admission Nos. 4 and 6), at 2-3. | The evidence on this issue is contradictory.  Reigenborn denied this statement in RFAs No. 1 and 2.   Reigenborn admitted in the RFA No. 4 and No. 6 that he "planned" to terminate Coates and Mitchell.<br><br>Plaintiffs' Ex. 26.<br><br>He also clearly stated that Coates was given an opportunity to be heard regarding his potential termination but chose to resign prior to any discussion. Reigenborn specifically stated he wouldn't have terminated Currier if Currier had asked to stay with the agency. Reigenborn didn't know if he would have terminated Claps.<br><br>See Exhibit. F – Deposition of Reigenborn -  249-249, 251:9 and 254:18-24, attached as an exhibit to Defendants' Motion for Summary Judgment [Doc. 53] . | Defendant Reigenborn's testimony about his unexpressed intentions with respect to Plaintiffs' terminations does not create a genuine dispute of fact. It cannot be genuinely undisputed that what Defendants *actually communicated* to Plaintiffs was that they would be terminated by 5:00 p.m. the following day if they did not submit written requests to retire. Ex. 9 (ACSO 30(b)(6) Dep.), at 153:6-12. |

| | | |
|---|---|---|
| 67. Plaintiffs were not permitted to select the effective date of their resignation or retirement. Ex. 18 (Tr. of Claps Termination Meeting), at 6:10-14; Ex. 20 (Tr. of Currier Termination Meeting), at 7:22-24; Ex. 21 (Notes of Mitchell Termination Meeting), at 2; Ex. 25 (Tr. of Coates Termination Meeting), at 2:9-11, 2:22-23. | Deny.  During the meetings with Reigenborn on January 15, 2019, Reigenborn only gave Plaintiffs a deadline to submit their request to retire. The Plaintiffs each chose their retirement date of January 31, 2019.<br><br>Plaintiffs' Ex. 18 (Tr. of Claps Meeting); Plaintiffs' Ex. 20 (Tr. of Currier Meeting); Plaintiffs' Ex. 22 (Tr. of Mitchell Meeting; Plaintiffs' Ex. 25 (Tr. of Coates Meeting); See Exhibit. P – Separation Forms, attached as an exhibit to Defendants' Motion for Summary Judgment [Doc. 53].<br><br>Claps stated he wanted to retire at the end of January and was provided paid administrative leave until that time.<br><br>See Exhibit B – Deposition of Claps  - 3, 5-6; Exhibit. P – Separation Forms; and Exhibit L - Email Resignation, Pg. 2, attached as exhibits to Defendants' Motion for Summary Judgment [Doc. 53].<br><br>During his meeting with Reigenborn, Mitchell stated he was on the phone with retirement and would retire January 31.<br><br>Plaintiffs' Ex. 22, Mitchell Tr. Of Meeting, P. 4. See Exhibit L - Email Resignation, Pg. 3; and See Exhibit. P – | There is no evidence that Plaintiffs had any ability to choose a date other than January 31, 2019. As explained by Defendants' counsel, Ms. Carelton, during Plaintiff Currier's termination meeting, that date had already been chosen by the County— "They will move you over to the County budget, keep you on admin leave until the end of this month . . . ." Ex. 20 (Tr. of Currier Termination Meeting), at 8:10-11. She explained the same to Plaintiff Claps at his termination meeting. Ex. 18 (Tr. of Claps Termination Meeting), at 5:16-6:15. Indeed, the January 31, 2019 date was a term of the draft severance agreements provided to Plaintiffs as early as January 11, 2019, before the January 15, 2019 meetings. |

| | Separation Forms, attached as an exhibit to Defendants' Motion for Summary Judgment [Doc. 53]. | |
|---|---|---|
| 68. Reigenborn never offered Plaintiffs any other position at the ACSO. Ex. 1 (Reigenborn Dep.), at 255:3-4; Ex. 18 (Tr. of Claps Termination Meeting), at 5:8-10; Ex. 20 (Tr. of Currier Termination Meeting); Ex. 22 (Tr. of Mitchell Termination Meeting, Part 1), at 5:24-6:15 (ADAMS_002555-56); Ex. 25 (Tr. of Coates Termination Meeting). | Admit that all of the Plaintiffs resigned prior to being offered a different position with the ACSO.<br><br>See Exhibit. F – Deposition of Reigenborn - 14:19-23, attached as an exhibit to Defendants' Motion for Summary Judgment [Doc. 53].<br><br>Plaintiffs' Ex. 18 (Tr. of Claps Meeting); Plaintiffs' Ex. 20 (Tr. of Currier Meeting); Plaintiffs' Ex. 22 (Tr. of Mitchell Meeting; Plaintiffs' Ex. 25 (Tr. of Coates Meeting). | Defendants' response does not establish that the fact is disputed. |
| 69. Defendants did not give Plaintiffs an alternative to resignation. Ex. 9 (ACSO 30(b)(6) Dep.), at 150:17-21. | The evidence shows the Plaintiffs were allowed to retire. Adams County offered each Plaintiff a severance package as follows:  Claps six months' salary; Currier three months' salary; Mitchell six months' salary; Coates six months' salary.<br><br>Plaintiffs' Ex. 18 (Tr. of Claps Meeting), at 7-9; Plaintiffs' Ex. 20 (Tr. of Currier Meeting), at 8; Plaintiffs' Ex. 22 (Tr. of Mitchell Meeting), at 3; Ex. 25 (Tr. of Coates Meeting), at 3-4)<br>All of the Plaintiffs and others receiving the potential | Defendants' response does not establish that the fact is disputed. It is undisputed that Plaintiffs would be terminated even if they had not requested to retire. *See* ¶ 66, *supra*. |

| | | |
|---|---|---|
| | termination letters met with an attorney prior to meeting with Reigenborn.<br><br>See Exhibit B – Deposition of Claps - 63-64., attached as an exhibit to Defendants' Motion for Summary Judgment [Doc. 53]. | |
| 70. The Law Enforcement Officers Safety Act (LEOSA, or H.R. 218) is a federal law that allows former law enforcement officers to carry a concealed firearm and carry a retired badge. Ex. 14 (McLallen Dep.), at 246:1-3. | Admit | |
| 71. The ability to obtain concealed firearm credentials under LEOSA is a benefit of resigning in lieu of termination. Ex. 14 (McLallen Dep.), at 270:9-271:4. | Admit that the statute requires a law enforcement officer leave in good standing to qualify for these credentials. 18 USC § 926C(c). | |
| 72. The January 15, 2019 termination meetings were a "final hearing," and there was no other opportunity for Plaintiffs to respond to their terminations. Ex. 1 (Reigenborn Dep.), at 241:10-17; Ex. 20 (Tr. of Currier Termination Meeting), at 2:2-3; Ex. 26 (Defendant Reigenborn's Responses to Requests for Admission No. 14), at 4. | Admit the hearing with Reigenborn on January 15, 2019 was the Plaintiffs' opportunity to be heard by the Sheriff prior to revoking an appointment as provided by Colorado statute C.R.S. 30-10-506.<br><br>See Exhibit. F – Deposition of Reigenborn - 241:20-21, attached as an exhibit to Defendants' Motion for Summary Judgment [Doc. 53] | |
| 73. Plaintiffs were not facing internal affairs investigations or | Admit | |

| | | |
|---|---|---|
| other disciplinary proceedings. Ex. 26 (Defendant Reigenborn's Responses to Requests for Admission Nos. 8 and 10), at 3; Ex. 14 (McLallen Dep.), at 230:25-231:6. | | |
| 74. Plaintiffs each declined the severance offers made to them at the January 15, 2019 termination meetings. Am. Ans. ¶ 161. | Admit that none of the Plaintiffs accepted the severance packages and waivers offered by the County.<br><br>Am. Ans. ¶ 161. | |

Respectfully Submitted,

RATHOD | MOHAMEDBHAI LLC

/s Felipe Bohnet-Gomez
Felipe Bohnet-Gomez
Benjamin DeGolia
Iris Halpern
Siddhartha Rathod
2701 Lawrence St., Suite 100
Denver, CO 80205
(303) 578-4400
fbg@rmlawyers.com
bd@rmlawyers.com
ih@rmlawyers.com
sr@rmlawyers.com

*Attorneys for Plaintiffs*