## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 20-cv-01936-STV

TIMOTHY JAMES COATES;
GENE CLAPS;
MARK MITCHELL; and
KEVIN CURRIER

      Plaintiffs,

v.

RICHARD A. REIGENBORN, in his official and individual capacity

      Defendants.

_____

## DEFENDANT'S RESPONSE TO PLAINTIFFS' MOTION FOR ORDER CERTIFYING INTERLOCUTORY APPEAL AS FRIVOLOUS

_____

Sheriff Reigenborn acknowledges (as the Supreme Court itself has stated) that the contours of liability under *Monell v. Department of Soc. Svcs.*, 436 U.S. 658 (1978) are not always easily ascertained. A host of cases, moreover, invoke footnote 55 in *Monell* as shorthand for what is essentially a pleading device to name a governmental entity. But there are limits to the *Monell* doctrine that must be observed—especially where a plaintiff invokes the policymaker branch of that doctrine. One of them is that Monell requires an inquiry into the real party in interest. Here, the Sheriff is an independent constitutional officer over whom Adams County, a separate governmental entity, exercises no authority as to the hiring and firing of deputies. Thus, respectfully, the Court circumvented the Sheriff's immunity (whether qualified

or Eleventh Amendment) by treating him as equivalent to the County without conducting the necessary real-party-in-interest analysis. And this is a case where the County never appeared and a *Monell* claim was not pled against it or any other defendant.

The Sheriff further acknowledges that *Swint v. Chambers Cnty. Comm'n*, 514 U.S. 35, 43 (1995) does not allow municipalities a right of interlocutory appeal similar to that allowed for qualified immunity. But Sheriff Reigenborn is not a municipality. Nor is he the agent of one when it comes to hiring and firing deputies—the very thing required by footnote 55 of *Monell*. Rather, that exclusive statutory power is delegated to him by the State of Colorado, not Adams County. Any official capacity claim flowing from the exercise of that power that could have been pled is, therefore, barred by the Eleventh Amendment.

Further, Plaintiffs' motion for an order certifying Sheriff Reigenborn's appeal to the U.S. Court of Appeals for the Tenth Circuit as frivolous invites this Court to take an unprecedented step—to weigh in on an appellate jurisdictional question that has already been briefed on appeal and referred to that court's merits panel. No district court within the Tenth Circuit appears ever to have done so. Nor has the Tenth Circuit condoned that form of intervention by a district court. In sum, the Court should deny the Plaintiffs' motion.

## PROCEDURAL BACKGROUND

### I.    District Court Proceedings:

1.    On July 1, 2020, Plaintiffs' filed a complaint that asserted two causes of action under 42 U.S.C. § 1983 arising out of Sheriff Reigenborn's January 9, 2019 issuance of notice letters to the Plaintiffs under Colo. Rev. Stat. § 30-10-506.

2.    In the caption, the complaint named "THE ADAMS COUNTY SHERIFF'S OFFICE, a governmental entity;" and "RICHARD A. REIGENBORN, in his official and individual capacity" as the defendants. (ECF # 1 at 1.)

3.    In the body of the complaint, the Plaintiffs alleged "Defendant [The Adams County Sheriff's Office] ACSO is the law enforcement agency of Adams County." (*Id*. at 3, ¶ 7.)

4.    As to Sheriff Reigenborn, the complaint alleged:

Defendant Reigenborn was and remains the elected Sheriff of ACSO, a final policymaker for ACSO, and an agent of ACSO. At all relevant times, Sheriff Reigenborn acted under color of state law in his capacity as the Sheriff of Adams County. *See* C.R.S. § 30-10-506 (vesting power of appointment in the office of sheriff); *Tonjes v. Park Cty. Sheriff's Office*, 300 F. Supp. 3d 1308, 1332 (D. Colo. 2018) ("C.R.S. § 30-10-506 plainly makes the sheriff the final policymaker for the Sheriff's Office with respect to employment of deputies.").

(*Id*. at 3, ¶ 8.)

5.    Neither Adams County, the governmental entity, nor the Board of County Commissioners, its authorized decisionmaker, was named in the caption or anywhere in the body of the complaint in conformity with the statutory requirement. *See* Colo. Rev. Stat. § 30-11-105.

6. The complaint asserted two claims for relief. The first was for violation of the First Amendment. (*Id.* at 22-24, ¶¶ 164-177.) The other was for violation of the Fourteenth Amendment. Neither of the claims pled even the formulaic elements of a claim under *Monell*.[1]

7. On July 7, 2020, the named Defendants waived service of the complaint. (ECF # 8 and 9.)

8. Neither Adams County, nor the Board of County Commissioners were served with the complaint. Nor did they waive service.

9. On July 8, 2020, attorneys from the Adams County Attorney's office entered an appearance on behalf of the named Defendants. (ECF # 10, 11, and 12.).[2]

10. No attorney entered an appearance for Adams County or the Board of County Commissioners.

11. On August 31, 2020, the named Defendants filed a motion to dismiss (ECF # 14), which was denied by the Court on January 26, 2021. (ECF # 31.)

---

[1] As quoted above, the Plaintiffs did allege the Sheriff was a final policymaker for the Adams County Sheriff's Office (which is not a legal entity). (*See* ECF # 1 at 3, ¶ 8; 23, ¶ 172.) But no other elements of *Monell* were pled, nor was any specific act of delegation of authority by any entity alleged.

[2] Whether under the Liability of Peace Officers Act, Colo. Rev. Stat. § 29-5-111, or the Colorado Governmental Immunity Act, Colo. Rev. Stat. §§ 24-10-108 & 118, the Board of County Commissioners has a qualified indemnification obligation that carries with it the option to control the defense and appoint the County Attorney's office to represent the Sheriff. *See* Colo. Rev. Stat. § 30-11-118.

12.     Neither Adams County nor the Board of County Commissioners filed a motion to dismiss.

13.     On September 4, 2020, the Court entered a scheduling order that governed discovery in the case and set the joinder of parties and amendment of pleadings deadline at November 30, 2020. (ECF # 22 at 18.)

14.     Neither Adams County nor the Board of County Commissioners were referenced in the Scheduling Order.

15.     Beginning in November 2020, the Plaintiffs served discovery solely on Sheriff Reigenborn, in both his capacities. (*See*, *e.g.*, ECF # 53-15.) No written discovery was served on the Adams County Sheriff's Office.

16.     Neither Adams County nor the Board of County Commissioners received, responded to, or served their own discovery. Nor was that contemplated under the Scheduling Order.

17.     On September 15, 2021, Plaintiffs conducted a deposition of the Adams County Sheriff's office pursuant to Fed. R. Civ. P. 30(b)(6).[3] A deputy sheriff was the designee. (*See*, *e.g.*, ECF # 57-4.)

---

[3] Among other things, Rule 30(b)(6) allows for a deposition of "a governmental agency," whether a party or not, without that agency necessarily being a legal entity. *Compare Padula v. Webster*, 822 F.2d 97, 104 (D.C. Cir. 1987) (describing the FBI as a "national law enforcement agency" and a "governmental agency") *with Martinez v. Winner*, 771 F.2d 424, 442 (10th Cir. 1985) (the FBI is not a legal entity capable of being sued); *see also SEC v. Goldstone*, 301 F.R.D. 593, 630, 639, 646-47, 656 & 676 (D.N.M. 2014) (evaluating potential deposition of the SEC as a governmental agency under Rule 30(b)(6), but denying deposition on other grounds).

18.     Neither Adams County nor any member of the Board of County Commissioners was deposed in this action.

19.     On November 22, 2021, Plaintiffs and the named Defendants filed cross-motions for summary judgment. (ECF # 51 and 53.)

20.     Neither Adams County nor the Board of County Commissioners filed a motion for summary judgment.

21.     No facts were adduced in the extensive summary judgment briefing that either Adams County, or its Board of County Commissioners, participated in or ratified the Sheriff's employment decisions with respect to the Plaintiffs.

22.     In Defendants' motion for summary judgment, the Sheriff argued, among other things:

> The gravamen of Plaintiffs' alleged injury was a direct action taken by the Sheriff under color of state law, namely the issuance of a written notice under Section 506, which falls squarely within the Sheriff's individual capacity. *See Kentucky v. Graham*, 473 U.S. 159, 165 (1985); *Lontine v. Van Cleave*, 483 F.2d 966, 968 (10th Cir. 1973) (suspension of Adams County deputy under predecessor to Section 506 was done under color of state law), *Bristol*, 312 F.3d at 1221 (suspending deputy does not set official policy). Because the County does not control Sheriff Reigenborn's employment decisions and because Plaintiffs have not asserted a claim under *Monell v. Department of Social Services*, 436 U.S. 658, 691 (1978), only Sheriff Reigenborn in his individual capacity should be named.

(ECF # 53 at 5.)

23.     On September 28, 2022, the Court granted in part the Sheriffs' motion for summary judgment. (ECF # 71.) After summarizing the arguments of the parties and certain case law, the Court held in relevant part:

Defendants appear to argue both that the County cannot be liable for Sheriff Reigenborn's actions because Sheriff Reigenborn is not under the County's control and therefore his actions cannot be imputed to the County, and that ACSO cannot be sued separately because it is simply an office or department within the County with no separate legal entity. These positions are untenable. To be sure, this District is split as to whether the proper municipal defendant is ACSO or the County. […] Some cases hold that the proper defendant is the Sheriff's Department because it is a constitutionally separate office. […] Some cases hold that the county is the proper defendant because the sheriff's office, like a municipal fire or police department, has no separate legal existence from the county.[…] And at least one has held that both are proper defendants. […] But none have allowed the type of municipal-liability loophole that Defendants seek to create here. Such a result would unfairly punish Plaintiffs for the legal uncertainty, despite their viable municipal liability claims.

While recognizing the dispute, the Court holds that the County is the proper municipal defendant, and that Plaintiffs' claims have been properly brought against it by naming Sheriff Reigenborn in his official capacity. […] Defendants argue that the County cannot be held liable for Sheriff Reigenborn's actions because the County does not control his employment decisions. [#53 at 6] But this simply means that Sheriff Reigenborn is the final policymaker on personnel matters for the County and that his employment decisions are therefore chargeable as an official act of the County. […]

Defendants' citation to *Bristol* is unpersuasive. There, the Tenth Circuit acknowledged caselaw "suggest[ing] that counties can be held liable for the misdeeds of Sheriffs . . . when the Sheriff is held to set 'official policy' for the county." *Id.* at 1221. The court then held that "the Sheriff was not setting 'official policy' in firing [the plaintiff], except to the extent that requiring employees to be able to perform their jobs can be called a 'policy.'" *Id.* (emphasis added) That is, the court accepted that a termination creates official policy. It simply rejected the notion that the policy set in that case was actionable against the County in any way. And, indeed, one of the cases cited in *Bristol* for the proposition that caselaw "suggest[s] that counties can be held liable for the misdeeds of Sheriffs," *id.* at 1221, involved a case in which the Eleventh Circuit held that a county could be held liable when a sheriff, who had "absolute and unfettered authority over the appointment, retention, rate of pay and

acts of his deputies," terminated a deputy sheriff in violation of the First Amendment. *Lucas v. O'Loughlin*, 831 F.2d 232, 233-36 (11th Cir. 1987).

Thus, the Court holds that Plaintiffs' case is properly pled against Sheriff Reigenborn in his official capacity, but not against ACSO. Accordingly, Defendant's Motion is GRANTED IN PART and DENIED IN PART with respect to Plaintiffs' municipal liability claims.

(ECF # 71 at 31-35 (citations omitted where noted by ellipses)).

24.     In footnote 14, the Court added:

It is worth noting that the precise identity of the municipal defendant in this case "ultimately . . . does not matter" under Colorado law—especially where, as here, discovery has been completed. *Chavez*, 426 F. Supp. 3d at 809 (D. Colo. 2019). Pursuant to a Colorado statute, judgments against: 1) "a county of this state;" 2) "any county officer . . . in his official capacity;" or 3) "any county officer . . . in his . . . name of office" are paid for in the same way—by the county and through a county tax. C.R.S. § 30-25-104; *Chavez*, 426 F. Supp. at 812-13 ("[W]hen a *Monell* claim is based on a sheriff-made policy, any distinction between suing the sheriff's office versus suing the county becomes purely theoretical, because the county will pay regardless.").

(*Id.* at 35, n.14.)

## II.   Appellate Court Proceedings:

25.     On October 6, 2022, Sheriff Reigenborn—in both capacities—timely filed a notice of appeal.

26.     In his docketing statement filed on October 25, 2022, the Sheriff asserted a right to appeal under 28 U.S.C. § 1291 pursuant to the collateral order doctrine based on, among other things, the argument that the Sheriff, not the County, is the real party in interest in the lawsuit regardless of the Plaintiffs' naming conventions. *See* Ex. A.

27.     On October 20, 2022, before Sheriff Reigenborn's deadline to file his docketing statement, Plaintiffs filed a motion to dismiss the appeal with the Tenth Circuit raising many of the same arguments they now press before this Court. *See* Ex. B.

28.     On November 3, 2022, the Sheriff filed his response in opposition to the Plaintiffs' motion to dismiss and asserted the collateral order doctrine as the basis for his appeal. *See* Ex. C.

29.     The following day, the Clerk of the Tenth Circuit issued an order that the Plaintiffs' motion would be "referred to the panel of judges that will later be assigned to consider this appeal on the merits." As such, "[n]o decision on the jurisdictional issue will be made at this time." *See* Ex. D.

30.     On November 10, 2022, Plaintiffs filed a reply brief in support of their motion to dismiss. *See* Ex. E.

31.     On November 14, 2022, the Clerk of the Tenth Circuit issued the following minute order in pertinent part:

> Appellees' reply in support of their motion to dismiss appeal for lack of appellate jurisdiction is referred to the panel that will be assigned to consider this appeal on the merits, per the court's November 4, 2022 order.

*See* Ex. F.

32.     The Sheriff's opening brief to the Tenth Circuit is due on December 14, 2022.

33.     The Sheriff has sought no extensions of time at the Court of Appeals.

## LEGAL STANDARD

Ordinarily, the filing of a notice of appeal "divests the district court of its control over those aspects of the case involved in the appeal." *Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56, 58 (1982). In support of this Court's ability nevertheless to certify the Sheriff's appeal as frivolous, Plaintiffs quote several passages from the Tenth Circuit's decision in *Stewart v. Donges*, 915 F.2d 572 (10th Cir. 1990) and cases from other circuits quoted therein. In *Stewart* itself, those statements were dictum. The appellate court neither found the appeal to be frivolous, nor had the district court certified it as such. A few decisions have relied upon *Stewart*'s procedure, but rarely so. *See, e.g.*, *Martinez v. Mares*, 613 F. App'x 731, 735 & n. 8 & 9 (10th Cir. June 2, 2015); *Langley v. Adams County*, 987 F.2d 1473, 1477 (10th Cir. 1993). The procedure, moreover, comes with a sizable risk—if a district court's frivolousness determination is later found to be incorrect, the defendants can argue that any actions taken by the district court after the notice of appeal should be vacated for lack of jurisdiction. *Id.*; *see also Stewart*, 915 F.2d at 579 (vacating directed verdict).

For its part, the United States Supreme Court has expressed some reservation regarding the need for such a practice at the district court level, especially where immunity is involved. *See Behrens v. Pelletier*, 516 U.S. 299, 310-11 (1995), *citing Stewart*, 915 F.2d at 576-577. This is, in part, because "'it is well within the supervisory powers of the courts of appeals to establish summary procedures and

calendars to weed out frivolous claims.'" *Id.*, quoting *Abney v. United States*, 431 U.S. 651, 662 n.8 (1977).

The Supreme Court's concern is all the more pronounced here where Plaintiffs elected to file a motion first with the Tenth Circuit. After the Sheriff responded, the Court decided to refer it to the merits panel for resolution. The procedure in *Stewart* does not contemplate a district court resolving the same issue that has already been briefed and referred to the Tenth Circuit's merits panel.

## ARGUMENT

If the Court is to consider the merits of the Plaintiffs' motion, it should be borne in mind that the Sheriff has not yet filed his opening brief. Plaintiffs nevertheless undertake to anticipate the Sheriffs' "legal theory" and cast it as "his individual-capacity qualified immunity extend[ing] to the official-capacity claims[.]" (Mot. at 2.) This is not correct. The crux of the appeal is whether the Sheriff, in any capacity, is the real party-in-interest for purposes of *Monell*. If he is, then either qualified or Eleventh Amendment immunity applies. It should also be observed that Eleventh Amendment immunity can be raised at any time and also provides a right of appeal under the collateral order doctrine. *See Edelman v. Jordan*, 415 U.S. 651, 677-78 (1973); *Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 141 (1993).

As for *Swint*, it does not govern. The proper classification of the defendant was not at issue in *Swint*. There, the County was directly and expressly sued for its

policies. The Sheriff, it was alleged, was a delegated policymaker for the County and authorized a series of warrantless raids. Unlike in *Swint*, the classification of the Sheriff is at issue here.

A constitutional county officer's status for purposes of Section 1983 is not an "all or nothing" proposition. It is, rather, a functional test that must be evaluated on a function-by-function basis. *McMillian v. Monroe County*, 520 U.S. 781, 785 & 793 (1997) (holding that an Alabama county sheriff was a State, not county, "policy maker" and entitled to Eleventh Amendment immunity when investigating a murder under the state's criminal code and that "the question is not whether Sheriff Tate acts for Alabama or Monroe County in some categorical, 'all or nothing' manner," but in "a particular area, or on a particular issue."); *see also Chilcoat v. San Juan Cnty.*, 41 F.4th 1196, 1220 n.26 (10th Cir. 2022) (same). *Cf. Struble v. Barger*, 261 P.2d 497, 498 (Colo. 1953) (referring to the office of the county sheriff serving as both an "executive officer" and an "officer of the court").

Under very limited circumstances, *Monell* and its progeny allow a plaintiff to assert a claim against a governmental entity based on the single action of a policymaker, provided several requirements are all met. These include but are not limited to:

- The entity must have either undertaken some affirmative act of delegation to the policymaker in the first instance or ratified the decision after the fact. This is, in part, because direct participation is a requirement of

Section 1983 liability. *See Bennett v. Passic*, 545 F.2d 1260, 1262-62 (10th Cir. 1976). Respondeat superior is not a basis for entity liability under Section 1983. *See Monell*, 436 U.S. at 663, n.7 & 691.

- The Plaintiffs must expressly identify the *entity's* involvement leading to its liability. This is meant to be a "rigorous" standard. *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 405 (1997). If the entity is meant to be liable because of the actions of a final policymaker, the plaintiff must identify an affirmative act of delegation. *See, e.g., Arevalo v. City of Farmers Branch, Texas*, No. 3:16-CV-1540-D, 2017 U.S. Dist. LEXIS 191030, 2017 WL 5569841, at *6 (N.D. Tex. Nov. 20, 2017) ("[C]onclusory assertions" that a chief of police "is a 'final policymaker'" is a "threadbare recitatio[n] of a Monell element" and insufficient plead a Monell claim "because the policymaking authority of chiefs of police within their own department is not something that can be inferred from their title alone.").

- The entity, moreover, not the officer, must be the real-party-in-interest. *See Lewis v. Clarke*, 581 U.S. 155, 162 (2017) (holding "in the context of lawsuits against state and federal employees or entities, courts should look to whether the sovereign is the real party in interest to determine whether sovereign immunity bars the suit," and that in "lawsuits brought against employees in their official capacity represent only another way of pleading an

action against an entity of which *an officer is an agent*, and they may also be barred by sovereign immunity.") (quotation omitted and emphasis added).

- The touchstone of that inquiry is whether the entity's conduct (assuming there was any) was the "moving force" behind the injury. *Monell*, 436 U.S. at 694.

- Indemnification obligations are not relevant to the real-party-in-interest inquiry. *Lewis*, 581 U.S. at 165 ("The critical inquiry is who may be legally bound by the court's adverse judgment, not who will ultimately pick up the tab.").

- Where a plaintiff seeks to name the entity through the pleading construct of naming an elected official in his official capacity as noted in footnote 55 of *Monell*, the plaintiff must still give the entity "due notice" of the suit and an opportunity to respond. *Brandon v. Holt*, 469 U.S. 464, 471-72 (1985).

Plaintiffs did not meet any of these requirements. Under Colorado law, if a claim is meant to be asserted against the County as a legal entity, a plaintiff is required to bring an action against a county in the name of the board of county commissioners. *See* Colo. Rev. Stat. § 30-11-105; *Gonzales v. Martinez*, 403 F.3d 1179, 1182 n.7 (10th Cir. 2005) (citing Colo. Rev. Stat. § 30-11-105 and labeling a failure to meet that requirement a "jurisdictional flaw"); *see also Calahan v. County of Jefferson*, 429 P.2d 301, 301 (Colo. 1967). But the Plaintiffs did not do that here.

Neither the County nor the Board participated in any way in the case. Nor did the Plaintiffs plead even a superficial *Monell* claim against the County or the Sheriff in his official capacity in their complaint. Merely alleging the Sheriff is a policymaker for a law enforcement agency (that is not a legal entity)[4] does not plead a *Monell* claim against that agency, let alone a separate governmental entity. In short, Adams County did not receive due notice and an opportunity to respond as required by *Brandon v. Holt*, 469 U.S. 464, 471-72 (1985).

Had the separate legal entity of Adams County been properly named, it could not and did not delegate or restrict Sheriff Reigenborn's exclusive statutory power over the hiring and firing of deputies. The closest case raising the legal and factual issues raised here is *Pembaur v. City of Cincinnati*, 475 U.S. 469 (1986). In *Pembaur*,

---

[4] As referenced in the Defendants' motion for summary judgment, because the Adams County Sheriff's office is not a legally established independent entity with its own personhood, it is not a juridical entity that can be sued under this Court's in personam jurisdiction. This is a common issue when a party attempts to name functional units. *See*, *e.g.*, *Martinez*, 771 F.2d at 442 ("the Department of Justice was properly dismissed as a named defendant, if for no other reason, because it is not a juridical entity separate from the United States or the individual officers and employees who direct and work for it. The same is true of the Federal Bureau of Investigation as a named defendant."). Here, legally, the Sheriff's "office" is not a person that can be separately sued any more than the FBI or the DOJ. Nor is the Sheriff's "office" a department within the governing structure of the Adams County, the legal entity. Adams County, through its Board, has no statutory power to organize or supervise a law enforcement agency. At most, Adams County provides a vehicle through which the State ensures disparate constitutional actors within the jurisdictional boundaries of the county receive funding from local revenue sources, acquire and maintain property, and receive contracting support. In this respect, suing Adams County, the legal entity, for a Sheriff's decision to terminate a deputy is not unlike a federal law clerk attempting to sue the General Services Administration (GSA) because she or he was fired by a judicial officer.

the plaintiff sued several county police officers, among others, for breaking down the door to his medical clinic without a search warrant to execute an arrest warrant on a third-party. *Id*. at 472-73. The county police officers on the scene broke down the door only after consulting their supervisors who in turn advised them to contact the county prosecutor. *Id*. The county prosecutor advised the officers to break down the door. *Id*. at 473. On appeal, the Supreme Court held that the county sheriff and the county prosecutor set county policy for *Monell* purposes when they advised the officers to break down the door despite the absence of a county policy or practice. *Id*. at 484-85.

In so holding, the Court reasoned that *Monell*'s "'official policy' requirement was intended to distinguish acts of the municipality from acts of employees of the municipality, and thereby make clear that municipal liability is limited to action for which *the municipality is actually responsible*." *Id*. at 479 (emphasis added). Under *Monell*, "recovery from a municipality is limited to acts that are, properly speaking, acts 'of the municipality'—that is, acts which *the municipality has officially sanctioned or ordered*." *Id*. at 480 (emphasis added). Because "a single decision by [a municipality's] properly constituted legislative body" can constitute a policy, *id*. at 480, then so too could a "decision to adopt [a] particular course of action" when "*properly made* by *that government's authorized* decisionmakers." *Id*. at 481 (emphasis added). Because at the time, county policy allowed the county sheriff and the county prosecutor to make the decision as to how to execute an arrest warrant, their instructions to the police officers constituted county policy.

In a portion of the opinion, Part II-B, which only commanded a plurality of four Justices, the plurality "hasten[ed] to emphasize that not every decision by municipal officers automatically subjects the municipality to § 1983 liability." *Id.* at 481. In a footnote, the plurality suggested an example where a county would not be liable for a decision by the county sheriff:

> Thus, for example, the County Sheriff may have discretion to hire and fire employees without also being the county official responsible for establishing county employment policy. If this were the case, the Sheriff's decisions respecting employment would not give rise to municipal liability, although similar decisions with respect to law enforcement practices, over which the Sheriff is the official policymaker, would give rise to municipal liability. Instead, if county employment policy was set by the Board of County Commissioners, only that body's decisions would provide a basis for county liability. This would be true even if the Board left the Sheriff discretion to hire and fire employees and the Sheriff exercised that discretion in an unconstitutional manner; the decision to act unlawfully would not be a decision of the Board. However, if the Board delegated its power to establish final employment policy to the Sheriff, the Sheriff's decisions would represent county policy and could give rise to municipal liability.

*Id.* at 483, n.12.

Justice O'Connor, who did not join Part II-B, filed a concurrence. In her much narrower opinion, Justice O'Connor noted an important further limitation to the Court's reasoning—namely, that warrantless forcible entry was not unlawful at the time the county sheriff and the county prosecutor instructed the police officers to do so. *Id.* at 491. Only because it was a then-legally-permissible choice could it constitute county policy. *Id.* (citing Justice White's separate concurrence). But under that concurrence, a knowingly unconstitutional act cannot become county policy precisely

17

because it is unconstitutional. Justice O'Connor further expressed "fear that the standard the majority articulat[ed] may be misread to expose municipalities to liability beyond that envisioned by the Court in *Monell*." *Id.* at 491. Thus, under Justice O'Connor's narrower reasoning in *Pembaur*, the County cannot be liable for Sheriff Reigenborn's actions if they were unconstitutional because the County cannot delegate such unlawful authority to the Sheriff.

Even under the broader plurality, however, Sheriff Reigenborn is not a policymaker for the County precisely because the County did not delegate any authority to him. It had no authority to delegate. The power exercised by the Sheriff was given to him and him alone by the Colorado General Assembly. Colorado courts have jealously guarded it against attempts by County governments to limit it. *See Schroeder v. Bd. of Cty. Comm'rs*, 381 P.2d 820, 822-23 (Colo. 1963) (Board cannot use budgetary authority to coerce the firing of a county official's employee); *see also Tunget v. Bd. of Cty. Comm'rs*, 992 P.2d 650, 652 (Colo. App. 2000) and *Bristol v. Bd. of Cty. Comm'rs*, 312 F.3d 1213, 1215 (10th Cir. 2002). If the County, through the Board, had possessed such a statutory power (which it doesn't), it could not have delegated it to the Sheriff. *See Bd. of Cty. Comm'rs v. Davis*, 150 P. 324, 326 (Colo. App. 1915) ("The board cannot shift or evade its responsibility for performance of its duties; within the scope of its powers it is supreme; in the exercise of its reasonable discretion, in the administration of county affairs, it cannot be superseded[.]").

If the Sheriff is anyone's delegated agent for purposes of law enforcement hiring and firing, he is the State of Colorado's agent. That gives him Eleventh Amendment immunity in his official capacity for that function. The Eleventh Circuit, which the Court looked to in its motion for summary judgment order as to Florida deputies (ECF # 71 at 35, *citing Lucas v. O'Loughlin*, 831 F.2d 232, 233-36 (11th Cir. 1987)), also holds that county sheriffs in Georgia with similar statutory powers to those held by Colorado Sheriffs have Eleventh Amendment immunity for employment actions. *See Pelliteri v. Pine*, 776 F.3d 777, 782 (11th Cir. 2015); *see also* R. COOLEY, HANDBOOK ON THE LAW OF MUNICIPAL CORPORATIONS 512 (1914) ("Sheriffs, coroners, clerks and other so-called county officers are properly state officers for the county. Their functions and duties pertain chiefly to the affairs of state in the county"); 3 J. BOUVIER, BOUVIER'S LAW DICTIONARY 3058 (8th ed. 1914) (defining sheriff as "[a] county officer representing the executive or administrative power of the state within his county").[5]

As for *Chavez v. Bd. of Cty. Comm'rs*, 426 F. Supp. 3d 802, 812 (D. Colo. 2019), on the significance of a county's duty to indemnify a sheriff, it is directly inconsistent with the U.S. Supreme Court's holding in *Lewis*. Moreover, *Chavez* misreads Colo.

---

[5] *Accord Dixon v. People*, 127 P. 930, 932 (Colo. 1911) (holding a county court is part of the state judicial branch and noting that sometimes the Colorado Constitution's "use of the word[ . . .] 'county' . . . has no other significance than to give appropriate names to tribunals of government[,]" and that these "prefixes can in no sense imply that the persons, who, under the law, become the members or officers of such tribunals, thereby become officers of the respective entities that bear such prefixes as their territorial designation.").

Rev. Stat. § 30-25-104. That statute protects a county, which may sometimes be direct judgment creditor, from having its property liened. Instead, the statute authorizes the County to raise taxes to satisfy direct judgments. It also additionally authorizes the County to use its taxing power to raise funds to satisfy indemnification obligations. It does not conflate the two or otherwise transform independently elected constitutional county officers into agents of the legal entity, Adams County.

## CONCLUSION

By treating the Sheriff and the County as equivalent, the Court's order jeopardizes the Sheriff's constitutional and statutory autonomy under Colorado law and circumvents his immunities. Because the Sheriff's statutory powers and conduct will be put at issue in a trial at which he will be a primary participant, he and his successor will be bound by any judgment. He is, therefore, the real party-in-interest. As such, one or the other of his immunities bars the Plaintiffs' remaining claim. The Sheriff's appeal, therefore, is not frivolous.

DATED:  December 12, 2022.             Respectfully submitted,


                                        *s/Michael A. Sink*
                                        Michael A. Sink
                                        Assistant County Attorney
                                        Adams County Attorney's Office
                                        4430 S. Adams County Pkwy
                                        5th Floor, Suite C5000B
                                        Brighton, CO  80601
                                        Phone:  (720) 523-6116
                                        Fax:  (720) 523-6114
                                        msink@adcogov.org
                                        *Counsel  for Defendant Sheriff Reigenborn*

**CERTIFICATE OF SERVICE**

I hereby certify that on December 12, 2022, I caused the foregoing to be electronically filed with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record.

*s/Michael A. Sink*
Michael A. Sink
Assistant County Attorney
Adams County Attorney's Office
4430 S. Adams County Pkwy
5th Floor, Suite C5000B
Brighton, CO  80601
Phone:  (720) 523-6116
Fax:  (720) 523-6114
msink@adcogov.org
*Counsel  for Defendant*
*Richard A. Reigenborn*
