APPEAL,CONMAG,JD1,MJ CIV PP

# U.S. District Court – District of Colorado
## District of Colorado (Denver)
## CIVIL DOCKET FOR CASE #: <u>1:20–cv–01936–STV</u>

Coates et al v. Adams County Sheriff's Office, The et al
Assigned to: Magistrate Judge Scott T. Varholak
 Case in other court:  USCA–10th Circuit, 22–01339
Cause: 42:1983 Civil Rights Act

Date Filed: 07/01/2020
Jury Demand: Plaintiff
Nature of Suit: 440 Civil Rights: Other
Jurisdiction: Federal Question

**Plaintiff**

**Timothy James Coates**                                    represented by   **Benjamin Grant DeGolia**
Rathod Mohamedbhai LLC
2701 Lawrence Street
Suite 100
Denver, CO 80205
303–578–4400
Email: <u>benjamin@degolialaw.com</u>
*TERMINATED: 08/26/2022*

**Felipe S. Bohnet–Gomez**
Rathod Mohamedbhai LLC
2701 Lawrence Street
Suite 100
Denver, CO 80205
303–578–4400
Fax: 303–578–4401
Email: <u>fbg@rmlawyers.com</u>
*ATTORNEY TO BE NOTICED*

**Siddhartha H. Rathod**
Rathod Mohamedbhai LLC
2701 Lawrence Street
Suite 100
Denver, CO 80205
303–578–4400
Fax: 303–578–4401
Email: <u>sr@rmlawyers.com</u>
*ATTORNEY TO BE NOTICED*

**Iris Halpern**
Rathod Mohamedbhai LLC
2701 Lawrence Street
Suite 100
Denver, CO 80205
303–578–4400
Fax: 303–578–4401
Email: <u>ih@rmlawyers.com</u>
*ATTORNEY TO BE NOTICED*

1

**Plaintiff**

| Gene Claps | represented by | **Benjamin Grant DeGolia** |
|---|---|---|

(See above for address)
*TERMINATED: 08/26/2022*

**Felipe S. Bohnet–Gomez**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Siddhartha H. Rathod**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Iris Halpern**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

| Mark Mitchell | represented by | **Benjamin Grant DeGolia** |
|---|---|---|

(See above for address)
*TERMINATED: 08/26/2022*

**Felipe S. Bohnet–Gomez**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Siddhartha H. Rathod**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Iris Halpern**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

| Kevin Currier | represented by | **Benjamin Grant DeGolia** |
|---|---|---|

(See above for address)
*TERMINATED: 08/26/2022*

**Felipe S. Bohnet–Gomez**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Siddhartha H. Rathod**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Iris Halpern**
(See above for address)
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

| | | |
|---|---|---|
| **Adams County Sheriff's Office, The** *a governmental entity* *TERMINATED: 09/27/2022* | represented by | **Heidi Michelle Miller** Adams County Attorney's Office 4400 South Adams County Parkway Suite C5000B Brighton, CO 80601 720−523−6116 Fax: 720−523−6114 Email: hmiller@adcogov.org *TERMINATED: 11/22/2022* |

**Kasandra R. Carleton**
Adams County Attorney's Office
4400 South Adams County Parkway
Suite C5000B
Brighton, CO 80601
303−655−3276
Email: kcarleton@adcogov.org
*TERMINATED: 11/22/2022*

**Kerri Ann Booth**
Adams County Attorney's Office
4400 South Adams County Parkway
Suite C5000B
Brighton, CO 80601
720−523−6116
Email: kbooth@adcogov.org
*ATTORNEY TO BE NOTICED*

**Michael Alex Sink**
Michael Sink, Atttorney at Law
4430 South Adams County Parkway
Suite C5000b
Brighton, CO 80601
720−523−6116
Fax: 720−523−6114
Email: msink@adcogov.org
*ATTORNEY TO BE NOTICED*

**Scott Barrett Blaha**
Adams County Attorney's Office
4400 South Adams County Parkway
Suite C5000B
Brighton, CO 80601
720−523−6116
Fax: 720−523−6114
Email: sblaha@adcogov.org
*TERMINATED: 07/27/2021*

**Defendant**

**Richard A. Reigenborn**                represented by   **Heidi Michelle Miller**
*in his official capacity*                                 (See above for address)
                                                           *TERMINATED: 11/22/2022*

                                                           **Kasandra R. Carleton**
                                                           (See above for address)
                                                           *TERMINATED: 11/22/2022*

                                                           **Kerri Ann Booth**
                                                           (See above for address)
                                                           *ATTORNEY TO BE NOTICED*

                                                           **Michael Alex Sink**
                                                           (See above for address)
                                                           *ATTORNEY TO BE NOTICED*

                                                           **Scott Barrett Blaha**
                                                           (See above for address)
                                                           *TERMINATED: 07/27/2021*

**Defendant**

**Richard (I) A. Reigenborn**            represented by   **Heidi Michelle Miller**
*in his individual capacity*                               (See above for address)
*TERMINATED: 09/27/2022*                                   *TERMINATED: 11/22/2022*

                                                           **Kerri Ann Booth**
                                                           (See above for address)
                                                           *ATTORNEY TO BE NOTICED*

                                                           **Michael Alex Sink**
                                                           (See above for address)
                                                           *ATTORNEY TO BE NOTICED*

                                                           **Scott Barrett Blaha**
                                                           (See above for address)
                                                           *TERMINATED: 07/27/2021*

| Date Filed | # | Page | Docket Text |
|---|---|---|---|
| 07/01/2020 | 1 | | COMPLAINT against All Defendants (Filing fee $ 400,Receipt Number 1082–7368164)Attorney Iris Halpern added to party Gene Claps(pty:pla), Attorney Iris Halpern added to party Timothy James Coates(pty:pla), Attorney Iris Halpern added to party Kevin Currier(pty:pla), Attorney Iris Halpern added to party Mark Mitchell(pty:pla), filed by Kevin Currier, Timothy James Coates, Mark Mitchell, Gene Claps. (Attachments: # 1 Summons Summons of the Adams County Sheriff's Department, # 2 Summons Summons of Richard A. Reigenborn, # 3 Civil Cover Sheet)(Halpern, Iris) (Entered: 07/01/2020) |
| 07/01/2020 | 2 | | |

| | | | NOTICE of Entry of Appearance by Felipe S. Bohnet–Gomez on behalf of All Plaintiffs Attorney Felipe S. Bohnet–Gomez added to party Gene Claps(pty:pla), Attorney Felipe S. Bohnet–Gomez added to party Timothy James Coates(pty:pla), Attorney Felipe S. Bohnet–Gomez added to party Kevin Currier(pty:pla), Attorney Felipe S. Bohnet–Gomez added to party Mark Mitchell(pty:pla) (Bohnet–Gomez, Felipe) (Entered: 07/01/2020) |
|---|---|---|---|
| 07/01/2020 | 3 | | Case assigned to Magistrate Judge Scott T. Varholak. Text Only Entry. (jtorr, ) (Entered: 07/02/2020) |
| 07/02/2020 | 4 | | SUMMONS issued by Clerk. (Attachments: # 1 Magistrate Judge Consent Form) (jtorr, ) (Entered: 07/02/2020) |
| 07/02/2020 | 5 | | SUMMONS issued by Clerk. (jtorr, ) (Entered: 07/02/2020) |
| 07/02/2020 | 6 | | NOTICE of Entry of Appearance by Siddhartha H. Rathod on behalf of All Plaintiffs Attorney Siddhartha H. Rathod added to party Gene Claps(pty:pla), Attorney Siddhartha H. Rathod added to party Timothy James Coates(pty:pla), Attorney Siddhartha H. Rathod added to party Kevin Currier(pty:pla), Attorney Siddhartha H. Rathod added to party Mark Mitchell(pty:pla) (Rathod, Siddhartha) (Entered: 07/02/2020) |
| 07/06/2020 | 7 | | ORDER by Magistrate Judge Scott T. Varholak on 7/6/20, Setting Deadline for Filing Election Concerning Consent/Non–Consent to Magistrate Jurisdiction Form and Setting Scheduling Conference. Consent Form due by 9/10/2020. Proposed Scheduling Order due by 9/17/2020. Scheduling Conference set for 9/24/2020 09:30 AM in Courtroom A 402 before Magistrate Judge Scott T. Varholak. (nmarb, ) (Entered: 07/06/2020) |
| 07/07/2020 | 8 | | WAIVER OF SERVICE Returned Executed by Kevin Currier, Timothy James Coates, Mark Mitchell, Gene Claps. Richard A. Reigenborn waiver sent on 7/2/2020, answer due 8/31/2020. (Bohnet–Gomez, Felipe) (Entered: 07/07/2020) |
| 07/07/2020 | 9 | | WAIVER OF SERVICE Returned Executed by Kevin Currier, Timothy James Coates, Mark Mitchell, Gene Claps. Adams County Sheriff's Office, The waiver sent on 7/2/2020, answer due 8/31/2020. (Bohnet–Gomez, Felipe) (Entered: 07/07/2020) |
| 07/08/2020 | 10 | | NOTICE of Entry of Appearance by Heidi M. Miller on behalf of Adams County Sheriff's Office, The, Richard A. Reigenborn Attorney Heidi M. Miller added to party Adams County Sheriff's Office, The(pty:dft), Attorney Heidi M. Miller added to party Richard A. Reigenborn (pty:dft) (Miller, Heidi) (Entered: 07/08/2020) |
| 07/08/2020 | 11 | | NOTICE of Entry of Appearance by Scott Barrett Blaha on behalf of Adams County Sheriff's Office, The, Richard A. Reigenborn Attorney Scott Barrett Blaha added to party Adams County Sheriff's Office, The(pty:dft), Attorney Scott Barrett Blaha added to party Richard A. Reigenborn (pty:dft) (Blaha, Scott) (Entered: 07/08/2020) |
| 07/08/2020 | 12 | | NOTICE of Entry of Appearance by Kasandra R. Carleton on behalf of Adams County Sheriff's Office, The, Richard A. Reigenborn Attorney Kasandra R. Carleton added to party Adams County Sheriff's Office, The(pty:dft), Attorney Kasandra R. Carleton added to party Richard A. Reigenborn (pty:dft) (Carleton, |

| | | |
|---|---|---|
| | | Kasandra) (Entered: 07/08/2020) |
| 08/31/2020 | 13 | *PARTIAL* ANSWER to 1 Complaint,, Attorney Heidi M. Miller added to party Richard (I) A. Reigenborn(pty:dft) by Adams County Sheriff's Office, The, Richard (I) A. Reigenborn, Richard A. Reigenborn.(Miller, Heidi) (Entered: 08/31/2020) |
| 08/31/2020 | 14 | Partial MOTION to Dismiss for Failure to State a Claim by Defendants Adams County Sheriff's Office, The, Richard (I) A. Reigenborn, Richard A. Reigenborn. (Miller, Heidi) (Entered: 08/31/2020) |
| 09/09/2020 | 15 | CONSENT to Jurisdiction of Magistrate Judge by Plaintiffs Gene Claps, Timothy James Coates, Kevin Currier, Mark Mitchell All parties consent.. (Bohnet–Gomez, Felipe) (Entered: 09/09/2020) |
| 09/09/2020 | 16 | ORDER OF REFERENCE. Pursuant to the consent of the parties to the jurisdiction of the magistrate judge 15 , this case is referred to Magistrate Judge Scott T. Varholak for all purposes pursuant to 28 U.S.C. § 636(c), by Chief Judge Philip A. Brimmer on 9/9/2020. Text Only Entry (pabsec2) (Entered: 09/09/2020) |
| 09/10/2020 | 17 | MINUTE ORDER The parties shall participate in the Scheduling Conference set for 9/24/2020 09:30 AM TELEPHONICALLY by calling 888.808.6929 at the scheduled time and utilizing access code: 2805116#. The Court notes that the parties may hear the conclusion of a prior hearing at the time they call in, and are instructed to simply wait until their case is called. SO ORDERED, by Magistrate Judge Scott T. Varholak on 9/10/2020. Text Only Entry (stvlc1, ) (Entered: 09/10/2020) |
| 09/14/2020 | 18 | Unopposed MOTION for Extension of Time to File Response/Reply as to 14 Partial MOTION to Dismiss for Failure to State a Claim by Plaintiffs Gene Claps, Timothy James Coates, Kevin Currier, Mark Mitchell. (Bohnet–Gomez, Felipe) (Entered: 09/14/2020) |
| 09/14/2020 | 19 | ORDER granting 18 Plaintiff's Motion for Extension of Time to Respond to 14 Defendants' Partial Motion to Dismiss until 10/05/2020, by Magistrate Judge Scott T. Varholak on 9/14/2020. Text Only Entry(stvlc1, ) (Entered: 09/14/2020) |
| 09/17/2020 | 20 | Proposed Scheduling Order by Plaintiffs Gene Claps, Timothy James Coates, Kevin Currier, Mark Mitchell. (Bohnet–Gomez, Felipe) (Entered: 09/17/2020) |
| 09/24/2020 | 21 | MINUTE ENTRY for Telephonic Scheduling Conference held before Magistrate Judge Scott T. Varholak on 9/24/2020. Discovery due by 5/24/2021. Dispositive Motions due by 7/23/2021. Final Pretrial Conference set for 9/22/2021 09:00 AM in Courtroom A 402 before Magistrate Judge Scott T. Varholak. FTR: 402. (morti, ) (Entered: 09/24/2020) |
| 09/24/2020 | 22 | SCHEDULING ORDER: by Magistrate Judge Scott T. Varholak on 9/24/2020. (morti, ) (Entered: 09/24/2020) |
| 10/05/2020 | 23 | RESPONSE to 14 Partial MOTION to Dismiss for Failure to State a Claim filed by Plaintiffs Gene Claps, Timothy James Coates, Kevin Currier, Mark Mitchell. (Bohnet–Gomez, Felipe) (Entered: 10/05/2020) |
| 10/15/2020 | 24 | |

| | | | |
|---|---|---|---|
| | | | Unopposed MOTION for Extension of Time to File Response/Reply as to 14 Partial MOTION to Dismiss for Failure to State a Claim Attorney Scott Barrett Blaha added to party Richard (I) A. Reigenborn(pty:dft) by Defendants Adams County Sheriff's Office, The, Richard (I) A. Reigenborn, Richard A. Reigenborn. (Blaha, Scott) (Entered: 10/15/2020) |
| 10/16/2020 | 25 | | ORDER granting 24 Defendants' Motion for Extension of Time to File Reply to 23 Plaintiffs' Response to 14 Defendants' Partial Motion to Dismiss until 10/26/2020, by Magistrate Judge Scott T. Varholak on 10/16/2020. Text Only Entry(stvlc1, ) (Entered: 10/16/2020) |
| 10/26/2020 | 26 | | REPLY to Response to 14 Partial MOTION to Dismiss for Failure to State a Claim filed by Defendants Adams County Sheriff's Office, The, Richard (I) A. Reigenborn, Richard A. Reigenborn. (Blaha, Scott) (Entered: 10/26/2020) |
| 12/15/2020 | 27 | | Joint MOTION for Extension of Time to *Extend Discovery Deadlines* by Plaintiffs Gene Claps, Timothy James Coates, Kevin Currier, Mark Mitchell. (Bohnet–Gomez, Felipe) (Entered: 12/15/2020) |
| 12/16/2020 | 28 | | ORDER granting 27 Motion for Extension of Discovery Deadlines. The deadline for expert disclosures is extended until 3/15/2021, and the deadline for rebuttal expert disclosures is extended until 4/15/2021. The deadline to serve discovery requests is extended until 5/17/2021, and the deadline to complete Discovery is extended until 6/24/2021. The deadline to file Dispositive Motions is extended until 8/23/2021. The Final Pretrial Conference set for 9/22/2021 09:00 AM is VACATED and RESET for 11/8/2021 09:30 AM in Courtroom A 402 before Magistrate Judge Scott T. Varholak. The parties shall submit a joint Proposed Pretrial Order by 11/2/2021. SO ORDERED, by Magistrate Judge Scott T. Varholak on 12/16/2020. Text Only Entry(stvlc1, ) (Entered: 12/16/2020) |
| 01/26/2021 | 29 | | MOTION for Order to *enter Stipulated ESI Protocol* by Plaintiffs Gene Claps, Timothy James Coates, Kevin Currier, Mark Mitchell. (Bohnet–Gomez, Felipe) (Entered: 01/26/2021) |
| 01/26/2021 | 30 | | STIPULATED ORDER Regarding the Preservation and Discovery of Electronically Stored Information, by Magistrate Judge Scott T. Varholak on 1/26/2021.(jgonz, ) (Entered: 01/26/2021) |
| 01/26/2021 | 31 | | ORDER denying 14 Motion to Dismiss for Failure to State a Claim by Magistrate Judge Scott T. Varholak on 1/26/2021.(jgonz, ) (Entered: 01/26/2021) |
| 02/09/2021 | 32 | | *Amended* ANSWER to 1 Complaint,, by Adams County Sheriff's Office, The, Richard (I) A. Reigenborn, Richard A. Reigenborn.(Blaha, Scott) (Entered: 02/09/2021) |
| 02/10/2021 | 33 | | MINUTE ORDER Per the request of the parties, this matter is set for a Telephonic Discovery Hearing on 3/4/2021 11:00 AM before Magistrate Judge Scott T. Varholak. The parties shall participate in the hearing by calling 888.808.6929 at the scheduled time and utilizing access code: 2805116#. The Court notes that the parties may hear the conclusion of a prior hearing at the time they call in, and are instructed to simply wait until their case is called. Pursuant to Magistrate Judge Varholak's Practice Standards, on or before 2/25/2021, the parties shall submit via email to |

| | | | |
|---|---|---|---|
| | | | Varholak_Chambers@cod.uscourts.gov a joint statement setting forth the issue in dispute. SO ORDERED, Discovery Hearing set for before Magistrate Judge Scott T. Varholak. by Magistrate Judge Scott T. Varholak on 2/10/2021. Text Only Entry (stvlc1, ) (Entered: 02/10/2021) |
| 02/12/2021 | 34 | | Stipulated MOTION for Protective Order by Plaintiffs Gene Claps, Timothy James Coates, Kevin Currier, Mark Mitchell. (Attachments: # 1 Proposed Order (PDF Only) Proposed Protective Order)(Bohnet–Gomez, Felipe) (Entered: 02/12/2021) |
| 02/12/2021 | 35 | | ORDER granting 34 Motion for Protective Order, by Magistrate Judge Scott T. Varholak on 2/12/2021. Text Only Entry(stvlc1, ) (Entered: 02/12/2021) |
| 02/12/2021 | 36 | | NOTICE of Entry of Appearance by Benjamin Grant DeGolia on behalf of All Plaintiffs Attorney Benjamin Grant DeGolia added to party Gene Claps(pty:pla), Attorney Benjamin Grant DeGolia added to party Timothy James Coates(pty:pla), Attorney Benjamin Grant DeGolia added to party Kevin Currier(pty:pla), Attorney Benjamin Grant DeGolia added to party Mark Mitchell(pty:pla) (DeGolia, Benjamin) (Entered: 02/12/2021) |
| 02/12/2021 | 37 | | PROTECTIVE ORDER by Magistrate Judge Scott T. Varholak on 2/12/2012. (jgonz, ) (Entered: 02/16/2021) |
| 03/04/2021 | 38 | | MINUTE ENTRY for Telephonic Discovery Hearing held before Magistrate Judge Scott T. Varholak on 3/4/2021. A further Discovery Hearing set for 3/25/2021 09:45 AM in Courtroom A 402 before Magistrate Judge Scott T. Varholak. A Supplemental Joint Statement by the parties shall be submitted on or before the close of business on March 19, 2021.FTR: 402. (morti, ) (Entered: 03/04/2021) |
| 03/25/2021 | 39 | | MINUTE ENTRY for Telephonic Discovery Hearing held before Magistrate Judge Scott T. Varholak on 3/25/2021. FTR: 402. (morti, ) (Entered: 03/25/2021) |
| 04/22/2021 | 40 | | STIPULATION for Extension of Time *to Respond to Discovery Requests* by Plaintiffs Gene Claps, Timothy James Coates, Kevin Currier, Mark Mitchell. (Bohnet–Gomez, Felipe) (Entered: 04/22/2021) |
| 05/06/2021 | 41 | | ADVISORY NOTICE TO ATTORNEY AND COURT: Under D.C.COLO.LAttyR 3(a) Heidi M. Miller was administratively removed from the court's attorney roll and barred from filing electronically under CM/ECF for failing to pay the 2020 Biennial Fee. Counsel must complete a Bar/ECF application through counsel's existing Attorney Services Portal account and pay the full application fee to be restored to the attorney roll and CM/ECF. Counsel, however, need not pay any delinquent biennial fees. Upon reinstatement, counsel must file a Notice of Entry of Appearance in this case. (Text Only Entry) (tnguy) (Entered: 05/06/2021) |
| 05/10/2021 | 42 | | Joint MOTION for Extension of Time *to Extend Discovery Deadlines* by Plaintiffs Gene Claps, Timothy James Coates, Kevin Currier, Mark Mitchell. (Bohnet–Gomez, Felipe) (Entered: 05/10/2021) |
| 05/11/2021 | 43 | | ORDER granting 42 Motion for Extension of Discovery Deadlines. The deadline to serve discovery requests is extended until 8/16/2021, and the deadline to complete Discovery is extended until 9/22/2021. The deadline to file |

| | | | |
|---|---|---|---|
| | | | Dispositive Motions is extended until 11/22/2021. The Final Pretrial Conference set for 11/8/2021 09:30 AM is VACATED and RESET for 2/24/2022 09:15 AM in Courtroom A 402 before Magistrate Judge Scott T. Varholak. The parties shall submit a joint Proposed Pretrial Order by 2/17/2022 09:15 AM. SO ORDERED, by Magistrate Judge Scott T. Varholak on 5/11/2021. Text Only Entry(stvlc1, ) (Entered: 05/11/2021) |
| 05/18/2021 | 44 | | NOTICE of Entry of Appearance by Heidi Michelle Miller on behalf of Adams County Sheriff's Office, The, Richard (I) A. Reigenborn, Richard A. Reigenborn (Miller, Heidi) (Entered: 05/18/2021) |
| 07/27/2021 | 45 | | MOTION to Withdraw as Attorney by Defendants Adams County Sheriff's Office, The, Richard (I) A. Reigenborn, Richard A. Reigenborn. (Blaha, Scott) (Entered: 07/27/2021) |
| 07/27/2021 | 46 | | ORDER granting 45 Motion to Withdraw as Counsel of Record. Attorney Scott Barrett Blaha is relieved of any further representation of Defendants. The Clerk of Court is instructed to terminate Attorney Blaha as counsel of record, and to remove his name from the electronic certificate of mailing. Defendants shall continue to be represented by Attorney Heidi M. Miller. SO ORDERED, by Magistrate Judge Scott T. Varholak on 7/27/2021. Text Only Entry(stvlc1, ) (Entered: 07/27/2021) |
| 09/10/2021 | 47 | | MINUTE ORDER Per the request of the parties, this matter is set for a Discovery Hearing on 9/14/2021 01:00 PM before Magistrate Judge Scott T. Varholak. Pursuant to Magistrate Judge Varholak's Practice Standards, on or before noon on 9/13/2021, the parties shall submit via email to Varholak_Chambers@cod.uscourts.gov a brief joint statement setting forth the issues in dispute. SO ORDERED, by Magistrate Judge Scott T. Varholak on 9/10/2021. Text Only Entry (stvlc1, ) (Entered: 09/10/2021) |
| 09/14/2021 | 48 | | NOTICE of Entry of Appearance by Kerri Ann Booth on behalf of Adams County Sheriff's Office, The, Richard (I) A. Reigenborn, Richard A. Reigenborn Attorney Kerri Ann Booth added to party Adams County Sheriff's Office, The(pty:dft), Attorney Kerri Ann Booth added to party Richard (I) A. Reigenborn(pty:dft), Attorney Kerri Ann Booth added to party Richard A. Reigenborn (pty:dft) (Booth, Kerri) (Entered: 09/14/2021) |
| 09/14/2021 | 49 | | MINUTE ENTRY for Discovery Hearing held before Magistrate Judge Scott T. Varholak on 9/14/2021. FTR: 402. (morti, ) (Entered: 09/14/2021) |
| 10/05/2021 | 50 | | NOTICE of Entry of Appearance by Michael Alex Sink on behalf of Adams County Sheriff's Office, The, Richard (I) A. Reigenborn, Richard A. Reigenborn Attorney Michael Alex Sink added to party Adams County Sheriff's Office, The(pty:dft), Attorney Michael Alex Sink added to party Richard (I) A. Reigenborn(pty:dft), Attorney Michael Alex Sink added to party Richard A. Reigenborn (pty:dft) (Sink, Michael) (Entered: 10/05/2021) |
| 11/22/2021 | 51 | | MOTION for Partial Summary Judgment by Plaintiffs Gene Claps, Timothy James Coates, Kevin Currier, Mark Mitchell. (Attachments: # 1 Plaintiffs' Separate Statement of Facts)(Bohnet–Gomez, Felipe) (Entered: 11/22/2021) |
| 11/22/2021 | 52 | | DECLARATION of *Felipe Bohnet–Gomez* regarding MOTION for Partial Summary Judgment 51 by Plaintiffs Gene Claps, Timothy James Coates, Kevin Currier, Mark Mitchell. (Attachments: # 1 Reigenborn Deposition Excerpts, # 2 |

| | | | |
|---|---|---|---|
| | | | Laws Deposition Excerpts, # 3 Reigenborn–Argo Emails, # 4 Laws New Hire Form, # 5 Toth Deposition Excerpts, # 6 Letter to Clerk and Recorder, # 7 Reigenborn–McLallen Text Messages, # 8 Policy Notice, # 9 ACSO 90(b)(6) Deposition Excerpts, # 10 Claps Termination Notice, # 11 Coates Termination Notice, # 12 Currier Termination Notice, # 13 Mitchell Termination Notice, # 14 McLallen Deposition Excerpts, # 15 Restricted Access Memo, # 16 Najera–Olivas Emails, # 17 Notes of Claps Termination Meeting, # 18 Tr. of Claps Termination Meeting, # 19 Notes of Currier Termination Meeting, # 20 Tr. of Currier Termination Meeting, # 21 Notes of Mitchell Termination Meeting, # 22 Tr. of Mitchell Termination Meeting, # 23 Notes of Coates Termination Meeting, # 24 Mitchell Deposition Excerpts, # 25 Tr. of Coates Termination Meeting, # 26 Defendant Reigenborns Responses to Plaintiffs Requests for Admission)(Bohnet–Gomez, Felipe) (Entered: 11/22/2021) |
| 11/22/2021 | 53 | | MOTION for Summary Judgment by Defendants Adams County Sheriff's Office, The, Richard (I) A. Reigenborn, Richard A. Reigenborn. (Attachments: # 1 Separate Statement of Undisputed Facts, # 2 Exhibit A, # 3 Exhibit B, # 4 Exhibit C, # 5 Exhibit D, # 6 Exhibit E, # 7 Exhibit F, # 8 Exhibit G, # 9 Exhibit H, # 10 Exhibit I, # 11 Exhibit J, # 12 Exhibit J – CONTINUED, # 13 Exhibit K, # 14 Exhibit L, # 15 Exhibit M, # 16 Exhibit N, # 17 Exhibit O, # 18 Exhibit P)(Sink, Michael) (Entered: 11/22/2021) |
| 12/09/2021 | 54 | | Joint MOTION for Extension of Time to File Response/Reply as to 53 MOTION for Summary Judgment , 51 MOTION for Partial Summary Judgment by Defendants Adams County Sheriff's Office, The, Richard (I) A. Reigenborn, Richard A. Reigenborn. (Sink, Michael) (Entered: 12/09/2021) |
| 12/10/2021 | 55 | | ORDER granting 54 Motion for Extension of Time to Respond to Dispositive Motions until 12/20/2021. SO ORDERED, by Magistrate Judge Scott T. Varholak on 12/10/2021. Text Only Entry(stvlc1, ) (Entered: 12/10/2021) |
| 12/20/2021 | 56 | | RESPONSE to 53 MOTION for Summary Judgment filed by Plaintiffs Gene Claps, Timothy James Coates, Kevin Currier, Mark Mitchell. (Attachments: # 1 Plaintiffs' Separate Statement of Facts, # 2 Bohnet–Gomez Decl., # 3 Ex. Q, McIntosh Decl., # 4 Ex. R, Laws Dep., # 5 Ex. S, McLallen Dep., # 6 Ex. T, ACSO 30(b)(6) Dep., # 7 Ex. U, Org Charts, # 8 Ex. V, Toth Dep., # 9 Ex. W, Jarmin Dep., # 10 Ex. X, Reigenborn Aff., # 11 Ex. Y, Employee Speech Policy, # 12 Ex. Z, Standards of Conduct, # 13 Ex. AA, Sheriff's Preface, # 14 Ex. BB, Kelsay Dep., # 15 Ex. CC, Templeton Decl., # 16 Ex. DD, Reigenborn Interview, # 17 Ex. EE, O'Neill Dep., # 18 Ex. FF, Reigenborn Text Messages)(Bohnet–Gomez, Felipe) (Entered: 12/20/2021) |
| 12/20/2021 | 57 | | RESPONSE to 51 MOTION for Partial Summary Judgment filed by Defendants Adams County Sheriff's Office, The, Richard (I) A. Reigenborn, Richard A. Reigenborn. (Attachments: # 1 Defendants' Responses to Plaintiffs' Separate Statement of Facts, # 2 Exhibit 27 – Deposition of Terrance O'Neill, # 3 Exhibit 28 – McNair Email, # 4 Exhibit 29 – Deposition of Adams County 30(b)(6))(Sink, Michael) (Entered: 12/20/2021) |
| 12/23/2021 | 58 | | Joint MOTION for Extension of Time to File Response/Reply as to 53 MOTION for Summary Judgment , 51 MOTION for Partial Summary Judgment by Defendants Adams County Sheriff's Office, The, Richard (I) A. Reigenborn, Richard A. Reigenborn. (Miller, Heidi) (Entered: 12/23/2021) |

| 12/23/2021 | 59 | | ORDER granting <u>58</u> Motion for Extension of Time to Reply to Dispositive Motions until 1/7/2022, by Magistrate Judge Scott T. Varholak on 12/23/2021. Text Only Entry(stvlc1, ) (Entered: 12/23/2021) |
|---|---|---|---|
| 01/07/2022 | <u>60</u> | | REPLY to Response to <u>53</u> MOTION for Summary Judgment filed by Defendants Adams County Sheriff's Office, The, Richard (I) A. Reigenborn, Richard A. Reigenborn. (Attachments: # <u>1</u> Reply to Separate Statement of Undisputed Facts, # <u>2</u> Exhibit R, Laws Dep. Supplemental Pages, # <u>3</u> Exhibit V, Toth Dep. Supplemental Pages, # <u>4</u> Exhibit GG, Coates Resume, # <u>5</u> Exhibit HH, Claps Resume, # <u>6</u> Exhibit II, Currier Depo Ex. 53)(Miller, Heidi) (Entered: 01/07/2022) |
| 01/07/2022 | <u>61</u> | | REPLY to Response to <u>51</u> MOTION for Partial Summary Judgment filed by Plaintiffs Gene Claps, Timothy James Coates, Kevin Currier, Mark Mitchell. (Attachments: # <u>1</u> Plaintiffs' Separate Statement of Facts)(Bohnet–Gomez, Felipe) (Entered: 01/07/2022) |
| 02/17/2022 | <u>62</u> | | Proposed Pretrial Order by Plaintiffs Gene Claps, Timothy James Coates, Kevin Currier, Mark Mitchell. (Attachments: # <u>1</u> Ds' Exhibit List)(Bohnet–Gomez, Felipe) (Entered: 02/17/2022) |
| 02/24/2022 | <u>63</u> | | MINUTE ENTRY for Final Pretrial Conference proceedings held before Magistrate Judge Scott T. Varholak on 2/24/2022. ORDERED: The proposed Final Pretrial Order which was submitted to the court is approved and made an order of the court. Trial Preparation Conference set for 10/13/2022 at 09:30 AM in Courtroom A 402 before Magistrate Judge Scott T. Varholak. Nine day Jury Trial set for 10/31/2022 – 11/10/2022 at 08:30 AM in Courtroom A 402 before Magistrate Judge Scott T. Varholak. FTR: 402. (morti, ) Modified on 2/24/2022 to correct length of trial days (morti, ). (Entered: 02/24/2022) |
| 02/24/2022 | <u>64</u> | | FINAL PRETRIAL ORDER by Magistrate Judge Scott T. Varholak on 2/24/2022. (Attachments: # <u>1</u> Exhibit A – Defendants Exhibit List) (morti, ) (Entered: 02/24/2022) |
| 05/03/2022 | <u>65</u> | | NOTICE of Supplemental Authorities by Plaintiffs Gene Claps, Timothy James Coates, Kevin Currier, Mark Mitchell (Attachments: # <u>1</u> Exhibit Strickland v. United States et al. (4th Cir. Apr. 26, 2022))(DeGolia, Benjamin) (Entered: 05/03/2022) |
| 08/19/2022 | <u>66</u> | | Joint MOTION to Continue *Trial Date* by Plaintiffs Gene Claps, Timothy James Coates, Kevin Currier, Mark Mitchell. (Bohnet–Gomez, Felipe) (Entered: 08/19/2022) |
| 08/19/2022 | 67 | | ORDER granting <u>66</u> Motion to Continue. Per the request of the parties, the Trial Preparation Conference set for 10/13/2022 and the Trial set to begin on 10/31/2022 are VACATED. The parties are ORDERED to jointly contact Chambers by telephone on or before 8/26/2022 to obtain new trial dates. SO ORDERED, by Magistrate Judge Scott T. Varholak on 8/19/2022. Text Only Entry(stvlc2, ) (Entered: 08/19/2022) |
| 08/23/2022 | 68 | | MINUTE ORDER A Trial Preparation Conference is set for 3/21/2023 at 09:00 AM in Courtroom A 402 before Magistrate Judge Scott T. Varholak. Ten day Jury Trial set for 4/10/2023 – 4/21/2023 08:30 AM in Courtroom A 402 before Magistrate Judge Scott T. Varholak. SO ORDERED, by Magistrate Judge Scott T. Varholak on 8/23/2022. Text Only Entry (stvlc2, ) (Entered: 08/23/2022) |

| 08/25/2022 | 69 | | MOTION to Withdraw as Attorney by Plaintiffs Gene Claps, Timothy James Coates, Kevin Currier, Mark Mitchell. (DeGolia, Benjamin) (Entered: 08/25/2022) |
|---|---|---|---|
| 08/26/2022 | 70 | | ORDER granting 69 Motion to Withdraw as Counsel. Attorney Benjamin DeGolia is relieved of any further representation of Plaintiff. The Clerk of Court is instructed to terminate Attorney DeGolia as counsel of record, and to remove his name from the electronic certificate of mailing. Plaintiff shall continue to be represented by Attorneys Felipe Bohnet–Gomez, Iris Halpern, and Siddhartha Rathod, of Rathod Mohamedbhai LLC. SO ORDERED, by Magistrate Judge Scott T. Varholak on 8/26/22. Text Only Entry(stvlc3, Andrew) (Entered: 08/26/2022) |
| 09/27/2022 | 71 | | ORDER. 53 Defendant's Motion for Summary Judgment is GRANTED in part and DENIED in part. 51 Plaintiff's Motion for Partial Summary Judgment is GRANTED. More specifically, the Court holds as follows: (1) partial summary judgment is GRANTED in favor of Plaintiffs as to the issue of whether they were discharged under color of state law; (2) summary judgment is DENIED on Plaintiffs First Amendment retaliation claim; (3) summary judgment is GRANTED in favor of Defendants on Plaintiffs Fourteenth Amendment procedural due process claims; (4) summary judgment is DENIED as to Sheriff Reigenborn in his official capacity; (5) the Adams County Sheriffs Office is DISMISSED as a Defendant; and (6) Sheriff Reigenborn in entitled to qualified immunity on Plaintiffs First Amendment retaliation claim and, therefore, Sheriff Reigenborn in his individual capacity is DISMISSED as a Defendant, by Magistrate Judge Scott T. Varholak on 9/27/2022.(morti, ) Modified on 9/28/2022 to correct filing date(morti, ). (Entered: 09/28/2022) |
| 10/06/2022 | 72 | | NOTICE OF APPEAL as to 71 Order on Motion for Partial Summary Judgment,,,,, Order on Motion for Summary Judgment,,,, by Defendants Richard (I) A. Reigenborn, Richard A. Reigenborn (Filing fee $ 505, Receipt Number ACODC–8703176) (Sink, Michael) (Entered: 10/06/2022) |
| 10/11/2022 | 73 | | LETTER Transmitting Notice of Appeal to all counsel advising of the transmittal of the 72 Notice of Appeal, filed by Richard A. Reigenborn, Richard (I) A. Reigenborn to the U.S. Court of Appeals. ( Retained Counsel, Fee paid,) (Attachments: # 1 Preliminary Record)(cmadr, ) (Entered: 10/11/2022) |
| 10/11/2022 | 74 | | USCA Case Number 22–1339 for 72 Notice of Appeal, filed by Richard A. Reigenborn, Richard (I) A. Reigenborn. (cmadr, ) (Entered: 10/11/2022) |
| 10/25/2022 | 75 | | TRANSCRIPT ORDER FORM re 72 Notice of Appeal, by Defendant Richard A. Reigenborn (Sink, Michael) (Entered: 10/25/2022) |
| 10/25/2022 | 76 | | LETTER TO USCA and all counsel certifying the record is complete as to 72 Notice of Appeal, filed by Richard A. Reigenborn, Richard (I) A. Reigenborn. A transcript order form was filed stating that a transcript is not necessary. ( Appeal No. 22–1339) Text Only Entry (cmadr, ) (Entered: 10/25/2022) |
| 11/15/2022 | 77 | | MINUTE ORDER This matter is before the Court sua sponte. A Status Conference is set for 12/15/2022 at 9:30 AM in Courtroom A 402 before Magistrate Judge Scott T. Varholak. SO ORDERED, by Magistrate Judge Scott T. Varholak on 11/15/22. Text Only Entry (stvlc3, Andrew) (Entered: 11/15/2022) |

| 11/15/2022 | 78 | | MOTION to Withdraw as Attorney *Heidi M. Miller and Kasandra R. Carleton as Counsel of Record* by Defendant Richard A. Reigenborn. (Sink, Michael) (Entered: 11/15/2022) |
|---|---|---|---|
| 11/21/2022 | 79 | | MOTION for Order to *Certify Interlocutory Appeal as Frivolous* by Plaintiffs Gene Claps, Timothy James Coates, Kevin Currier, Mark Mitchell. (Bohnet–Gomez, Felipe) (Entered: 11/21/2022) |
| 11/21/2022 | 80 | | MOTION for Order to *Extend the Time for Plaintiffs Cross–Appeal Under 28 U.S.C. § 2107(c)* by Plaintiffs Gene Claps, Timothy James Coates, Kevin Currier, Mark Mitchell. (Bohnet–Gomez, Felipe) (Entered: 11/21/2022) |
| 11/22/2022 | 81 | | ORDER granting 78 Motion to Withdraw as Counsel. Attorneys Heidi M. Miller and Kasandra R. Carleton are relieved of any further representation of Defendant Reigenborn. The Clerk of Court is instructed to terminate Attorneys Miller and Carleton as counsel of record for Defendant Reigenborn, and to remove their names from the electronic certificate of mailing. Defendant Reigenborn shall continue to be represented by Attorney Michael A. Sink of the Adams County Attorney's Office. SO ORDERED, by Magistrate Judge Scott T. Varholak on 11/22/22. Text Only Entry(stvlc3, Andrew) (Entered: 11/22/2022) |
| 11/22/2022 | 82 | | MINUTE ORDER This matter is before the Court on 79 Motion to Certify Interlocutory Appeal as Frivolous and 80 Motion to Extend Time for Plaintiff's Cross–Appeal. The Motions are set for a hearing on 1/3/2023 10:00 AM in Courtroom A 402 before Magistrate Judge Scott T. Varholak. The parties shall follow the standard briefing schedule prescribed by D.C.COLOLCivR 7.1(d). SO ORDERED, by Magistrate Judge Scott T. Varholak on 11/22/2022. Text Only Entry (stvlc4, ) (Entered: 11/22/2022) |
| 12/12/2022 | 83 | | RESPONSE to 79 MOTION for Order to *Certify Interlocutory Appeal as Frivolous* filed by Defendant Richard A. Reigenborn. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F)(Sink, Michael) (Entered: 12/12/2022) |
| 12/12/2022 | 84 | | RESPONSE to 80 MOTION for Order to *Extend the Time for Plaintiffs Cross–Appeal Under 28 U.S.C. § 2107(c)* filed by Defendant Richard A. Reigenborn. (Sink, Michael) (Entered: 12/12/2022) |
| 12/13/2022 | 85 | | REPLY to Response to 80 MOTION for Order to *Extend the Time for Plaintiffs Cross–Appeal Under 28 U.S.C. § 2107(c)* filed by Plaintiffs Gene Claps, Timothy James Coates, Kevin Currier, Mark Mitchell. (Bohnet–Gomez, Felipe) (Entered: 12/13/2022) |
| 12/14/2022 | 86 | | NOTICE *of Filing of Opening Brief in Appeal No. 22–1339* by Defendant Richard A. Reigenborn (Attachments: # 1 Exhibit Opening Brief)(Sink, Michael) (Entered: 12/14/2022) |
| 12/15/2022 | 87 | | MINUTE ENTRY for Status Conference held before Magistrate Judge Scott T. Varholak on 12/15/2022. ORDERED: Plaintiffs Motion for an Order Extending the Time for Plaintiffs Cross–Appeal Under 28 U.S.C. § 2107(c) 80 is GRANTED. The court makes clear that it is not making any statement as to whether it is jurisdictionally proper to file the cross–appeal and the court is simply granting the time in which to do so. FTR: A402. (morti,) (Entered: 12/15/2022) |

| 12/15/2022 | 88 | | NOTICE OF APPEAL as to 71 Order on Motion for Partial Summary Judgment,,,,, Order on Motion for Summary Judgment,,,, by Plaintiffs Gene Claps, Timothy James Coates, Kevin Currier, Mark Mitchell (Filing fee $ 505, Receipt Number ACODC–8834116) (Bohnet–Gomez, Felipe) (Entered: 12/15/2022) |
| 12/16/2022 | 89 | | LETTER Transmitting Notice of Appeal to all counsel advising of the transmittal of the 88 Notice of Appeal, filed by Timothy James Coates, Kevin Currier, Mark Mitchell, Gene Claps to the U.S. Court of Appeals. ( Retained Counsel, Fee paid,) (Attachments: # 1 Preliminary Record)(cmadr, ) (Entered: 12/16/2022) |

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No.: 20-cv-01936-STV

TIMOTHY JAMES COATES,
GENE CLAPS,
MARK MITCHELL, and
KEVIN CURRIER,

      Plaintiffs,

      v.

THE ADAMS COUNTY SHERIFF'S OFFICE, a governmental entity, and
RICHARD A. REIGENBORN, in his official and individual capacity,

      Defendants.

---

## Notice of Appeal

---

All Plaintiffs appeal to the United States Court of Appeals for the Tenth Circuit from the part of the September 28, 2022 order [ECF No. 71] granting Defendant qualified immunity in his individual capacity. This is a cross-appeal to Case No. 22-1339.

      Respectfully Submitted,

      RATHOD | MOHAMEDBHAI LLC

      /s Felipe Bohnet-Gomez
      Felipe Bohnet-Gomez
      2701 Lawrence St., Suite 100
      Denver, CO 80205
      (303) 578-4400
      fbg@rmlawyers.com


      *Attorneys for Plaintiffs*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 20-cv-01936-STV

TIMOTHY JAMES COATES,
GENE CLAPS,
MARK MITCHELL,
KEVIN CURRIER,

       Plaintiffs,

v.

ADAMS COUNTY SHERIFF'S OFFICE,
RICHARD A. REIGENBORN,

       Defendants.

_____

## ORDER
_____

Magistrate Judge Scott T. Varholak

      This matter comes before the Court on Plaintiffs' Motion for Partial Summary Judgment ("Plaintiffs' Motion") [#51] and Defendants' Motion for Summary Judgment ("Defendants' Motion") [#53] (collectively, the "Motions").  The Motions are before the Court on the parties' consent to have a United States magistrate judge conduct all proceedings in this action and to order the entry of a final judgment.  [##15, 16]  This Court has carefully considered the Motions and related briefing, the entire case file, and the applicable case law, and has determined that oral argument would not materially assist in the disposition of the Motions.  For the following reasons, Defendants' Motion for Summary Judgment [#53] is **GRANTED in part** and **DENIED in part** and Plaintiffs' Motion for Partial Summary Judgment [#51] is **GRANTED**.

## I.      FACTUAL BACKGROUND[1]

Plaintiffs are career law enforcement officers who have spent the majority of their careers as deputy sheriffs at the Adams County Sheriff's Office ("ACSO").  [#61-1, PSOF3]  Plaintiffs have held a variety of ranks and served under both Republican and Democratic sheriffs.  [*Id.*, PSOF4]  As of 2018, Plaintiffs held the following ranks and assignments:  Timothy Coates—Division Chief of Detectives [#60-1, DSOF3]; Gene Claps—Division Chief of the Jail Division [*id.*, DOSF4]; Mark Mitchell—Captain of the Patrol Division [*id.*, DSOF5]; Kevin Currier—Commander of the Detective Division [*id.*, DSOF6].  While the exact extent of Plaintiffs' authority is disputed [*id.*, DSOF11-12], Plaintiffs all testified to having some degree of discretion in how they ran their departments [##53-2 at 84-85 (84:22-85:13); 53-3 at  79-80 (79:11-80:23); 53-4 at 73 (73:10-18); 53-16 at 77 (77:3-19)], and some degree of involvement in the budgetary and spending process [##53-2 at 88-89 (88:10-89:18); 53-3 at 86 (86:1-6); 53-4 at 66 (66:9-17); 53-16 at 84-85 (84:18-85:7)].  No Plaintiff had a written employment contract with ACSO. [#60-1, DSOF13]

Defendant Richard A. Reigenborn is the elected Sheriff of Adams County, Colorado.  [#61-1, PSOF1]  Sheriff Reigenborn runs ACSO and is the final decisionmaker with respect to the termination or revocation of deputies' appointments.  [*Id.*, PSOF2] From 1991 to 2015, Sheriff Reigenborn was employed as a deputy at ACSO, holding

---

[1] The undisputed facts are drawn from the Separate Statement of Facts filed with Defendants' Motion for Summary Judgment [#60-1] and Plaintiffs' Motion for Partial Summary Judgment [#61-1].  The Court refers to the sequentially numbered facts set forth in the Separate Statement of Facts associated with Defendants' Motion as "DSOF#" and those associated with Plaintiffs' motion as "PSOF#."  The Court periodically cites directly to the exhibits cited by the parties to provide additional context.  Disputed facts are identified as such.

various ranks. [#60-1, DSOF 14]  Sheriff Reigenborn challenged Michael McIntosh for Adams County Sheriff in the 2014 and 2018 elections.  [#61-1, PSOF5]  Sheriff Reigenborn lost to Sheriff McIntosh in the 2014 election, but unseated McIntosh in the 2018 election to become Adams County Sheriff.  [*Id.*, PSOF6, 7]  Each Plaintiff claims that they supported Sheriff McIntosh in the 2018 election through financial contributions and public statements of support. [##60-1, DSOF18-19]

Sheriff Reigenborn took office on January 8, 2019.  [#61-1, PSOF15]  On January 8 or 9, he rescinded all of the ACSO's then-existing employment and personnel policies and adopted a new policy, Policy 1, titled "At-Will Employment Policy and Procedures," which stated that "[a]ll employees of [ACSO] are at-will employees. Nothing in this document or any other document or policy alters the at-will status of [ACSO] employees. The Sheriff may terminate employees or revoke deputy appointments at will, with or without cause." [##61-1, PSOF16-17, 52-8 at 1]  Policy 1 further stated that "[i]n the event an employee is terminated from employment, the Sheriff will follow applicable Colorado state law, which may include:  Notification to the employee of the proposed termination and reason for termination; and [a]n opportunity for the employee to be heard by the Sheriff prior to termination." [##61-1, PSOF18; 52-8 at 1-2]  The policy changes gave Defendants the ability to issue letters telling employees about their proposed termination. [#61-1, PSOF21]  Through the policy notice, Sheriff Reigenborn intended to communicate that he would do as he saw fit with respect to employment decisions at ACSO.  [*Id.*, PSOF20]

Sheriff Reigenborn was concerned about Plaintiffs' loyalty to ACSO at least in part because of their support for McIntosh in the 2014 and 2018 elections.  [##53-7 at 205-

206 (205:14-206:10); 61-1, PSOF8]  On January 4, 2019, Sheriff Reigenborn sent a text message to his Undersheriff, Tommie McLallen, stating:  "Terminations so far. Gene Claps . . . Kevin Currier . . . Mark Mitchell . . . TJ Coates."[2]  [#61-1, PSOF14]  No Plaintiff was facing any type of disciplinary proceeding. [*Id.*, PSOF73]

On January 9, 2019, Plaintiffs and several other deputies each received substantially identical letters from Sheriff Reigenborn informing them that he intended to revoke their appointments with the ACSO.  [## 60-1, DSOF 23-24, 61-1, PSOF22]   The letters invoked the termination procedures set forth in Policy 1 and stated in relevant part:

> I intend to revoke your appointment with the Adams County Sheriff's Office. . . . I am informing you of the anticipated termination of your employment and the opportunity to meet with me prior to your termination. . . . If you do not request a meeting [before January 10, 2019 at 12:00 pm], your termination will be effective at 8:00am on January 11, 2019. Effective immediately, you are being placed on Administrative Leave. You are not allowed in any secured or unsecured area of the Sheriff's Office without prior approval from Sheriff Reigenborn or his appointee. You will need to immediately return any keys, vehicles, Sheriff's Office identification credentials and badge(s). Upon termination, you will be required to turn in all remaining Sheriff's Office equipment. . . . I wish you the best in your future endeavors.

[##61-1, PSOF24-25, 27-28; 52-10; 52-11; 52-12; 52-13]  A copy of Policy 1 was provided with the letters.  [#61-1, PSOF26]  Undersheriff McLallen hand-delivered the January 9, 2019 letters to Plaintiffs and collected their keys, badges, and access cards.  [*Id.*, PSOF33]  On January 10, 2019, McLallen circulated an office-wide memorandum stating: "Effective immediately, the following individuals are no longer allowed unescorted access into any of the secured areas of the Sheriff's Office. . . .Gene Claps[,] T.J. Coates[,] . . . Kevin Currier[,] . . . Mark Mitchell[.]"  [##52-15; 61-1, PSOF34]  On January 11, 2019,

---

[2] The text message listed seven other individuals as well.  [#52-7 at 1]

Sheriff Reigenborn's executive assistant, Judy Najera, requested personnel orders from Adams County Human Resources in reference to Plaintiffs' proposed termination. [##52-16; 61-1, PSOF37]

Plaintiffs each requested to meet with Sheriff Reigenborn regarding their terminations. [#61-1, PSOF35] They each met separately with Sheriff Reigenborn on January 15, 2019 to discuss their proposed termination. [*Id.*, PSOF38] Chief Claps met with Sheriff Reigenborn at approximately 10:00 a.m. on January 15, 2019. [*Id.*, PSOF39] At the meeting, Chief Claps stated that he "would like to be able to have the opportunity to retain some type of a position or career with [ACSO], so I can finish my career out." [##52-18(3:1-4); 61-1, PSOF41] In the alternative, Chief Claps asked "to be able to retire at the end of the month." [##52-18 at 4 (3:15-16); 60-1, DSOF31] He asked Sheriff Reigenborn for confirmation that "I am not being offered any other positions . . . with this agency," to which Sheriff Reigenborn replied, "[n]o, not at this time." [#61-1, PSOF42] At the meeting, the Assistant County Attorney informed Chief Claps that "by going to retirement in good standing, you get all of the LEOSA,[3] and I believe you said the badge, the plaque, all of that stuff." [*Id.*, PSOF43]

Commander Currier met next with Sheriff Reigenborn, at approximately noon. [*Id.*, PSOF44] At the beginning of Commander Currier's meeting, Sheriff Reigenborn stated that "we're here for the final hearing; that's where we're at." [*Id.*, PSOF45] Sheriff Reigenborn informed Commander Currier that the agency was "downsizing," telling Mr.

---

[3] The Law Enforcement Officers Safety Act ("LEOSA," or "H.R. 218") is a federal law that allows former law enforcement officers to carry a concealed firearm and carry a retired badge. [#61-1, PSOF70] In order to qualify for benefits under LEOSA, a law enforcement officer must leave in good standing. [*Id.*, PSOF71]

Currier that "[i]f you want to retire in good standing so that you qualify for [LEOSA], I'll do that, but we have to have something in writing from you saying that you want to retire." [*Id.*, PSOF46-47]  Sheriff Reigenborn also told Commander Currier that "[t]he badges are important to us. If I terminate you, I can't let you leave with the badge. If you leave in good standing, I have no issue."  [*Id.*, PSOF48]  Commander Currier indicated that he would submit a written request for retirement.  [##60-1, DSOF31]

Captain Mitchell met with Sheriff Reigenborn at approximately 2 pm.  [#61-1, PSOF50]  Captain Mitchell asked Sheriff Reigenborn "what kind of decision-making process was put in place to fire [him]," to which Sheriff Reigenborn replied "[ACSO is] going in a different direction. We don't think that you fit where we're going."  [*Id.*, PSOF51-52]  When asked by Captain Mitchell to "explain that direction," Sheriff Reigenborn stated, "I don't need to tell you the direction."  [##61-1, PSOF53; 52-22 at 3-4 (2:13-3:2)]  Sheriff Reigenborn further stated that Captain Mitchell's position of captain was being eliminated, but never directly responded to Captain Mitchell's questioning of why he was not offered a different position when his counterpart was offered a different position.  [##61-1, PSOF54-55; 52-22 at 6-7 (5:24-6:15)]  When asked by Captain Mitchell how to explain his departure from the sheriff's office, Sheriff Reigenborn replied "that's pretty easy. That you retired in good standing because that's what it will show. Otherwise, you wouldn't be getting the credentials for the H.R. 218, the LEOSA bill. . . .  If I terminate you, you don't qualify for that because you won't be in good standing. That's the biggest part of that.  So you left here in good standing if you retire." [##61-1, PSOF56; 52-22 at 17-18 (2:21-3:7)]  During the meeting, Captain Mitchell stated that he "would like to retire and leave and

6

have all the benefits that a retired deputy would . . . ."  [##60-1, DSOF31; 52-22 at 4-5 (3:20-4:6)]

Chief Coates was the final Plaintiff to meet with Sheriff Reigenborn. [#61-1, PSOF57]   Chief Coates asked Sheriff Reigenborn "to tell [him] why [he was] being released," to which Sheriff Reigenborn replied, "I don't think your vision is going to fit our vision."  [*Id.*, PSOF59-60]  Sheriff Reigenborn informed Chief Coates that "[i]f you want to retire you can. We will honor what we have offered to other people as well."  [##61-1, PSOF61; 52-23]  After citing his service with ACSO, Chief Coates stated "of course, yes, I would like to retire in good standing."  [##60-1, DSOF31; 52-25 at 4(3:7-9)]

Plaintiffs each submitted requests to retire or resign.[4]  [#61-1, PSOF64] Plaintiffs' employment files indicate that Plaintiffs all retired.[5]  [#60-1, DSOF33]  Plaintiffs were all offered severance, which they each declined. [#61-1, PSOF74]

Plaintiffs initiated this action in July 2020 asserting two claims for relief:  Claim One for First Amendment retaliation and Claim Two for Fourteenth Amendment procedural due process violations.  [#1, ¶¶ 164-91]  Plaintiffs filed their Motion for Partial Summary Judgment on November 22, 2021, and a response and a reply have been filed.  [## 51, 57, 61] Defendants also filed their Motion for Summary Judgment on November 22, 2021, and a response and a reply have been filed.  [## 53, 56, 60]

---

[4] The record only contains written notices of resignation or retirement from Plaintiffs Claps, Currier, and Mitchell, with no record of a written notice from Chief Coates.  [#60-1, DSOF32] But, Plaintiffs do not contest that Chief Coates "submitted [a] request to retire or resign," and Defendants' position is that Chief Coates' separation from ACSO was a retirement. [#61-1, PSOF 64]
[5] Not every deputy who received a notice from Sheriff Reigenborn was terminated or submitted a retirement request.  [*Id.*, DSOF34]

## II.    STANDARD OF REVIEW

Summary judgment is appropriate only if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Henderson v. Inter–Chem Coal Co., Inc.*, 41 F.3d 567, 569 (10th Cir. 1994). "Cross-motions for summary judgment are to be treated separately; the denial of one does not require the grant of another." *Buell Cabinet Co., Inc. v. Sudduth*, 608 F.2d 431, 433 (10th Cir. 1979) (citations omitted). When reviewing a cross-motion, the Court must "construe all inferences in favor of the party against whom the motion under consideration is made." *Pirkheim v. First Unum Life Insurance*, 229 F.3d 1008, 1010 (10th Cir. 2000) (quoting *Andersen v. Chrysler Corp.*, 99 F.3d 846, 856 (7th Cir. 1996)).

The movant bears the initial burden of making a prima facie demonstration of the absence of a genuine issue of material fact, which the movant may do "simply by pointing out to the court a lack of evidence . . . on an essential element of the nonmovant's claim" when the movant does not bear the burden of persuasion at trial. *Adler v. Wal–Mart Stores, Inc.*, 144 F.3d 664, 670-71 (10th Cir. 1998). If the moving party bears the burden of proof at trial, "the moving party must establish, as a matter of law, all essential elements of the [claim or affirmative defense on which summary judgment is sought] before the nonmoving party can be obligated to bring forward any specific facts alleged to rebut the movant's case." *Pelt v. Utah*, 539 F.3d 1271, 1280 (10th Cir. 2008). In other words, the moving party "must support its motion with credible evidence showing that, if uncontroverted, the moving party would be entitled to a directed verdict." *Rodell v. Objective Interface Sys., Inc.*, No. 14-CV-01667-MSK-MJW, 2015 WL 5728770, at *3 (D.

8

Colo. Sept. 30, 2015) (citing *Celotex Corp.*, 477 U.S. at 331). If the movant carries its initial burden, the burden then shifts to the nonmovant "to go beyond the pleadings and set forth specific facts that would be admissible in evidence in the event of trial." *Adler*, 144 F.3d at 671 (quotation omitted).

"[A] 'judge's function' at summary judgment is not 'to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.'" *Tolan v. Cotton*, 572 U.S. 650, 656 (2014) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). Whether there is a genuine dispute as to a material fact depends upon whether the evidence presents a sufficient disagreement to require submission to a jury. *See Anderson*, 477 U.S. at 248–49; *Stone v. Autoliv ASP, Inc.*, 210 F.3d 1132, 1136 (10th Cir. 2000); *Carey v. U.S. Postal Serv.*, 812 F.2d 621, 623 (10th Cir. 1987). Evidence, including testimony, offered in support of or in opposition to a motion for summary judgment must be based on more than mere speculation, conjecture, or surmise. *Bones v. Honeywell Int'l Inc.*, 366 F.3d 869, 875 (10th Cir. 2004). A fact is "material" if it pertains to an element of a claim or defense; a factual dispute is "genuine" if the evidence is so contradictory that if the matter went to trial, a reasonable jury could return a verdict for either party. *Anderson*, 477 U.S. at 248. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citing *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)).

III.    **ANALYSIS**

In Plaintiffs' Motion, Plaintiffs seek a determination that they were either actually or constructively discharged under color of state law.   [#51]   In Defendant's Motion, Defendants argue that: (1) Plaintiffs' positions required political loyalty such that they were not entitled to the First Amendment protections that they claim, entitling Defendants to summary judgment on Plaintiffs' First Amendment Retaliation claim; (2) Plaintiffs did not have a federally protected property interest in their employment, entitling Defendants to summary judgment on Plaintiffs' Fourteenth Amendment Procedural Due Process claim; (3) Sheriff Reigenborn in his individual capacity is the only proper defendant in this suit; and (4) Sheriff Reigenborn in his individual capacity is entitled to qualified immunity because his conduct did not violate Plaintiffs' clearly established rights.  [#53]  The Court begins with Plaintiffs' Motion, then moves to Defendants' Motion, taking each argument in turn.

### A.  Adverse Employment Action

To succeed in their First Amendment retaliation claims, Plaintiffs must show that their "public employer ha[s] taken some adverse employment action against [them]." *Hook v. Regents of Univ. of Cal.*, 394 F. App'x 522, 534 (10th Cir. 2010) (citing *Couch v. Bd. of Trs. of Mem'l Hosp.*, 587 F.3d 1223, 1235-36 (10th Cir. 2009)). The test for determining whether an employment action is adverse is "identical to the test which is applied in Title VII retaliation claims." *Id.* at 535 (citing *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006)). In Plaintiffs' Motion for Partial Summary Judgment,

10

Plaintiffs seek a determination that they were either actually or constructively discharged under color of state law.[6]  [#51]

### i.  Actual Discharge

"An actual discharge . . . occurs when the employer uses language or engages in conduct that would logically lead a prudent person to believe that his tenure has been terminated." *Fischer v. Forestwood Co.*, 525 F.3d 972, 979 (10th Cir. 2008) (quotation omitted).  However, when the record contains undisputed evidence that the employee resigned, the court will analyze the claim as one for constructive discharge. *See, e.g.*, *id.* at 980 ("An actual discharge does not occur, however, when the employee chooses to resign rather than work under undesirable conditions." (citation omitted)); *Burks v. Okla. Publ'g Co.*, 81 F.3d 975, 978 (10th Cir. 1996) ("This Court has recognized that an employee can prove a *constructive* discharge by showing that she was faced with a choice between resigning or being fired." (emphasis added)); *Honeyfield v. City of Gallup*, No. 8-CV-1034, 2010 WL 11526774, at *4-5 (D.N.M. Feb. 17, 2010) (holding that no actual discharge occurred when it was undisputed that the plaintiff resigned, despite his argument that he was terminated for the purposes of Title VII), *aff'd*, 436 F. App'x 836 (10th Cir. 2011).  In this case, the record contains written notice of retirement from three of the Plaintiffs,[7] and verbal requests to retire in good standing from all four.  [##60-1, DSOF31-32]  All four of Plaintiffs' employment files indicate "Retirement" as the reason for separation, as opposed to involuntary separation.  [*Id.*, DSOF33; #53-18]    While Plaintiffs dispute the voluntary nature of their resignations, they do not dispute that they

---

[6] Defendants concede that Sheriff Reigenborn's action was under color of state law.  [#57 at 1-2]

[7] The record does not contain any written notice from Chief Coates.

"each submitted requests to retire or resign . . . ." [#61-1 PSOF 64; *see also* #1, ¶¶141-42, 150-51, 153-54, 158-59 (alleging in the Complaint that Sheriff Reigenborn "offered [each Plaintiff] the option of resigning," and that "[each Plaintiff] agreed to a resignation in lieu of termination")].   Accordingly, the Court holds that Plaintiffs are not entitled to a finding that, as a matter of law, they were actually discharged, and instead proceeds under the constructive discharge framework.

### ii. Constructive Discharge

"Even if an employee resigns, the plaintiff may still satisfy the adverse employment action requirement by demonstrating that he was constructively discharged." *Fischer*, 525 F.3d at 980. "Constructive discharge occurs when 'the employer by its illegal discriminatory acts has made working conditions so difficult that a reasonable person in the employee's position would feel compelled to resign.'" *Sanchez v. Denver Pub. Sch.*, 164 F.3d 527, 534 (10th Cir. 1998) (quoting *Derr v. Gulf Oil Corp.*, 796 F.2d 340, 344 (10th Cir.1986)).   "The plaintiff's burden is substantial." *Lockheed Martin Corp. v. Admin. Rev. Bd.*, 717 F.3d 1121, 1133 (10th Cir. 2013) (quoting *Strickland v. United Parcel Serv., Inc.*, 555 F.3d 1224, 1228 (10th Cir. 2009)). "Essentially, a plaintiff must show that she had '*no other choice* but to quit.'" *Yearous v. Niobrara Cnty. Mem'l Hosp.*, 128 F.3d 1351, 1356 (10th Cir.1997) (quoting *Woodward v. City of Worland*, 977 F.2d 1392, 1401 (10th Cir.1992)) (emphasis in original).   Put differently, a plaintiff "must show that, at the time of his resignation, his employer did not allow him the opportunity to make a free choice regarding his employment relationship." *Exum v. U.S. Olympic Comm.*, 389 F.3d 1130, 1135 (10th Cir. 2004). "The standard is objective: the employer's subjective intent and the employee's subjective views on the situation are irrelevant." *Strickland*, 555 F.3d at 1228.

"[A] plaintiff who voluntarily resigns cannot claim that he or she was constructively discharged." *Exum*, 389 F.3d at 1135. "To determine whether a jury question exists as to the voluntariness of Plaintiffs' respective resignations, [the Court must] consider the totality of the circumstances under an objective standard." *Yearous*, 128 F.3d at 1356. "Among the factors [the Court] consider[s] in determining the voluntariness of an employee's resignation are (1) whether the employee was given some alternative to resignation; (2) whether the employee understood the nature of the choice [s]he was given; (3) whether the employee was given a reasonable time in which to choose; and (4) whether [s]he was permitted to select the effective date of resignation." *Id.* (quotation omitted). When an employee faces "more than the mere *possibility* of employment consequences" and resigns, then that resignation is not voluntary, as "the 'choice' between resignation and [severe employment consequences is] effectively no choice at all." *Barone v. United Airlines, Inc.*, 355 F. App'x 169, 185-86 (10th Cir. 2009) (unpublished) (distinguishing *Exum*, where the plaintiff had the option to comply with a superior's orders and only faced *possible* employment consequences); *see also Burks*, 81 F.3d at 978 ("This Court has recognized that an employee can prove a constructive discharge by showing that she was faced with a choice between resigning or being fired."); *Spulak v. K Mart Corp.*, 894 F.2d 1150, 1154 (10th Cir. 1990) (affirming jury's constructive-discharge finding where employer gave employee choice between either quitting and taking early retirement benefits or being terminated and losing retirement benefits), *abrogated on other grounds by Hazen Paper Co. v. Biggins*, 507 U.S. 604 (1993).

Considering the totality of the circumstances, the Court finds that Plaintiffs were constructively discharged. First, the day after Sheriff Reigenborn took office, Plaintiffs all received notices from Sheriff Reigenborn informing them that he "d[id] not believe retaining [Plaintiffs] [wa]s in the best interests of the organization," and that he "intend[ed] to revoke [their] appointment with [ACSO]." [##52-10, 52-11, 52-12, 52-13] The notice further placed each Plaintiff on Administrative Leave, barred them from the "secured [and] unsecured area[s] of the Sheriff's Office without prior approval," and instructed them to return their keys, vehicles, credentials, and badges. [*Id.*] Finally, the notice instructed the Plaintiffs on what to do "[u]pon termination," and "wish[ed] [them] the best in [their] future endeavors." [*Id.*]

Plaintiffs were next allowed to meet with Sheriff Reigenborn to discuss the notice. [#61-1, PSOF38] In each meeting, however, Sheriff Reigenborn made clear that the only options for Plaintiffs were termination or resignation. In his meeting, Chief Claps made clear his desire to "retain some type of a position or career with [ACSO]," pointing out that he had been an effective employee for many different administrations. [#52-18 at 3-4 (2:17-3:9)] Only in the event of non-retention did Chief Claps ask for retirement in good standing. [*Id.* at 4-5 (3:12-4:2)] Sheriff Reigenborn responded that he "just [didn't] think that [Claps was] going to be able to change and be part of the culture that [ACSO was] headed towards." [*Id.* at 5 (4:3-6)] After a brief recess, Chief Claps asked Sheriff Reigenborn: "So I am not offered any other positions . . . with this agency[?]" [*Id.* at 6 (5:8-9)] Sheriff Reigenborn replied: "No, not at this time." [*Id.* (5:10)] Finally, Sheriff Reigenborn instructed Chief Claps to submit a retirement request in writing "no later than

tomorrow by 5 p.m.," and that "[o]therwise . . . I will send a letter of termination and you don't qualify [for LEOSA or severance]."  [*Id.* at 7 (6:8-15)]

Sheriff Reigenborn made similar statements to Commander Currier during his meeting. Sheriff Reigenborn told Commander Currier at the beginning of the meeting that "I'm still your friend, but, professionally, I'm going in a different direction."  [#52-20 at 3 (2:18-19)]  Then, after prefacing his statement with "here's the part that I hate," Sheriff Reigenborn informed Commander Currier that ACSO was "downsizing," and then immediately informed Commander Currier that he was eligible to retire.  [*Id.* at 8 (7:2-15)] Sheriff Reigenborn gave Commander Currier the same 5 p.m. deadline to submit a written retirement request, and explained that "[i]f I don't get an email from you by tomorrow at 5:00, then I'm going to have to terminate you with the same termination date."  [*Id.* (7:17-24)]

Captain Mitchell opened his meeting with Sheriff Reigenborn by directly asking "what kind of decision-making process was put in place to fire an employee with 29 years of experience . . . ."  [#52-22 at 3 (2:6-9)]  Sheriff Reigenborn did not deny that Mitchell's employment was ending, but simply responded that ACSO was "going in a different direction. We don't think that you fit where we're going."  [*Id.* (2:10-12)]  After Sheriff Reigenborn explained that he was eliminating the captain's position, Captain Mitchell asked Sheriff Reigenborn to explain "why my counterpart at the jail was offered a sergeant's position, and I was fired," noting the inconsistency.  [*Id.* at 6-7 (5:20-6:3)] Sheriff Reigenborn replied, "I get that, Mark." [*Id.* at 7 (6:4)]  When pressed by Captain Mitchell for more explanation, Sheriff Reigenborn asked Captain Mitchell to step outside. [*Id.* at 7 (6:5-15)]  After a recess, Sheriff Reigenborn explained to Captain Mitchell that, if

15

he wanted to retire, Sheriff Reigenborn would "need a letter from you no later than 5 p.m. tomorrow saying you wish to retire." [#52-22 at 17 (2:5-8)] After Captain Mitchell confirmed details and asked how this action would show up on a future job application, Sheriff Reigenborn replied: "That you retired in good standing . . . . Otherwise, you wouldn't be getting the credentials for [LEOSA]. You already know that. . . . If I terminate you, you don't qualify for that because you wouldn't be in good standing. That's the biggest part of it." [*Id.* at 17-18 (2:21-3:7)]

Finally, Chief Coates began his meeting by asking Sheriff Reigenborn to "tell me why I'm being released." [#53-25 at 3 (2:4-6)] Again, Sheriff Reigenborn did not deny that Chief Coates was being released, but responded: "I don't think your vision is going to fit our vision," or words to that effect. [#61-1, PSOF60] Chief Coates then asked whether he would get "the same opportunity to retire by tomorrow . . . , or am I terminated." [#52-25 at 3 (2:9-11)] After explaining that "[t]his is about me moving the agency in a different direction, and it's not personal," Sheriff Reigenborn answered that Chief Coates would be allowed to retire. [*Id.* (2:17-23)]

In sum, Plaintiffs were sent letters saying that they would be terminated and presenting them with plainly intolerable working conditions—administrative leave with no access to the office and the surrender of their keys, credentials, badges, and vehicles. Then, in their meetings, Plaintiffs were never presented with an option to remain at ACSO or ameliorate the administrative action taken against them. *See Yearous*, 128 F.3d at 1356 (considering "whether the employee was given some alternative to resignation" as a factor to determine whether a resignation was voluntary). Instead, they were told that they would not fit the future "direction," "vision," or "culture" of ACSO, and were given a

16

deadline to resign of less than 48 hours. *See id.* (considering "whether the employee was given a reasonable time in which to choose" and "whether [the employee] was permitted to select the effective date of resignation" as factors to determine whether a resignation was voluntary). Sheriff Reigenborn explicitly stated to Chief Claps and Commander Currier that if he did not receive a written retirement request by the next day, then they would be terminated. He directly answered Captain Mitchell's and Chief Coates's questions as to why they were being "released" or "fired," implicitly acknowledging that these Plaintiffs' employment at ACSO would not continue. And when explicitly asked by Chief Claps and Captain Mitchell about alternative jobs available within ACSO, Sheriff Reigenborn either offered no answer or confirmed that he would not be offering an alternative position.

Defendants argue that the facts are disputed as to whether Sheriff Reigenborn would have fired Plaintiffs had they not resigned. Defendants point out that the notices only stated an "intent" to terminate Plaintiffs, that they would be given a hearing, and that other deputies who received the notices retained employment at ACSO. [#57 at 8-9; *see also* #60-1, DSOF34] The Court agrees that the notice is not dispositive in this case, and the Court's holding is not based on any notion of the notice constituting a final action by ACSO. Nonetheless, the notice informing Plaintiffs of Sheriff Reigenborn's intent to terminate them, placing them on Administrative Leave, instructing them of what to do "upon termination," and wishing them well in their "future endeavors" is certainly relevant in determining how, considering the totality of the circumstances, a reasonable person would understand the situation. Moreover, at the hearing, Plaintiffs were not given an option of staying at ACSO; indeed, two Plaintiffs were explicitly told that they would be

terminated and the other two were implicitly given that message. And the fact that other deputies were retained is not enough to create a genuine dispute regarding the totality of the circumstances experienced by *these* Plaintiffs, who were not offered any alternatives to termination or resignation.

Defendants also rely on Sheriff Reigenborn's testimony that Plaintiffs would not have been terminated had they not requested retirement. [#57 at 9; *see also* #52-26 at 2] The testimony on Sheriff Reigenborn's intent is contradictory [#61-1 PSOF66] and ultimately irrelevant for the purposes of this inquiry. Again, "[t]he standard is objective: the employer's subjective intent . . . [is] irrelevant." *Strickland*, 555 F.3d at 1229. Objectively viewed, Defendants did not communicate any opportunity for Plaintiffs to retain employment at ACSO in any form. Indeed, Coates was explicitly denied that opportunity. When asked why they were being "fired" or "released," Sheriff Reigenborn provided a purported justification for the action as opposed to any type of clarification that they would be offered different positions. And Sheriff Reigenborn clearly communicated that if Plaintiffs did not submit retirement notices by the end of the following day, then they would be terminated. The only options communicated to Plaintiffs were termination or retirement. Under these circumstances, this did not constitute the kind of "choice" that is required for a resignation to be voluntary. Because "the evidence is susceptible to but one interpretation" as to the issue of constructive discharge, Plaintiffs' Motion [#51] is GRANTED.[8] *Id.* at 1229.

---

[8] Defendants raise two other arguments in their response to Plaintiff's Motion. First, they argue that constructive discharge is not an available theory for Plaintiff's substantive due process claims. [#57 at 9-10] Because, for the reasons detailed below, the Court agrees that Defendants are entitled to summary judgment on Plaintiffs' substantive due process claims, the Court does not address whether a constructive discharge theory would be

### B.  Positions Requiring Political Loyalty

"The First Amendment protects public employees from discrimination based upon their political beliefs, affiliation, or non-affiliation unless their work requires political allegiance." *Snyder v. City of Moab*, 354 F.3d 1179, 1184 (10th Cir. 2003) (quoting *Mason v. Okla. Tpk. Auth.*, 115 F.3d 1442, 1451 (10th Cir.1997), *overruled on other grounds by TW Telecom Holdings Inc. v. Carolina Internet Ltd.*, 661 F.3d 495 (10th Cir. 2011)). Defendants argue that, assuming Plaintiffs were in fact terminated for their First Amendment activities,[9] summary judgment is still warranted on this claim because Plaintiffs' high-ranking positions within ACSO exempted them from any First Amendment protections for their employment.  [#53 at 9-11]

In determining whether a plaintiff's work requires political allegiance, "the question is whether the hiring authority can demonstrate that party affiliation is an appropriate requirement for the effective performance of the public office involved." *Branti v. Finkel*, 445 U.S. 507, 518 (1980).  "Or, more precisely, in these circumstances the issue is whether political loyalty or affiliation with *particular persons* can be made an appropriate requirement for effective performance in the positions the plaintiffs held." *Dickeson v. Quarberg*, 844 F.2d 1435, 1442 (10th Cir. 1988) (emphasis added).  The position's

---

available to Plaintiffs on those claims.  Second, Defendants argue that only Sheriff Reigenborn in his individual capacity is a proper Defendant.  [*Id.* at 10-11]  This argument, which largely incorporates the same argument raised in Defendants' Motion, is addressed in detail below.

[9] Defendants initially moved for summary judgment on the grounds that Plaintiffs had no evidence that Sheriff Reigenborn's actions were motivated by Plaintiffs' First Amendment activities. [#53 at 8]  In their Reply in Support of Defendants' Motion, however, Defendants set that argument aside, conceding the point for the purposes of summary judgment.  [#60 at 2]

"political dimension" and its "discretionary authority" are important considerations. *Poindexter v. Bd. of Cnty. Comm'rs*, 548 F.3d 916, 920 (10th Cir. 2008).

"The employer . . . bears the burden of proving whether political association is an appropriate requirement for the effective performance of the public office involved." *Snyder*, 354 F.3d at 1185. This inquiry entails a holistic review of "the nature of the employee's duties and responsibilities." *Dickeson*, 844 F.2d at 1442 (citing *Elrod v. Burns*, 427 U.S. 347, 367-68 (1976) (plurality opinion)). "[T]itles alone" are not dispositive, *id.*, and "'no clear line can be drawn' between positions that require political allegiance and those that do not," *Snyder*, 354 F.3d at 1185 (quoting *Elrod*, 427 U.S. at 367). When the facts as to the nature of the employee's duties are undisputed, a district court may resolve this issue as a matter of law. *Barker v. City of Del City*, 215 F.3d 1134, 1138 (10th Cir. 2000). Otherwise, this presents a question of fact. *Id.* "In close cases, doubt should be resolved in favor of the public employee subject to the dismissal." *Dickeson*, 844 F.2d at 1442 (citing *Elrod*, 427 U.S. at 368).

The Court finds that this constitutes a "close case," but that ultimately there is a genuine dispute of fact as to whether the Plaintiffs' positions required political loyalty. The analysis begins with the highest-ranking Plaintiff: Chief Coates. In 2018, Chief Coates held the position of "Division Chief of Detectives." [#60-1, DSOF3] According to Chief Coates' resume and testimony, he was "third in command" at ACSO, which required "input in executive level decision making." [##60-4; 53-2 at 84 (84:4-13)] "This included creating and implementing policy and procedures, managing employee disciplinary issues, budgetary oversight . . . and assuming command of the Sheriff and Undersheriff's positions in their absence." [*Id.*] Coates testified that he was "entrusted with high-level

information that others within the agency [we]re not," and that he interacted with the public and other agencies in his role as chief. [#53-2 at 87 (87:1-4, 87:19-23)]

In *Poindexter*, a divided Tenth Circuit panel held that a County Commissioner's "Road Foreman" had such a "significant political dimension and sufficient discretionary authority" that the County Commissioner "may properly take political loyalty into account" as a matter of law. 548 F.3d at 920. The majority relied on evidence that the Road Foreman supervised employees and inmates working within the district, terminated employees for cause, delegated project assignments, worked as County Commissioner in the Commissioner's absence, made modest expenditures on his own authority, and regularly communicated with the public on behalf of the Commissioner. *Id*. This communication element consisted of acting as "an ambassador to the community on behalf of the Commissioner," and included answering "what seem[ed] like 10,000 calls a year" on the Commissioner's behalf. *Id*.

In contrast, Chief Coates did not exercise the same degree of discretionary authority as the Road Foreman in *Poindexter*. He could only make recommendations to the sheriff as to personnel, with no authority to hire or fire. [##53-2 at 88 (88:2-9); 52-1 at 10-11 (10:22-11:5)] Moreover, Chief Coates had, in the form of the undersheriff, an additional intermediary between himself and the final policymaker. *See* [#53-2 at 52 (52:2-16)] To be sure, Plaintiffs are incorrect in asserting that "the record lacks any evidence of Plaintiffs having any independent policymaking authority." [#56 at 15] Chief Coates' resume listed "*creating* and implementing policy and procedures" [#60-4 (emphasis added)], and Chief Coates testified that one of his "vast responsibilities" was "contributing my thoughts in policy and procedure" [#53-2 at 83-84 (83:16-84:5-6)]. But there is

conflicting evidence as to the extent of Chief Coates' discretionary authority. Chief Coates also testified that "there's not a lot" of discretion in how he ran the division because "the direction [is] the sheriff['s]." [*Id.* at 84 (84:18-22)]  That is, "the sheriff is the sheriff and everyone else is a deputy. . . . [A]t the end of the day, we all get the same policies and procedures [from the Sheriff] and generally they are fairly well outlined." [*Id.* at 85 (85:17-22)]  And Sheriff Reigenborn testified that any policy put out by a Division Chief that did not align with the Sheriff's views were rescinded because "they're not the direction that I want the agency to go . . . ."  [52-1 at 5 (21:2-11)]

Moreover, "the label 'policymaker' is not dispositive . . . ." *Jantzen v. Hawkins*, 188 F.3d 1247, 1255 n.3 (10th Cir. 1999) (citing *Branti*, 445 U.S. at 518). The guiding question, again, is whether political loyalty or affiliation with a particular party, or particular persons, is an appropriate requirement for effective performance of Coates' job.  *Branti*, 445 U.S. at 518; *Dickeson*, 844 F.2d at 1442.  Thus, in *Poindexter*, the Tenth Circuit relied on the Road Foreman's role as "ambassador" as the "most important single fact in support of the conclusion that the job ha[d] a component of political loyalty."  548 F.3d at 920, 923; *see also Branti*, 445 U.S. at 518 (citing as a "clear" example of a position requiring political loyalty a Governor's staff-member who assists with speechwriting, speaks with the press on the Governor's behalf, or communicates with the legislature).  Defendants do not argue that Chief Coates served in this communication-forward political capacity.  [##53 at 9-1; 60 at 2-7]  And as far as his ability to effectively perform his job with underlying policy disagreements, the record is unclear. Take this exchange during Coates' deposition:

Q: What if you disagreed with the sheriff's policy?

A: I think, at the end of the day, I was successful because I believed in the sheriff.  I believed in the best practices of the profession. . . . And, again, in the structure of rank and file, in this job, where . . . we're trained from early

> on that I found it to be un-beneficial to have that type of opposition. I just
> didn't believe in it.

[#53-2 at 86 (86:6-17)] A reasonable jury could conclude from this statement that a
Division Chief must "believe[] in the sheriff" in order to be effective, and that a political
disagreement could hinder that relationship. But Chief Coates could also be reasonably
understood as testifying that because of the highly structured "rank and file" nature of the
job, successful Division Chiefs are well-trained to not let their political disagreements with
any individual person holding the office of "Sheriff" impact their ability to perform their
duties.

Along similar lines, Chief Coates indicated that the "simplistic . . . bureaucratic
nature of chain of command, and policies and procedures[] and mandates [instituted by
the sheriff], and uniformity" of the job were the controlling factors for an effective Division
Chief, not the Chief's political affiliation to the acting sheriff or undersheriff. [*Id.* at 52-53
(52:21-53:7)] Indeed, under ASCO policy, all employees regardless of rank "retain[ed]
their right to vote as they choose, to support candidates of their choice and to express
their opinions as private citizens . . . on political subjects and candidates at all times while
off-duty." [#60-1, DSOF 88] The existence of this policy supports the conclusion that
political support or affiliation was not a necessary component to effective service for any
deputy. Finally, the Court credits the fact that Chief Coates, and the other three Plaintiffs,
had served in a variety of ranks under both Republican and Democratic sheriffs. [#61-1,
PSOF 4] This indicates that, while the job may benefit from loyalty to and respect for the
sheriff as an individual, the *political* loyalties or affiliations of the Plaintiffs as compared to
those of the acting sheriff may not have impacted their abilities to perform their duties.
*See Branti*, 445 U.S. at 518 ("[T]he question is whether the hiring authority can

23

demonstrate that party affiliation is an appropriate requirement for the effective performance of the public office involved."); *Jantzen*, 188 F.3d at 1253 (noting that "there is ample proof that [the plaintiffs] actually did effectively perform their jobs despite political differences with the Sheriff").

This holding is consistent with precedent in this District and this Circuit. In *Nicastle v. Adams Cnty. Sheriff's Off.*, the court allowed a First Amendment claim brought by a Colorado sheriff's deputy with the rank of lieutenant[10] arising out of his allegedly retaliatory demotion to proceed to a jury. No. 10-CV-00816-REB-KMT, 2011 WL 1598062, at *3, 7 (D. Colo. Apr. 28, 2011). In *Jantzen*, the Tenth Circuit similarly determined that a genuine dispute over whether a Colorado jailer and sheriff's deputies "could effectively perform their jobs without being politically loyal to the Sheriff." 188 F.3d at 1253. Similarly, in *Francia v. White*, 594 F.2d 778 (10th Cir. 1979), a case involving New Mexico deputy sheriffs who were allegedly terminated for their political activities, the Tenth Circuit "pointed out that these plaintiffs were serving in non-policy-making, non-confidential positions." 594 F.2d at 782. While the Court does not view these cases as dispositive in light of the fact- and circumstance-intensive nature of the inquiry, they are persuasive support for finding, as in those cases, that a genuine dispute of fact exists here.

Accordingly, a genuine dispute of fact exists as to whether Chief Coates' job required political allegiance. Moreover, the record is clear that none of the other Plaintiffs exercised more discretion or had a greater need for political loyalty than Coates, the third-

---

[10] Defendants concede that this is now the rank of "Commander," the same held by Commander Currier. [#53 at 19]

in-command at ACSO. *See* [#53-5] (written job descriptions). Defendants do not contest this. [#60 at 3-5] (Defendants listing the job description of "Commander," then listing the job description of "Captain" as "all duties described for Commander, plus: [additional duties]," and finally listing the job description of "Chief[]" as "all duties described for Commander, plus: [additional duties]"). Because a genuine dispute of fact exists as to Chief Coates on this issue, the Court finds that a genuine dispute of fact exists as to the other three Plaintiffs, who had substantially similar job responsibilities as Chief Coates but with less discretionary authority and no heightened political element. For the foregoing reasons, Defendant's Motion is DENIED as to Plaintiffs' First Amendment retaliation claim.

### C. Fourteenth Amendment Protected Property Right

In Claim Two, Plaintiffs allege that they were deprived of their jobs without due process, in violation of the Fourteenth Amendment. [#1, ¶¶ 178-91] "Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the . . . Fourteenth Amendment." *Mathews v. Eldridge,* 424 U.S. 319, 332 (1976) (quotations omitted). "To determine whether a plaintiff was denied procedural due process, [the Court must] engage in a two-step inquiry: (1) Did the individual possess a protected interest to which due process protection was applicable? (2) Was the individual afforded an appropriate level of process?" *Roberts v. Winder*, 16 F.4th 1367, 1376 (10th Cir. 2021) (quoting *Hennigh v. City of Shawnee*, 155 F.3d 1249, 1253 (10th Cir. 1998)). Defendants argue that Plaintiffs did not have a protected property interest in their employment and therefore fail at step one. [#53 at 16-17]

25

"The standard for the existence of a property right in employment is whether the plaintiff has a legitimate expectation of continued employment." *Hennigh*, 155 F.3d at 1253 (citing *Board of Regents v. Roth*, 408 U.S. 564, 577 (1972)). The Tenth Circuit has held that "if state statutes or regulations place substantive restrictions on a government actor's ability to make personnel decisions, then the employee has a protected property interest." *Id.* (citing *Campbell v. Mercer*, 926 F.2d 990, 993 (10th Cir.1991)). So, "if the statute or regulation places substantive restrictions on the discretion to demote an employee, such as providing that discipline may only be imposed for cause, then a property interest is created." *Roberts*, 16 F.4th at 1376 (quoting *Hennigh*, 155 F.3d at 1254). However, "[p]rocedural detail in a statute or regulation, standing alone, is not sufficient to establish a protected property interest in an employment benefit." *Id.* (quoting *Hennigh*, 155 F.3d at 1254). "At-will employees lack a property interest in continued employment." *Coleman v. Utah State Charter Sch. Bd.*, 673 F. App'x 822, 828 (10th Cir. 2016) (citing *Darr v. Town of Telluride*, 495 F.3d 1243, 1252 (10th Cir. 2007)).

Here, Plaintiffs primarily rely on Colorado Revised Statute § 30-10-506 to create a protected property interest. [#56 at 20-24] That statute provides in relevant part:

> Each sheriff may appoint as many deputies as the sheriff may think proper and may revoke such appointments at will; except that a sheriff shall adopt personnel policies, including policies for the review of revocation of appointments. Before revoking an appointment of a deputy, the sheriff shall notify the deputy of the reason for the proposed revocation and shall give the deputy an opportunity to be heard by the sheriff.

Colo. Rev. Stat. § 30-10-506. Plaintiffs argue that the notice and hearing requirements added to the statute in a 2006 amendment provide a substantive limitation on the sheriff's "at will" revocation authority. [#56 at 20-22]

Multiple courts in this District have analyzed Section 506 after its 2006 amendment. All have rejected the argument that this statutory provision provides the type of "substantive restrictions on the [sheriff's] discretion" required to create a protected property right. *McLallen v. Taylor*, No. 10-CV-01187-RPM, 2012 WL 502697, at \*4 (D. Colo. Feb. 15, 2012) ("[Section 506] contains no substantive restriction on the sheriff's discretion in revoking the appointment of a deputy . . . . [T]he statute does not create a property interest within the constitutional protection."); *Nicastle*, 2011 WL 1598062, at \*5 ("[Section 506] provides procedural detail but does not place substantive restrictions on the discretion of a sheriff to revoke an appointment . . . ."); *Harrison v. Bd. of Cnty. Comm'rs*, No. 11-CV-03407-MSK-KMT, 2013 U.S. Dist. LEXIS 33903, \*11-12 (D. Colo. Feb. 8, 2013) (holding that, in accordance with *McLallen* and *Nicastle*, "[Section 506] does not create a cognizable property interest" sufficient to sustain a Fourteenth Amendment claim), *report and recommendation adopted*, 2013 WL 950785 (D. Colo. Mar. 12, 2013). In addition, the Tenth Circuit has held that sheriff's deputies are still at-will employees, even after the amendment of Section 506. *Williams v. McKee*, 655 F. App'x 677, 686-87 (10th Cir. 2016) (quoting Section 506 for the proposition that a sheriff in Colorado "may revoke . . . appointments at will," and holding that a sheriff's deputy's "due process claims [arising out of his termination must] fail" due to lack of a protected property interest). In accordance with this weight of authority directly applying Section 506 after its 2006 amendment, the Court holds that Section 506's notice and hearing requirements are procedural details that do not create a protected property interest for the purposes of the Fourteenth Amendment.

Plaintiffs also briefly argue that "the practices and understandings within the Sheriff's Office"—specifically the "understanding" that no termination would take place without a job-related reason or an internal affairs investigation—created a protected property right. [#56 at 22-23]  Plaintiffs do not point to any written policy or contract between ACSO and themselves supporting this practice as ACSO policy.[11] Plaintiffs instead rely on an implied "understanding" that existed within ACSO that such an investigation would normally take place before termination and that termination would only be for job-related reasons. This type of unwritten policy may create a protected property right. *See Schulz v. City of Longmont*, 465 F.3d 433, 444 (10th Cir. 2006) ("State law sources for property interests can include statutes, municipal charters or ordinances, and express or implied contracts.").  However, as a matter of law, a written contract or policy specifying at-will employment will supersede an unwritten understanding. *See Coleman*, 673 F. App'x at 828 (holding that, as a matter of law, Plaintiff's valid at-will contract superseded a "mutual[ ] . . . understanding" that she would retain her job and governed her relationship with her public employer); *Van Dam v. Guernsey*, No. 20-CV-60-SWS, 2021 WL 1774137, at *13-14 (D. Wyo. May 4, 2021) (holding that, as a matter

---

[11] The Court notes the existence of Policy 1024, which Plaintiffs appear to reference in their Notice of Supplemental Authorities. [#65]  Policy 1024.4.1 restricts an ACSO employee's ability to engage in certain forms of political speech or activities in a way that could be perceived as representing ACSO.  [#56-11 at 3]  It then disclaims any infringement of an employee's right to engage in political activity while off-duty. [*Id.*]  While Policy 1024 bolsters Plaintiffs' entitlement to First Amendment protection from retaliation, it does not create a protected property interest in continued employment. Reinforcing the well-established legal rule that an at-will government employee is protected by the First Amendment does not create a protected property interest in continued employment.  *Bd. of Cnty. Comm'rs v. Umbehr*, 518 U.S. 668, 675 (1996) ("While protecting First Amendment freedoms [for, among others, at-will government employees,] we have, however, acknowledged that the First Amendment does not create property or tenure rights . . . .").

of law, an express disclaimer acknowledging that Plaintiff's employment was at-will superseded any allegedly "official but unwritten policies" to the contrary).

In this case, no Plaintiff had a written contract. [#60-1, DSOF13] And the operative ACSO policy, issued on Sheriff Reigenborn's first day in office, stated that: "All employees of [ACSO] are at-will employees. . . . The Sheriff may terminate employees or revoke deputy appointments at will, with or without cause." [#52-8 at 1] It further stated that "[t]here are no policies or procedures applicable to the disciplinary process other than the termination procedures set forth in Policy 1 above"—that is, notice and a hearing. [*Id.* at 2] Plaintiffs give the Court no reason to think that this policy was invalidly enacted, and the statutory text contains no restrictions on a new sheriff's ability to issue new employment policies so long as deputies are given notice and an opportunity to be heard. C.R.S. § 30-10-506; *accord. Cummings v. Arapahoe Cnty. Sheriff's Dep't*, 440 P.3d 1179, 1186 (Colo. App. 2018) ("[T]he amended statute requires a sheriff to promulgate written employment policies. The sheriff must give his deputies the rights of notice and opportunity to be heard. Other employment policies promulgated by the sheriff may be, but are not required to be, binding."). Accordingly, any unwritten understanding within ACSO cannot supersede this clear and unambiguous operative policy language. *See Rooker v. Ouray Cty.*, 841 F.Supp.2d 1212, 1216-19 (D. Colo. 2012) (finding no protected property interest when a written policy provided an opportunity to be heard before termination, but also specified that employment was at-will employment and failure to adhere to any provision hereof shall not create any additional rights or remedies"), *aff'd*, 504 Fed. App'x 734 (10th Cir. 2012); *Jeffers v. Denver Pub. Sch.*, No. 16–cv–02243–CMA–MJW, 2017 WL 2001632, at *5 (D. Colo. May 11, 2017) (finding no protected

property right when policy stated that "employment may be terminated for any time, with or without cause"), *report and recommendation adopted*, 2017 WL 5441612 (D. Colo. June 1, 2017), *recon. den'd*, 2017 WL 5256359 (D. Colo. Nov. 13, 2017).   For the foregoing reasons, Defendant's Motion is GRANTED as to Plaintiffs' Fourteenth Amendment procedural due process claims.

Finally, in their response to Defendants' Motion for Summary Judgment, Plaintiffs seek leave to amend their complaint to add a Breach of Implied Contract Claim.[12]  [#56 at 24]  The Court declines to construe this request as a motion to amend the pleadings. Should Plaintiffs wish to amend their pleading, they are instructed to file a motion that complies with the Federal Rules of Civil Procedure and the local rules, to be properly briefed and set for a hearing, if needed.

### D.  Proper Defendants

Plaintiffs assert claims against Sheriff Reigenborn in his official and individual capacities, and against ACSO.   [#1]   Defendants argue that Sheriff Reigenborn in his individual capacity is the only proper defendant, and that Sheriff Reigenborn in his official capacity and ACSO should be dismissed.   [#53 at 5-7]   Defendants argue that a suit against Sheriff Reigenborn in his official capacity is the equivalent of a suit against Adams

---

[12] Plaintiffs also cite *Brosh v. Duke*, No. 12-CV-00337-CMA-MJW, 2012 WL 5289536 (D. Colo. Oct. 24, 2012), *aff'd*, 616 F. App'x 883 (10th Cir. 2015), for the proposition that the Court has inherent authority to "convert" Plaintiffs' Fourteenth Amendment claim into a state-law contract claim.   [#56 at 24]   To the extent that such authority exists, the Court declines to exercise it. In *Brosh*, Plaintiffs claimed that their Eighth Amendment rights were violated.   2012 WL 5289536, at *1.   While their pleadings only alleged an Eighth Amendment claim of constitutionally inadequate conditions of confinement, the court allowed the claim to proceed as an Eighth Amendment excessive force claim. *Id.* at *4 & n.3. Here, Plaintiffs seek to convert a claim alleging that their federally protected rights were violated into one alleging a breach of state contract law.   This is a bridge too far for purely judicial action.

30

County (the "County"). [*Id.* at 5] And, according to Defendants, Colorado counties do not control the employment decisions of "the Sheriff's office," meaning that the County cannot be held responsible for Sheriff Reigenborn's individual employment decisions. [*Id.* at 6] As to ACSO, Defendants argue that it is not a legal entity subject to suit and is therefore not a proper party.[13] [*Id.* at 6-7] Thus, according to Defendants, no governmental entity would be liable under Section 1983 when a Colorado Sheriff violates an employee's constitutional rights through an unlawful employment action.

As a general rule, "municipalities and municipal entities . . . are not liable under 42 U.S.C. § 1983 solely because their employees inflict injury on a plaintiff." *Fofana v. Jefferson Cnty. Sheriff's*, No. 11-cv-00132-BNB, 2011 WL 780965, at *2 (D. Colo. Feb. 28, 2011) (citing *Monell v. New York City Dep't of Social Servs.*, 436 U.S. 658, 694 (1978) and *Hinton v. City of Elwood*, 997 F.2d 774, 782 (10th Cir. 1993)). Instead, "they are responsible only for their *own* actions." *Simmons v. Uintah Health Care Special Dist.*, 506

---

[13] Defendants did not waive this argument by failing to raise it in their Rule 12 motion [#14]. While Defendants make an errant reference to "this Court's [lack of] in-personam jurisdiction" over ACSO [#53 at 6], the thrust of Defendants' argument is that Plaintiffs' Section 1983 claim fails against ACSO because ACSO is not a "person" under the statute [*id.* at 6-7]. The Tenth Circuit and numerous district courts in this circuit have decided the merits of this argument on a motion for summary judgment. *See, e.g.*, *Harper v. Colorado State Bd. of Land Comm'rs*, 248 F. App'x 4, 9 (10th Cir. 2007) ("[B]ecause the § 1983 claims at issue in this appeal are asserted against the Land Board, an entity that is not a 'person' under that statute, the district court's grant of summary judgment was proper."); *Hunt v. Bd. of Regents*, 338 F. Supp. 3d 1251, 1267 (D.N.M. 2018) ("[T]he Court concludes that Defendants are entitled to summary judgment on all of Hunt's claims against them. As explained above, the Board of Regents is an entity, not a 'person' that may be held liable under Section 1983."), *aff'd sub nom. Hunt v. Bd. of Regents*, 792 F. App'x 595 (10th Cir. 2019); *Grayson v. Kansas*, No. 06-cv-2375-KHV, 2007 WL 2994070, at *11 (D. Kan. Oct. 12, 2007) ("[T]he State of Kansas argues that it is not a person under Section 1983. Plaintiff concedes this point and the Court therefore finds that the State of Kansas is entitled to summary judgment on plaintiff's Fourth Amendment and Fourteenth Amendment claims." (citations omitted)).

F.3d 1281, 1284 (10th Cir. 2007) (citing *Monell*, 436 U.S. at 691-95 and *Pembaur v. City of Cincinnati*, 475 U.S. 469, 478-80 (1986)).  Nonetheless, an action may be attributed to a municipality or municipal entity when: 1) the action was taken in compliance with a longstanding policy or custom; or 2) the action was taken by the municipality's final policymakers.  *Id.* at 1285 ("[A] municipality is responsible for *both* actions taken by subordinate employees in conformance with preexisting official policies or customs *and* actions taken by final policymakers, whose conduct can be no less described as the 'official policy' of a municipality.").

"In determining whether an official has final policymaking authority, [the Court] look[s] to state and local law."  *Jackson v. City & Cnty. of Denver*, No. 20-1051, 2022 WL 120986, at *4 (10th Cir. Jan. 13, 2022) (citing *City of St. Louis v. Praprotnik*, 485 U.S. 112, 124 (1988)).  Colorado sheriffs plainly hold final policymaking authority with respect to employment decisions for their office.  *See* C.R.S. § 30-10-506 ("[e]ach sheriff may appoint as many deputies as the sheriff may think proper and may revoke such appointments at will," subject to the sheriff's own personnel policies and a notice and hearing requirement); *Tonjes v. Park Cnty. Sheriff's Off.*, 300 F. Supp. 3d 1308, 1332 (D. Colo. 2018) ("C.R.S. § 30–10–506 plainly makes the sheriff the final policymaker for the Sheriff's Office with respect to employment of deputies . . . .").  Indeed, the parties do not dispute that Sheriff Reigenborn was the final policymaker with respect to employment decisions at ACSO.  [## 60-1, DSOF 37; 61-1, PSOF 2]

Defendants appear to argue both that the County cannot be liable for Sheriff Reigenborn's actions because Sheriff Reigenborn is not under the County's control and therefore his actions cannot be imputed to the County, and that ACSO cannot be sued

separately because it is simply an office or department within the County with no separate legal entity. These positions are untenable. To be sure, this District is split as to whether the proper municipal defendant is ACSO or the County. *See Chavez v. Bd. of Cnty. Commissioners of Lake Cnty., Colorado*, 426 F. Supp. 3d 802, 809-810 (D. Colo. 2019). Some cases hold that the proper defendant is the Sheriff's Department because it is a constitutionally separate office. *See id.* (concluding, based on an analysis of *Tunget v. Bd. of Cnty. Comm'rs*, 992 P.2d 650 (Colo. App. 1999) and *Bristol v. Bd. of Cnty. Comm'rs*, 312 F.3d 1213, 1219 (10th Cir. 2002) (en banc), that sheriff's offices in Colorado have the capacity to be sued in a § 1983 case); *Tonjes* 300 F. Supp. 3d at 1332 ("C.R.S. § 30–10–506 plainly makes the sheriff the final policymaker for the Sheriff's Office with respect to employment of deputies, and if the sheriff acted unconstitutionally in those duties, the Sheriff's Office can be held liable for his actions."). Some cases hold that the county is the proper defendant because the sheriff's office, like a municipal fire or police department, has no separate legal existence from the county. *Lancaster v. Windsor Police Sgt. Straightline*, No. 15-CV-02852-GPG, 2016 WL 852863, at *3 (D. Colo. Mar. 4, 2016) ("Plaintiff may not sue the Weld County Sheriff and Weld County Jail because these entities are not 'persons' subject to suit under 42 U.S.C. § 1983."); *Johnson v. Correct Care Sols., LLC*, No. 17-CV-00782-RM-STV, 2018 WL 7372075, at *4 (D. Colo. Nov. 21, 2018) ("The Arapahoe County Sheriff's Department therefore is not a proper defendant under Colorado law."), *report and recommendation adopted*, No. 1:17-CV-00782-RM-STV, 2019 WL 764602 (D. Colo. Feb. 21, 2019). And at least one has held that both are proper defendants. *See De Gomez v. Adams Cnty.*, No. 20-CV-01824-CMA-NYW, 2022 WL 1439113, at *10 (D. Colo. May 6, 2022) ("[T]he claims against the

33

individuals in their official capacities are viewed as claims against Adams County and the Adams County Sheriff's Office."). But none have allowed the type of municipal-liability loophole that Defendants seek to create here. Such a result would unfairly punish Plaintiffs for the legal uncertainty, despite their viable municipal liability claims.

While recognizing the dispute, the Court holds that the County is the proper municipal defendant, and that Plaintiffs' claims have been properly brought against it by naming Sheriff Reigenborn in his official capacity. *See Kilman v. Brown*, 833 F. App'x 474, 475 (10th Cir. 2021) (explaining that "[b]ecause [plaintiff] named Sheriff Brown in his official capacity, his suit functioned as a suit against Arapahoe County itself"). Defendants argue that the County cannot be held liable for Sheriff Reigenborn's actions because the County does not control his employment decisions. [#53 at 6] But this simply means that Sheriff Reigenborn is the final policymaker on personnel matters for the County and that his employment decisions are therefore chargeable as an official act of the County. *See Simmons*, 506 F.3d at 1286 ("It is undisputed before us that the Board was the final policymaker on personnel matters for the District. . . . The decision to fire Ms. Simmons is thus . . . chargeable as an official act of the District . . . ." (emphasis omitted)).

Defendants' citation to *Bristol* is unpersuasive. There, the Tenth Circuit acknowledged caselaw "suggest[ing] that counties can be held liable for the misdeeds of Sheriffs . . . when the Sheriff is held to set 'official policy' for the county." *Id.* at 1221. The court then held that "the Sheriff was not setting 'official policy' in firing [the plaintiff], *except to the extent that* requiring employees to be able to perform their jobs can be called a 'policy.'" *Id.* (emphasis added) That is, the court accepted that a termination creates official policy. It simply rejected the notion that the policy set in that case was actionable

against the County in any way.  And, indeed, one of the cases cited in Bristol for the proposition that caselaw "suggest[s] that counties can be held liable for the misdeeds of Sheriffs," *id.* at 1221, involved a case in which the Eleventh Circuit held that a county could be held liable when a sheriff, who had "absolute and unfettered authority over the appointment, retention, rate of pay and acts of his deputies," terminated a deputy sheriff in violation of the First Amendment.  *Lucas v. O'Loughlin*, 831 F.2d 232, 233-36 (11th Cir. 1987).

Thus, the Court holds that Plaintiffs' case is properly pled against Sheriff Reigenborn in his official capacity, but not against ACSO.[14]  Accordingly, Defendant's Motion is GRANTED IN PART and DENIED IN PART with respect to Plaintiffs' municipal liability claims.

### E.  Qualified Immunity

Defendants argue that Sheriff Reigenborn is entitled to qualified immunity for the claims brought against him in his individual capacity.  [#53 at 17-20]  Because the Court grants summary judgment for Defendants on Plaintiffs' Fourteenth Amendment claims, it only considers Sheriff Reigenborn's qualified immunity as to Plaintiffs' First Amendment claims.

---

[14] It is worth noting that the precise identity of the municipal defendant in this case "ultimately . . . does not matter" under Colorado law—especially where, as here, discovery has been completed. *Chavez*, 426 F. Supp. 3d at 809 (D. Colo. 2019). Pursuant to a Colorado statute, judgments against: 1) "a county of this state;" 2) "any county officer . . . in his official capacity;" or 3) "any county officer . . . in his . . . name of office" are paid for in the same way—by the county and through a county tax. C.R.S. § 30-25-104; *Chavez*, 426 F. Supp. at 812-13 ("[W]hen a *Monell* claim is based on a sheriff-made policy, any distinction between suing the sheriff's office versus suing the county becomes purely theoretical, because the county will pay regardless.").

"The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (internal quotation omitted). Once the defense of qualified immunity has been raised, "the onus is on the plaintiff to demonstrate '(1) that the official violated a statutory or constitutional right, and (2) that the right was "clearly established" at the time of the challenged conduct.'" *Quinn v. Young*, 780 F.3d 998, 1004 (10th Cir. 2015) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011)). "If the plaintiff fails to satisfy either part of the two-part inquiry, the court must grant the defendant qualified immunity." *Gross v. Pirtle*, 245 F.3d 1151, 1156 (10th Cir. 2001).

"To be clearly established, a legal principle must have a sufficiently clear foundation in then-existing precedent" such that it is "settled law." *District of Columbia v. Wesby*, 138 S. Ct. 577, 589 (2018). The Supreme Court has "not yet decided what precedents—other than [its] own—qualify as controlling authority for purposes of qualified immunity." *Id.* at 591 n.8. The Tenth Circuit, however, has stated that "[o]rdinarily this standard requires either that there is a Supreme Court or Tenth Circuit decision on point, or that the 'clearly established weight of authority from other courts [has] found the law to be as the plaintiff maintains.'" *Patel v. Hall*, 849 F.3d 970, 980 (10th Cir. 2017) (quoting *Klen v. City of Loveland*, 661 F.3d 498, 511 (10th Cir. 2011)).

The Tenth Circuit has explained the "clearly established" prong of the qualified immunity analysis as follows:

> A clearly established right is one that is sufficiently clear that every reasonable official would have understood that what he is doing violates that right. Although plaintiffs can overcome a qualified-immunity defense without a favorable case directly on point, existing precedent must have

> placed the statutory or constitutional question beyond debate. The dispositive question is whether the violative nature of the *particular conduct* is clearly established. . . . Qualified immunity protects all but the plainly incompetent or those who knowingly violate the law.

*Aldaba v. Pickens*, 844 F.3d 870, 877 (10th Cir. 2016) (quotations and citations omitted). The Supreme Court has "repeatedly stressed that courts must not define clearly established law at a high level of generality, since doing so avoids the crucial question whether the official acted reasonably in the particular circumstances that he or she faced." *Wesby*, 138 S. Ct. at 590 (quotation omitted).

Plaintiffs' First Amendment claims allege that Sheriff Reigenborn violated their First Amendment rights by retaliating against them for their protected speech, association, and beliefs. [#1 at ¶¶164-77] As discussed above, "[t]he First Amendment protects public employees from discrimination based upon their political beliefs, affiliation, or non-affiliation unless their work requires political allegiance." *Snyder*, 354 F.3d at 1184 (quoting *Mason*, 115 F.3d at 1451). "'[N]o clear line can be drawn' between positions that require political allegiance and those that do not." *Id.* at 1184 (quoting *Elrod*, 427 U.S. at 367). Defendants argue that Sheriff Reigenborn did not have a clearly established basis to believe that senior deputies of ACSO were not positions that required political loyalty. [#53 at 18-19] The Court agrees.

Plaintiffs cite two cases for the notion that their First Amendment rights were clearly established in this context—*Elrod* and *Tice v. Dougherty*, 846 F. App'x 705 (10th Cir. 2021). [#56 at 24-25] In *Elrod*, the United State Supreme Court held that a "Chief Deputy" who "supervised all departments of the Sheriff's Office working on the seventh floor of the building housing that office" stated a legally cognizable claim when he brought a First Amendment relation claim. 427 U.S. at 350-51, 373. But the Court did not establish that

37

Chief Deputies are necessarily entitled to First Amendment protections.  A divided Court recognized that First Amendment protections could be restricted to positions requiring political loyalty, and a plurality articulated a preliminary standard as to which positions require political loyalty and which do not.[15]  *Id.* at 367-68 (plurality opinion); *see also id.* at 374-75 (Stewart, J., concurring).  But the Court ultimately affirmed the Seventh Circuit's ruling, which recognized that "the issue of whether plaintiffs were policy-making employees who may be dismissed for partisan political reasons is a matter of factual defense to be established by defendants at trial."  *Burns v. Elrod*, 509 F.2d 1133, 1136 (7th Cir. 1975), *aff'd*, 427 U.S. 347 (1976).  Indeed, the Plurality explained that "[n]o clear line can be drawn between" positions requiring political loyalty and those that do not, and explicitly noted that this issue would require further development on remand. *Elrod*, 427 U.S. at 367-68 (plurality opinion).

The notion that *Elrod* clearly established these Plaintiffs' right to be free from First Amendment retaliation is further belied by the existing circuit split over whether deputy sheriffs—of any rank—are positions requiring political loyalty. *Compare Jenkins v. Medford*, 119 F.3d 1156, 1164 (4th Cir. 1997) ("We therefore hold that such North Carolina deputy sheriffs may be lawfully terminated for political reasons under the *Elrod– Branti* exception to prohibited political terminations."), *and Terry v. Cook*, 866 F.2d 373, 377 (11th Cir. 1989) ("Under the *Elrod–Branti* standard, loyalty to the individual sheriff and the goals and policies he seeks to implement through his office is an appropriate requirement for the effective performance of a deputy sheriff."); *with Hall v. Tollett*, 128

---

[15] The standard articulated by the *Elrod* plurality was substantially clarified by the Court in *Branti v. Finkel*, 445 U.S. 507 (1980).

F.3d 418, 429 (6th Cir. 1997) ("We conclude that defendant has failed to show that political affiliation is 'an appropriate requirement for the effective performance' of [sheriff's deputy in Cumberland County]."), *and Jantzen*, 188 F.3d at 1256 ("[W]e must conclude that there exists a genuine dispute of material fact over the appropriateness of political loyalty as a job requirement for deputy sheriffs."); *see also Upton v. Thompson*, 930 F.2d 1209, 1217 (7th Cir. 1991) ("While a circuit split is not helpful in determining whether or not a deputy sheriff is protected by the First Amendment from patronage firing, such a split is indicative of the fact that the deputy sheriff's rights in this regard are currently unsettled as a matter of constitutional law and therefore were not 'clearly established' at the time of the deputies' firings."). Accordingly, *Elrod* does not clearly establish the contours of Plaintiffs' First Amendment right that they claim was violated.

Plaintiffs also point to *Tice* as establishing their claimed right within the Tenth Circuit. In *Tice,* the Tenth Circuit held that "the contours of [a deputy sheriff's] First Amendment right to political association were clearly established when she was terminated in November 2016." 846 F. App'x at 710. Nonetheless, *Tice* and the Tenth Circuit cases it relied on fail to clearly establish the contours of these Plaintiffs' rights. Critically, unlike Defendants here, the defendant in Tice "d[id] not suggest Plaintiff's employment required political allegiance." 846 F. App'x at 708. Thus, the *Tice* court did not need to engage in the fact-intensive inquiry that analyzes "the nature of the employee's duties and responsibilities," *Snyder*, 354 F.3d at 1185, let alone decide whether prior precedent clearly established the non-political nature of the deputy sheriff's position.

39

Moreover, the cases that *Tice* relied on to hold that the deputy's right was clearly established in that case do not apply with the same force to this case. 846 F. App'x at 710 (citing *Jantzen*, *Dickeson* and *Francia*).[16]  In *Jantzen*, the plaintiffs were the jailer and two deputy sheriffs. 188 F.3d at 1254-56.  The jailer was only afforded responsibility over "day-to-day" administrative tasks such as "(1) receiving and booking inmates, (2) regulating inmates' meals, (3) regulating inmates' medication, (4) monitoring jail activity and conducting cell checks, and (5) keeping jail records." *Id.* at 1254.  And the deputies only had authority to "execute and enforce the law." *Id.* at 1255.  There was no cited evidence of supervisory authority, budgetary input, external communications, or receipt of confidential information. Indeed, the record reflected that the sheriff was a self-described "benevolent dictator" who may have taken deputy "suggestions" but was otherwise "a hands-on sheriff." *Id.* at 1255-56 & n.5.

In *Dickeson*, the plaintiffs were the head jailer for the joint law enforcement facility for the County of Hot Springs and the Town of Thermopolis and the administrative assistant and special deputy to the sheriff.  844 F.2d 1435, 1443.  The head jailer's "duties included preparing the work schedule for the jailers, ordering food, planning menus, and preparing meals." *Id.* at 1443.  He was not a sworn deputy sheriff. *Id.*  The administrative assistant's duties "were secretarial" and "included filing, typing, bookkeeping, radio communication, and general office work." *Id.*  The remainder of her duties "encompassed matron work and serving civil process." *Id.*  Because the "job duties of the plaintiffs

---

[16] *Tice* also cited to *Mason*.  As in *Tice*, however, the defendants in *Mason* "d[id] not argue that [plaintiff's] position . . . require[d] political allegiance."  115 F.3d at 1451.

range[d] from clerical to the housing and feeding of prisoners," the *Dickeson* court concluded that their positions did not demand political loyalty from the sheriff. *Id.* at 1444.

Finally, in *Francia*, the defendant denied terminating plaintiffs because of their political affiliations and, as a result, the court did not conduct any analysis on the political loyalty question. 594 F.2d at 779-80, 782. Thus, the court itself stated that the question it was considering was "whether there [wa]s evidence in support of the trial court's findings that plaintiffs were terminated solely because of their political affiliations." *Id.* at 782. And, indeed, the *Francia* court acknowledged "that these [deputies] were serving in non-policy-making, non-confidential positions." *Id.*

As discussed above, whether Plaintiffs' positions required political loyalty is a deeply fact-intensive inquiry that analyzes "the nature of the employee's duties and responsibilities." *Snyder*, 354 F.3d at 1185. "[T]itles alone do not provide the answer." *Dickeson*, 844 F.2d at 1442. Thus, it is not dispositive that some "deputy sheriffs" positions have been held to be positions not requiring political loyalty in the Tenth Circuit. And while the Court acknowledges that there need not be a case with "precisely the same facts" [#56 at 25 (quoting *Tenorio v. Pitzer*, 802 F.3d 1160, 1164 (10th Cir. 2015))], *Jantzen*, *Dickeson* and *Francia*—which Plaintiffs fail to even cite in their qualified immunity analysis—do not provide the "obvious clarity" required to place Sheriff Reigenborn on fair notice that his conduct was unconstitutional. *Clark v. Wilson*, 625 F.3d 686, 690 (10th Cir. 2010) (quoting *Hope v. Pelzer*, 536 U.S. 730, 741 (2002)). The facts recited in *Jantzen*, *Dickeson* and *Francia* simply do not reflect the same degree of authority exercised by Plaintiffs in this case. Accordingly, Plaintiffs have failed to meet their burden of establishing that the right they claim was clearly established at the time of

the violation.  Thus, for the foregoing reasons, Defendant's Motion is GRANTED with respect to Sheriff Reigenborn's qualified immunity defense.

## III. CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgment [#53] is **GRANTED in part** and **DENIED in part** and Plaintiffs' Motion for Partial Summary Judgment [#51] is **GRANTED**.  More specifically, the Court holds as follows:

(1) partial summary judgment is **GRANTED** in favor of Plaintiffs as to the issue of whether they were discharged under color of state law;

(2) summary judgment is **DENIED** on Plaintiffs' First Amendment retaliation claim;

(3) summary judgment is **GRANTED** in favor of Defendants on Plaintiffs' Fourteenth Amendment procedural due process claims;

(4) summary judgment is **DENIED** as to Sheriff Reigenborn in his official capacity;

(5) the Adams County Sheriff's Office is **DISMISSED** as a Defendant; and

(6) Sheriff Reigenborn in entitled to qualified immunity on Plaintiff's First Amendment retaliation claim and, therefore, Sheriff Reigenborn in his individual capacity is **DISMISSED** as a Defendant.


DATED:  September 27, 2022                    BY THE COURT:

                                              s/Scott T. Varholak
                                              United States Magistrate Judge