**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No.: 20-cv-1936-STV

TIMOTHY JAMES COATES, GENE CLAPS, MARK MITCHELL, and KEVIN CURRIER

    Plaintiffs,

    v.

RICHARD A. REIGENBORN, in his official and individual capacities

    Defendants.

## Plaintiffs' Reply to Response to Motion for Order Certifying Interlocutory Appeal as Frivolous

The Court should certify Defendants' appeal as frivolous. Defendants received all the immunity they sought when the Court granted qualified immunity to Reigenborn in his individual capacity. However, the Court denied summary judgment on Plaintiffs' *Monell* claims against Reigenborn in his official capacity. Dissatisfied by that result, Defendants appealed—despite clear law that a denial of summary judgment on a municipal liability claim is an interlocutory order. So, to create the pretense of jurisdiction, Defendants have attempted to cloak their interlocutory appeal with immunity arguments that were never raised in this Court, and which are baseless. The certification procedure outlined in *Stewart* was designed to address exactly this kind of "abuse" and "intentional dilatory tactics." *Stewart v. Donges*, 915 F.2d 572, 576 (10th Cir. 1990) (citation omitted). Indeed, Defendants' tactics are even more egregious, because they did not even bother to "fil[e] a motion, however frivolous, and appeal[] the trial court's denial thereof," and instead press entirely new arguments on appeal, such as Eleventh Amendment immunity. *Id.*

## **Argument**

As Defendants put it (at 11), the "crux" of their appeal "is whether the Sheriff, in any capacity, is the real party-in-interest for purposes of *Monell*," because "[i]f he is, then either qualified or Eleventh amendment immunity applies." None of the issues raised by Defendants' appeal warrants disrupting the proceedings. Defendants' immunity arguments— on which their ability to appeal is premised—were never decided by or even presented to the Court, and they are frivolous, because there is no arguable basis in law or fact for applying any immunity to Plaintiffs' *Monell* claims in this case. Thus, the appeal lacks any "legally cognizable jurisdictional foothold." *Cox v. Glanz*, 800 F.3d 1231, 1257 (10th Cir. 2015). To the extent that they are even relevant, Defendants' remaining arguments boil down to a dispute about whether the county can be held liable for Reigenborn's conduct. Not only are appeals raising such arguments categorically interlocutory under *Swint*, the particular arguments raised by Defendants are utterly meritless as well.

### I.    **Defendants' qualified immunity argument is frivolous.**

"Qualified immunity . . . is available only to defendants sued in their individual capacities." *Langley v. Adams Cty.*, 987 F.2d 1473, 1477 (10th Cir. 1993). "[D]efendants named in their official capacities" cannot assert a qualified immunity defense, and "are not proper appellants" with respect to an appeal of a denial of qualified immunity. *Id.* Nonetheless, Defendants attempt to use qualified immunity as a means to immediately appeal the Court's summary judgment order—even though that order *granted* Reigenborn qualified immunity.[1]

---

[1] As a result, Reigenborn in his individual capacity does not even have standing to appeal. *Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 543 n.6 (1986) ("The fact that Mr. Youngman was sued in his official capacity does not give him standing to appeal in his individual capacity. Acts performed by the same person in two different capacities are generally treated as the transactions of two different legal personages.") (citation omitted).

Defendants cannot point to a single case where any federal court has held that proceeding to trial on a plaintiffs' official-capacity *Monell* claims would 'effectively deny' qualified immunity to an individual defendant, on the grounds that they might have to testify as a witness at that trial. Defendants also cannot identify any precedent for applying an individual officer's qualified immunity to an official-capacity claim. Defendants' failure to identify any such precedent strongly indicates that that law does not support their arguments. Indeed, the law is well-settled that an individual defendant's qualified immunity is relevant only to the § 1983 claims against them in their individual capacity. Qualified immunity is not relevant to any pendent state law claims against them, nor is it relevant to *Monell* claims involving their conduct. This is because qualified immunity, as the Supreme Court has made clear, "is a right to immunity *from certain claims*, not from litigation in general." *Behrens*, 516 U.S. at 312 (emphasis in original).

In *Cox v. Glanz*, for example, the Tenth Circuit considered a sheriff's appeal of an order denying him summary judgment on § 1983 claims against him in both his individual and official capacities. 800 F.3d 1231, 1236 (10th Cir. 2015). The Tenth Circuit "reverse[d] the district court's summary-judgment decision denying qualified immunity to Sheriff Glanz on Ms. Cox's individual-capacity claim." *Id*. But with respect to "Ms. Cox's official-capacity claim against Sheriff Glanz," the court held that "the district court's denial of the motion for summary judgment brought by the Sheriff in his official capacity is indisputably *not* a final decision amenable to interlocutory review." *Id.* (emphasis in original).

The Tenth Circuit began its analysis of the official-capacity claims by noting that "a 'suit against Sheriff [Glanz] in his official capacity as sheriff is the equivalent of a suit against [Tulsa] County'" *Id.* at 1254 (quoting *Lopez v. LeMaster*, 172 F.3d 756, 762 (10th Cir. 1999)) (brackets

3

in original). It then concluded that it lacked jurisdiction over "any inquiry concerning Tulsa County's policymaking apparatus" because there was no right to immediately appeal a denial of summary judgment on an official-capacity claim. *Id.* at 1255 (citing cases). And "under well-settled precedent, ordinarily an official-capacity defendant—who is not entitled to rely upon qualified immunity—cannot pursue an interlocutory appeal as a matter of right, because he cannot invoke the collateral order doctrine to justify appeal of an otherwise nonappealable decision." *Id.* (citations and quotation marks omitted). As such, "the only legally cognizable jurisdictional foothold for [the official-capacity] claim" was the court's pendent appellate jurisdiction." *Id.* at 1257. The court expressed "grave doubt as to the propriety of exercising pendent jurisdiction over this claim," and declined to do so. *Id.* at 1256.[2]

Thus, in *Cox* the Tenth Circuit explicitly granted Sheriff Glanz qualified immunity in his individual capacity *and* permitted the official-capacity claim to proceed to trial—precisely the result that Reigenborn complains of here. The court explained that "under our controlling circuit precedent, there is nothing anomalous about allowing a suit against an official defendant to proceed when immunity based on a lack of clearly established law shields the individual defendants." *Id.* at 1257.

Reigenborn's appeal simply retreads the ground covered by *Cox* and the authorities it cites. As that precedent makes clear, denial of summary judgment on official-capacity claims against a county sheriff are not immediately appealable under the collateral order doctrine—even if the sheriff is entitled to qualified immunity in his individual capacity.

---

[2] There are even less grounds for immediate review of the official-capacity claims here than in *Cox*, because *Cox* actually involved the sheriff's individual-capacity appeal of a *denial* of qualified immunity. Because the Court *granted* qualified immunity to Reigenborn in his individual capacity, Defendants cannot (and do not) appeal from that decision and claim pendent jurisdiction over their appeal with respect to Plaintiffs' official-capacity claims.

4

## II.     Defendants' Eleventh Amendment immunity argument is frivolous.

Eleventh Amendment immunity may, as Defendants assert (at 11), "be raised at any time." But while "a district court order *denying* a claim . . . to Eleventh Amendment immunity from suit in federal court may be appealed under the collateral order doctrine," Reigenborn cannot create appellate jurisdiction under the collateral order doctrine by raising an Eleventh Amendment immunity defense *for the first time* on appeal. *P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 141 (1993) (emphasis added). This is because, "[t]o invoke [the Court of Appeals'] jurisdiction under the collateral order doctrine, an appellant 'must establish that the district court's order . . . conclusively determined the disputed question.'" *Arbogast v. Kansas*, 789 F.3d 1174, 1179-80 (10th Cir. 2015) (quoting *Crystal Clear Commc'ns, Inc. v. Sw. Bell Tel. Co.*, 415 F.3d 1171, 1178 (10th Cir. 2005)).

Here, Defendants cannot meet this requirement because the Court's order did not conclusively determine whether, in Reigenborn's official capacity, he shared in the sovereign immunity granted by the Eleventh Amendment to the State of Colorado. *See, e.g., Salem v. Mich. Dep't of Corr.*, 643 F. App'x 526, 531 (6th Cir. 2016) (because "the Defendants never invoked sovereign immunity as to this claim . . . the district court had no opportunity to pass on this argument" and "no district court order denying a claim of Eleventh Amendment immunity exists for Defendants to collaterally appeal.") (internal quotations and citations omitted). As the Court is aware, Defendants did not raise Eleventh Amendment immunity in their summary judgment motion (or any other motion), and the Court did not consider it *sua sponte*.

In any case, the Eleventh Amendment immunity argument is also frivolous on the merits. Even though it is ultimately Defendants' burden to establish their entitlement to the immunity, *see Hennessey v. Univ. of Kansas Hosp. Auth.*, 53 F.4th 516, 532 (10th Cir. 2022) ("we conclude

5

the burden is on the entity asserting it is an arm of the state"), Defendants' threadbare argument essentially consists of urging (at 19) the application of the Eleventh Circuit's determination that Georgia sheriffs are entitled to Eleventh Amendment immunity. But Defendants ignore the fact that the Tenth Circuit has reached the opposite conclusion with respect to both Oklahoma and Kansas sheriffs. *See Couser v. Gay*, 959 F.3d 1018, 1021 (10th Cir. 2020) (Kansas sheriffs not entitled to Eleventh Amendment immunity); *Reid v. Hamby*, 1997 WL 537909, at *5 n.1, 124 F.3d 217 (10th Cir. Sep. 2, 1997) (unpublished table decision) ("We conclude, even under the *McMillian* standard, that an Oklahoma sheriff is the policymaker for his county for law enforcement purposes."). So have "[m]ost circuit courts to address the issue." *Couser*, 959 F.3d at 1025 n.8 (citing cases).

Even a cursory read of the Colorado Constitution confirms that in Colorado sheriffs are officers of the county government. Colorado's Constitution explicitly provides that "[t]he powers of the government of this state are divided into three distinct departments,—the legislative, executive and judicial." Colo. Const. art. III. But sheriffs, who are plainly not legislative or judicial officers, are conspicuously absent from the officers comprising the state's executive branch. *Compare* Colo. Const. art. IV, § 1 (not including sheriffs among state executive officers), *with McMillian v. Monroe Cty.*, 520 U.S. 781, 787 (1997) (noting that Alabama's Constitution "explicitly listed" sheriffs as members of the executive department). Rather, sheriffs are explicitly designated as county officers. Colo. Const. art. XIV, § 8 (also providing for "one county attorney who may be elected or appointed, as shall be provided by law"). Additionally, a judgment against a county sheriff is paid from county funds, not state funds. The county will pay "[w]hen a judgment is given and rendered . . . against any county officer in an action prosecuted . . . against him in his official capacity or name of office" C.R.S. § 30-25-104. The sheriff is also

6

generally covered by insurance purchased by the county "on behalf of the sheriff to protect the people of the county from any malfeasance on the part of the sheriff while in office." C.R.S. § 30-10-501. As such, Colorado sheriffs are obviously county officials, not state officials, and are therefore not entitled to Eleventh Amendment immunity.

### III. Defendants' remaining arguments are frivolous.

Once the façade of immunity arguments is stripped away, little remains of Defendants' appeal other than an assortment of arguments for why the county should not be held liable for Reigenborn's official conduct. But these arguments are at best variations on the "assertion that Sheriff [Reigenborn] is not [the county's] policymaker," and are thus "mere defense[s] to liability" that are not immediately appealable. *Swint v. Chambers Cty. Comm'n*, 514 U.S. 35, 43 (1995). As such, these arguments are frivolous in the context of an immediate appeal. And even if they could be reviewed now, they are frivolous on the merits, too.

Defendants' principal merits argument (at 12-13) is that Plaintiffs' *Monell* claims fail because "some affirmative act of delegation" on the part of the county was required to make Reigenborn a final policymaker, and Plaintiffs could not identify an such an affirmative act of delegation. None of the cases cited by Defendants hold that an affirmative act of delegation is the exclusive means by which an official can become an entity's final policymaker. That is because delegation is only one of the "two ways" that an official can "become the County's final policymaker." *Hollingsworth v. Hill*, 110 F.3d 733, 743 (10th Cir. 1997). An official can also "possess explicit final policymaking authority pursuant to [state] statutory or local government law." *Id.* (citing *Randle v. City of Aurora*, 69 F.3d 441, 447 (10th Cir. 1995)). As the Court correctly concluded, that is the case here, where a state statute, C.R.S. § 30-10-506, undisputedly vests the sheriff with the authority to hire and fire deputies. Thus, Reigenborn possessed final

7

policymaking authority pursuant to statute and Plaintiffs were not required to allege any affirmative act of policymaking delegation by the county.

Defendants also argue (at 14-15) that Plaintiffs' *Monell* claims are invalid because the county did not receive adequate notice and opportunity to respond. As an example, Defendants assert (at 15) that "[n]either the County nor the Board participated in any way in the case." To begin with, Defendants do not provide any support for the proposition that the 'due notice' required under federal law meant that the Board of Commissioners was required to be joined as a party or separately served. Plaintiffs' Complaint at all times named and asserted claims against Reigenborn in his official capacity. ECF No. 1. Reigenborn, in both capacities, waived service through the County Attorney, as did the Adams County Sheriff's Office.[3] ECF Nos. 8 and 9. That was all the notice and opportunity to respond that was required by federal law.[4] *See Brandon v. Holt*, 469 U.S. 464, 469 and 472 n.20 (1985) (even though "the city of Memphis was not named as a defendant in this case," "the Police Department and the city received notice" through the official-capacity suit against the Director of Police).

Defendants' assertions (at 15) regarding lack of notice an opportunity to respond are also factually incorrect. The Adams County Board of County Commissioners exercised its "option to control the defense [of the litigation] and appoint[ed] the County Attorney's office to represent the Sheriff." Response at 4 n.2. Indeed, it did so on July 28, 2020, shortly after Plaintiff's complaint was filed." Ex. 2. In particular, the Board determined that Reigenborn was "an elected official of Adams County at the time of the incident described in the Complaint" and that

---

[3] Ms. Miller, the County Attorney, is also the designated agent of Adams County for notice of claims against it, pursuant to Colorado law. Ex. 1.

[4] Under Colorado law, moreover, sheriffs are subject to service of process and can be sued "in an action brought against a sheriff for an action done by virtue of the sheriff's office." C.R.S. §§ 30-10-519 and 30-10-522.

8

he "acted within the course and scope of his employment" by the county. *Id.* In exchange for indemnification, the Board required Reigenborn "to cooperate fully in the defense of this matter" in any respect "deemed appropriate by the Board of County Commissioners." *Id.* The Board also asserted that "Adams County may settle on behalf of the Defendant any or all asserted claims." *Id.* As such, the county's contention (at 15) that it "did not receive due notice and an opportunity to respond" is nothing more than the factually unsupported argument of counsel.[5]

Relatedly, Defendants also argue (at 14) that Plaintiffs' § 1983 claims are somehow jurisdictionally invalid because Plaintiffs did not name the board of county commissioners as required by C.R.S. § 30-11-105.[6] However, defendants' citation to *Gonzales* is not binding because that issue was not actually before the court in that case.[7] *Gonzales v. Martinez*, 403 F.3d 1179, 1182 n.7 (10th Cir. 2005) ("neither the district court nor defendants have challenged Ms. Gonzales' designating 'Huerfano County' as defendant."). Moreover, when actually confronted with the argument, the Tenth Circuit determined that any "failure to name the Board of Commissioners as a defendant was not fatal because [the plaintiff] accomplished the same objective when he named [the] defendants . . . in their official capacities" *Reyes v. Jensen*, 857 F.

---

[5] To the extent that Defendants continue to maintain that the county did not have notice and opportunity to respond to Plaintiff's official-capacity claims, it would be appropriate for the Court to hold further proceedings at which the relevant county officials can be cross-examined under oath about their knowledge of the lawsuit and ability to respond to it.

[6] It is not clear that Colorado law even requires naming the board of county commissioners when official-capacity claims are asserted against a county sheriff, because Colorado statutes elsewhere provide for the enforcement and satisfaction of judgments "against any county officer . . . against him in his official capacity or name of office," C.R.S. § 30-25-104, and also provide that county sheriffs are subject to service of process and can be sued "in an action brought against a sheriff for an action done by virtue of the sheriff's office." C.R.S. §§ 30-10-519 and 30-10-522.

[7] Notably, the court in *Gonzalez* questioned whether it was proper to name "Huerfano County" as a defendant but did not question the validity of the official-capacity claims against asserted by the plaintiff against "John Salazar, as the Sheriff of Huerfano County, Colorado."

App'x 436, 439 (10th Cir. 2021). The same is true here—Plaintiffs were not required to separately name the county because they named Reigenborn in his official capacity.

In any case, application of C.R.S. § 30-11-105 to Plaintiffs' federal civil rights claims is foreclosed because there is no deficiency in federal law that is addressed by the state statute. 42 U.S.C. § 1988(a) requires that federal civil rights laws such as § 1983 "shall be exercised and enforced in conformity with the laws of the United States"—i.e., federal law—"so far as such laws are suitable to carry the same into effect." As relevant here, § 1983 itself, and the decisional law interpreting it, speak directly to whether plaintiffs may bring federal civil rights suits by suing a government official in their official capacity. *E.g.*, *Brandon*, 469 U.S. at 472 (making "explicit" under federal law that a § 1983 "judgment against a public servant 'in his official capacity' imposes liability on the entity that he represents"). Thus, a "suitable federal rule exists," and the ability to sue Colorado counties by naming county officials in their official capacities is available to § 1983 litigants, notwithstanding any state statute to the contrary. *Arnold v. Duchesne Cty.*, 26 F.3d 982, 984 (10th Cir. 1994).

## Conclusion

Plaintiffs respectfully request that this Court and issue an order certifying Reigenborn's interlocutory appeal as frivolous.

Respectfully Submitted,

RATHOD | MOHAMEDBHAI LLC

/s Felipe Bohnet-Gomez
Felipe Bohnet-Gomez
2701 Lawrence St., Suite 100
Denver, CO 80205
(303) 578-4400
fbg@rmlawyers.com

*Attorneys for Plaintiffs*