IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 20-cv-01936-STV

TIMOTHY JAMES COATES,
GENE CLAPS,
MARK MITCHELL,
KEVIN CURRIER,

    Plaintiffs,

v.

BOARD OF COUNTY COMMISSIONERS FOR THE COUNTY OF ADAMS,

    Defendants.

_____

## ORDER
_____

Chief Magistrate Judge Scott T. Varholak

    This matter comes before the Court on Plaintiffs' Motion for Equitable Relief (the "Motion"). [#192] The Motion is before the Court on the parties' consent to have a United States magistrate judge conduct all proceedings in this action and to order the entry of a final judgment. [##15, 16] This Court has carefully considered the Motion and related briefing, the entire case file, and the applicable case law, and has determined that oral argument would not materially assist in the disposition of the Motion. For the following reasons, the Motion is **GRANTED IN PART** and **DENIED IN PART**.

I.    BACKGROUND

    Plaintiffs are career law enforcement officers who have spent the majority of their careers as deputy sheriffs at the Adams County Sheriff's Office ("ACSO"). [#71 at 2] Plaintiffs have held a variety of ranks and served under both Republican and Democratic

sheriffs. [*Id.*] As of 2018, Plaintiffs held the following ranks and assignments: Timothy Coates—Division Chief of Detectives; Gene Claps—Division Chief of the Jail Division; Mark Mitchell—Captain of the Patrol Division; Kevin Currier—Commander of the Detective Division. [*Id.*] From 1991 to 2015, former Sheriff Reigenborn was employed as a deputy at ACSO, holding various ranks. [*Id.*] Former Sheriff Reigenborn challenged Michael McIntosh for Adams County Sheriff in the 2018 election and won to become Adams County Sheriff. [*Id.* at 3] Each Plaintiff supported former Sheriff McIntosh in the 2018 election through financial contributions and public statements of support. [*Id.*] Once he took office, former Sheriff Reigenborn informed each Plaintiff that he intended to terminate their employment. [*Id.* at 4] Each Plaintiff ultimately retired in lieu of termination. [*Id.* at 7]

On July 1, 2020, Plaintiffs initiated the instant action arguing that their terminations violated their First and Fourteenth Amendment rights. [#1] On September 27, 2022, this Court granted summary judgment in favor of the then-named Defendants on Plaintiffs' Fourteenth Amendment claim and granted summary judgment in favor of former Sheriff Reigenborn on Plaintiffs' First Amendment claim, concluding that former Sheriff Reigenborn was entitled to qualified immunity on that claim.[1] [#71] And on January 22, 2025, a six day jury trial commenced on Plaintiffs' First Amendment claim against the

---

[1] At the time, the Defendants were the Adams County Sheriff's Office and former Sheriff Reigenborn. [#71] On December 22, 2023, Plaintiffs amended their Complaint to name as Defendants the Board of County Commissioners for the County of Adams and former Sheriff Reigenborn. [#105] On February 13, 2024, based upon the Court's previous ruling that former Sheriff Reigenborn was entitled to qualified immunity, the Court terminated former Sheriff Reigenborn as a Defendant in this action. [#117] Meanwhile, after Defendants appealed this Court's determination that the Adams County Sheriff's Office was not entitled to summary judgment on Plaintiffs' First Amendment claim [#72], Plaintiff Claps won the election for Adams County Sheriff. [#95 at 2 n.1]

2

Board of County Commissioners for the County of Adams. [##173, 176, 177, 180, 182, 184] The jury found in Plaintiffs' favor, awarding: (1) Mr. Coates $523,062.90 in backpay damages and $818,750.00 in emotional distress damages; (2) Mr. Claps $523,898.17 in backpay damages and $818,750.00 in emotional distress damages; (3) Mr. Mitchell $381,388.93 in backpay damages and $818,750.00 in emotional distress damages; and (4) Mr. Currier $371,470.21 in backpay damages and $818,750.00 in emotional distress damages. [#188]

This Court ordered Plaintiffs to submit a proposed final judgment. [#191] On February 18, 2025, Plaintiffs submitted the instant Motion. [#192] Through the Motion, Plaintiffs seek: (1) front pay for future pecuniary losses, (2) pre-judgment interest, and (3) an income tax offset. [#192] Defendant has responded to the Motion [#205] and Plaintiffs have replied [#206].

## II.   ANALYSIS

Plaintiffs' Motion seeks: (1) front pay for future pecuniary losses, (2) pre-judgment interest, and (3) an income tax offset. [#192] The Court addresses each request below.

### A.   Front Pay

Plaintiffs' Motion seeks an award of front pay for the harm they allegedly suffered to their pension benefits as a result of their termination. [#192 at 3-6] According to Plaintiffs, they were "more likely than not" harmed by: (1) taking distributions earlier than planned, (2) losing four years of additional service credit accumulation, (3) missing out on higher compensation years that would have increased their future retirement benefits, (4) losing employer contributions during the time period that they remained unemployed, and (5) having their retirement benefits recalculated for the three Plaintiffs—Claps, Mitchell,

and Currier—who were rehired by the Adams County Sheriff's Department once Sheriff Claps won the election. [*Id.* at 4-5] The Court disagrees that Plaintiffs are entitled to these damages as front pay.

"[F]ront pay is . . . money awarded for lost compensation during the period between judgment and reinstatement or in lieu of reinstatement." *Pollard v. E.I. du Pont de Nemours & Co.*, 532 U.S. 843, 846 (2001). "An award of front pay for claims under § 1983 is an equitable remedy; thus, the district court has discretion to decide whether such an award is appropriate." *Ballard v. Muskogee Reg'l Med. Ctr.*, 238 F.3d 1250, 1253 (10th Cir. 2001). "That discretion . . . should be measured against an anti-discrimination statute's purpose to make the plaintiffs whole." *Id.* (quotation omitted).

Here, Plaintiffs have not alleged any lost compensation between judgment and reinstatement. Indeed, by the time judgment will enter in this case, Plaintiffs Claps, Mitchell, and Currier were already reinstated, and Plaintiffs have not alleged that Mr. Coates was ineligible for rehire or that reinstatement was not a suitable option. The Court thus concludes that Plaintiffs' alleged diminution in their pension plans—resulting in losses accruing prior to judgment in this case—does not constitute front pay, and the Court therefore declines to award these damages.[2] The Court therefore DENIES the Motion to the extent it seeks damages for the alleged diminution in Plaintiffs' pension plans.

---

[2] Moreover, all of these damages could have easily been placed before the jury. By the time of trial, Sheriff Claps had been elected and each of the Plaintiffs were either rehired or eligible for rehire. Plaintiffs have not offered any rationale for not presenting these damages to the jury as part of their damages calculation.

B.     **Prejudgment Interest**

Next, Plaintiffs seek prejudgment interest. [#192 at 6-13] The award of prejudgment interest "rests firmly within the sound discretion of the trial court." *Caldwell v. Life Ins. Co. of N. Am.*, 287 F.3d 1276, 1287 (10th Cir. 2002). "A two-step analysis governs the determination of such an award." *Id.* at 1286. First, the district court must determine whether the award of prejudgment interest will serve to compensate the injured party. *Id.* Second, even if the award of prejudgment interest is compensatory in nature, the district court must "still determine whether the equities would preclude the award of prejudgment interest." *Id.* (quotation omitted).

Here, the Court concludes that Plaintiffs are entitled to pre-judgment interest on their backpay damages. These damages are designed to compensate Plaintiffs for their lost wages. *Barnett v. Bd. of Cnty. Comm'rs*, No. CIV 14-1765 JAP/GPG, 2015 WL 5315183, at *1 (D. Colo. Sept. 11, 2015) (finding prejudgment interest on backpay award was designed to compensate plaintiff); *E.E.O.C. v. W. Trading Co., Inc.*, 291 F.R.D. 615, 621 (D. Colo. 2013) (same). Defendants have not provided equitable reasons for why prejudgment interest should not be awarded on such damages, and the Court therefore concludes that awarding prejudgment interest on such damages would be equitable. *Barnett*, 2015 WL 5315183, at *1 (finding prejudgment interest on backpay award would not be inequitable); *W. Trading Co., Inc.*, 291 F.R.D. at 621 (same). The Court therefore GRANTS the Motion to the extent it seeks prejudgment interest on Plaintiffs' backpay damages.

With respect to Plaintiffs' emotional damages, however, the Court concludes that Plaintiffs are not entitled to prejudgment interest. Plaintiffs' "emotional distress, mental

5

anguish, and suffering did not deprive [them] of the monetary value of [their] loss from the time of the loss to the payment of the judgment." *Chatman v. Buller*, No. 12-CV-182-JHP, 2013 WL 5729603, at *3 (E.D. Okla. Oct. 22, 2013). And "a number of trial courts have found the notion of prejudgment interest to be incompatible with the concept of non-economic damages." *White v. Wycoff*, No. 13-cv-01761-CMA-MJW, 2016 WL 9632932, at *2 (D. Colo. July 7, 2016) (collecting cases); *see also Valdez v. Motyka*, No. 15-cv-0109-WJM-STV, 2021 WL 5051666, at *2 (D. Colo. Nov. 1, 2021) (declining to award prejudgment interest for non-economic damages); *Echon v. Sackett*, No. 14-cv-03420-PAB-NYW, 2019 WL 8275344, at *9-10 (D. Colo. Feb. 12, 2019) (same); *Waller v. Lovingier*, No. 14-cv-02109-WYD-NYW, 2017 WL 11545516, at *6 (D. Colo. Dec. 5, 2017) (same). The Court agrees with the analysis from those cases. As a result, the Court DENIES the Motion to the extent it seeks prejudgment interest on Plaintiffs' non-economic damages.

Having concluded that Plaintiffs are entitled to prejudgment interest on their backpay damages, the next step is to determine the proper calculation of that prejudgment interest. "The rate and calculation of the prejudgment interest is at the Court's sound discretion." *Tygrett v. City and Cnty. Of Denver*, 19-cv-00726-MEH, 2021 WL 5535005, at *4 (D. Colo. July 19, 2021) (citing *Caldwell*, 287 F.3d at 1287). Several courts in this district have applied the Internal Revenue Service's underpayment rate pursuant to 26 U.S.C. § 6621. *Id.* (collecting cases). By this calculation, three percent is added to the federal short-term interest rate. *Id.* The Court agrees with this analysis, finding that rate to be just in this case, and thus awards prejudgment interest on Plaintiffs' backpay damages to be calculated pursuant to 26 U.S.C. § 6621.

### C. Income Tax Offset

Finally, Plaintiffs seek an income tax offset. [#192 at 13-14] Plaintiffs did not seek such an award during trial, and have not provided this Court with any manner for calculating such an award. [*Id.*] Instead, Plaintiffs ask the Court to "hold an evidentiary hearing where Plaintiffs could submit expert testimony and other evidence regarding the amount of the tax offset, or order further briefing on the amount of the tax offset based on the Court's determinations." [*Id.* at 14]

Given the lack of information provided by Plaintiffs concerning the tax offset, the Court declines to award such an offset. It is within the trial court's discretion to award a tax penalty offset. *Tygrett*, 2021 WL 5535005, at *5. And "a tax offset award in discrimination cases is common." *Id.* But the Court agrees with another court in this district that "if Plaintiffs were entitled to a tax penalty offset, the proper place for that argument was during trial, built into their damages argument to the jury." *Cejka v. Vectrus Sys. Corp.*, 2018 WL 10552458, at *2 (D. Colo. Oct. 9, 2018). And "even if [the Court] was inclined to award a tax penalty offset, Plaintiffs have not provided [the Court] with the data necessary to do so." *Id.* Thus, exercising its discretion, the Court declines Plaintiffs' suggestion to conduct further evidentiary hearings—and require the parties to incur additional expert witness expenditures post-trial and long after discovery has ended—on a case that has been pending for five years. As a result, the Motion is DENIED to the extent it seeks an income tax offset.

### III. CONCLUSION

For the foregoing reasons, Plaintiffs' Motion for Equitable Relief [#192] is **GRANTED IN PART** and **DENIED IN PART**. The Motion is **GRANTED** to the extent

7

Plaintiffs seek prejudgment interest on their backpay damages.  The Motion is otherwise **DENIED**.  Within fourteen days, Plaintiffs shall submit a proposed judgment consistent with this Order.  Prior to submitting the proposed judgment, Plaintiffs shall consult with Defendant and any disagreement over the form of the judgment shall be noted.

DATED:  July 23, 2025                                                BY THE COURT:

                                                                                        s/Scott T. Varholak
                                                                                        Chief United States Magistrate Judge

8